1    JAMES V. FITZGERALD, III (State Bar No. 55632)
     NOAH G. BLECHMAN (State Bar No. 197167)
2    MᴄNᴀᴍᴀʀᴀ, Dᴏᴅɢᴇ, Nᴇʏ, Bᴇᴀᴛᴛʏ, Sʟᴀᴛᴛᴇʀʏ,
     Pғᴀʟᴢᴇʀ, Bᴏʀɢᴇs & Bʀᴏᴛʜᴇʀs LLP
3    1211 Newell Avenue
     Post Office Box 5288
4    Walnut Creek, CA 94596
     Telephone: (925) 939-5330
5    Facsimile:  (925) 939-0203

6    Attorneys for Defendants
     COUNTY OF CONTRA COSTA, JOSHUA PATZER, and
7    WARREN RUPF

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11   SHAWN DAY, individually and as            Case No. C07-4335 PJH
     successor in interest to the Estate of Steffen
12   Matthew Day,                              **DECLARATION OF JAMES V.
                                               FITZGERALD, III, IN SUPPORT OF
13              Plaintiff,                      DEFENDANTS' MOTION FOR
                                               SUMMARY JUDGMENT / SUMMARY
14        vs.                                   ADJUDICATION**

15   COUNTY OF CONTRA COSTA;                   Date:      September 10, 2008
     JOSHUA PATZER; WARREN RUPF, and          Time:      9:00 a.m.
16   Does 1 through 50, et al.,                Judge:     Hon. Phyllis J. Hamilton
                                               Dept:      Courtroom 3, 17th Floor (SF)
17              Defendants.

18

19        I, James V. Fitzgerald, III, Esq., hereby declare:

20        1.  I am an attorney at law duly licensed to practice before the courts of the State of

21            California and am a partner at the law firm of McNamara, Dodge, Ney, Beatty,

22            Slattery, Pfalzer, Borges & Brothers LLP; attorneys of record for Defendants

23            County of Contra Costa, Deputy Joshua Patzer and Sheriff Warren Rupf.  I have

24            personal knowledge of each matter stated herein.

25        2.  Attached hereto as Exhibit "A" is a true and correct copy of the Declaration of

26            Deputy Joshua Patzer in support of this motion.

27        3.  Attached hereto as Exhibit "B" is a true and correct copy of the Declaration of

28            Deputy Jason Vorhauer in support of this motion.

MᴄNᴀᴍᴀʀᴀ, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

4.  Attached hereto as Exhibit "C" is a true and correct copy of the Plaintiff's Complaint for Damages in support of this motion.

5.  Attached hereto as Exhibit "D" is a true and correct copy of the Declaration of Declaration of Dr. Brian Peterson in support of this motion.

6.  Attached hereto as Exhibit "E" is a true and correct copy of the Declaration of Monica Siegrist with Toxicology Report in support of this motion.

7.  Attached hereto as Exhibit "F" is a true and correct copy Declaration of Alex Taflya with Photographs of the Mustang and Scene of the Incident in support of this motion.

8.  Attached hereto as Exhibit "G" are true and correct copies of Photographs of Deputy Patzer's Injuries following this incident in support of this motion.

9.  Attached hereto as Exhibit "H" is a true and correct copy of a Video of the Coned Path of Travel of Decedent (Viewed with Windows Media Player) and Aerial Photographs of Same Coned Path of Travel in support of this motion.

10. Attached hereto as Exhibit "I" is a true and correct copy of Defendant Patzer's Request for Admission, Set One, to Plaintiff, along with Plaintiff's Response to Defendant Patzer's Request for Admission, Set One in support of this motion.

11. Attached hereto as Exhibit "J" is a true and correct copy of Plaintiff's Supplemental Response to Deputy Patzer's Special Interrogatories, Set One in support of this motion.

12. The photographs and video are also offered herein to orient the Court as to the geography and landscape of the area of the incident to assist the Court in understanding the evidence and testimony presented for this motion.

I declare under penalty and perjury the foregoing is true and correct.

Executed this _5ᵗʰ_ day of August, 2008 at _Walnut Creek_, California.

By: _/s/ J. V. Fitzgerald_

James V. Fitzgerald, III, Declarant

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

# INDEX OF EXHIBITS

## INDEX OF EXHIBITS FOR
## MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

| **Exhibit** | **Description** |
| --- | --- |
| A. | Declaration of Deputy Patzer |
| B. | Declaration of Deputy Vorhauer |
| C. | Complaint for Damages |
| D. | Declaration of Dr. Peterson |
| E. | Declaration of Ms. Siegrist with Toxicology Report |
| F. | Declaration of Mr. Taflya with Photographs |
| G. | Photographs of Deputy Patzer's Injuries |
| H. | Video of Coned Path of Travel of Decedent (Viewed with Windows Media Player) and Aerial Photographs of Same Coned Path of Travel |
| I. | Defendant Patzer's Request for Admission, Set One, to Plaintiff, along with Plaintiff's Response to Defendant Patzer's Request for Admission, Set One |
| J. | Plaintiff's Supplemental Response to Deputy Patzer's Special Interrogatories, Set One |

# EXHIBIT A

JAMES V. FITZGERALD, III (State Bar No. 55632)
NOAH G. BLECHMAN (State Bar No. 197167)
McNAMARA, DODGE, NEY, BEATTY, SLATTERY,
PFALZER, BORGES & BROTHERS LLP
1211 Newell Avenue
Post Office Box 5288
Walnut Creek, CA 94596
Telephone: (925) 939-5330
Facsimile:  (925) 939-0203

Attorneys for Defendant
COUNTY OF CONTRA COSTA, JOSHUA PATZER, and
WARREN RUPF

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SHAWN DAY, individually and as successor in interest to the Estate of Steffen Matthew Day,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF CONTRA COSTA; JOSHUA PATZER; WARREN RUPF, and Does 1 through 50, et al.,<br><br>Defendants. | Case No. C07-4335 PJH<br><br>**DECLARATION OF JOSHUA PATZER IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT / SUMMARY ADJUDICATION** |

I, Joshua Patzer, hereby declare:

1. I am currently a Deputy Sheriff with the Contra Costa County Sheriff's Office, where I have worked in that capacity since 2000.  I have been a patrol officer for the last five plus years with the Sheriff's Office.

2. I graduated from the police academy in 2000.  Since the academy, I have attended annual advanced officers' training with the Sheriff's Office.  Since 2004, I have been involved with the SWAT and sniper teams.  I have consistently qualified twice a year for firearms training with the Sheriff's Office.

3. On August 15, 2006, at approximately 1:45 a.m., while in a full Sheriff's Office uniform, driving a marked Sheriff's Office patrol car performing patrol work with Deputy

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P. O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

Vorhauer (also in full uniform) in the Bay Point area of Contra Costa County, we noticed two vehicles, a pickup truck and a black Mustang ("Mustang"), driving erratically and tailgating each other on the roadway.

4. Deputy Vorhauer, my partner on that date who was driving the patrol vehicle, made a turn and got behind the pickup truck which was behind the Mustang.

5. I was in the passenger seat of the patrol vehicle and I was attempting to use the computer in the vehicle to run the license plate of the pickup truck, though I could not see the license plate from my vantage point due to the position of the bumper of the pickup truck.

6. We made a right turn onto a roadway while we followed the vehicles that were continuing to drive erratically.

7. As we got closer to the pickup truck, it appeared that the driver of the pickup truck noticed our police vehicle and then the pickup truck started to drive correctly.

8. On the other hand, the Mustang had sped up, continued to drive erratically and kept making right hand turns so our attention was then drawn to the Mustang.

9. We then followed the Mustang while I was trying to run the license plate of the Mustang in the vehicle's computer to check on the status of the vehicle.

10. Our vehicles made one or two turns and then came to a stop at some point as I was trying to run the license plate of the Mustang.

11. When I looked up from the computer and saw the trunk of the briefly stopped Mustang just before it continued to flee, I could see that the trunk of the Mustang did not have a lock on the trunk which was indicative of a lock that had been punched, a common criminal technique used for car thefts.

12. At that point, I believed the vehicle may have been stolen so I continued looking on the computer to see if I could confirm the vehicle's status and then myself and Deputy Vorhauer could develop a strategy if we were going to perform a felony traffic stop. The Mustang vehicle then continued to flee and drive on.

13. Before being able to confirm via computer whether or not the vehicle was listed as stolen, the Mustang pulled into a driveway. At that point, we activated both of our side spotlights

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1   to illuminate the vehicle as it was very dark out.

2   14. After illuminating the Mustang, I saw furtive movements inside of the vehicle by the three

3       occupants. Also, the front two passengers appeared to be handing items to the passenger

4       in the back seat. This is common behavior by suspects who are trying to hide or obtain

5       weapons or contraband.

6   15. At that point, we exited our patrol vehicle and I approached the Mustang on the passenger

7       side. I had my flashlight in my left hand as I approached.

8   16. As I approached, I got to a point where I could see that there was no key in the ignition on

9       the Mustang's steering column, further indicating to me that this vehicle was likely a

10      stolen vehicle. I then informed my partner, Deputy Vorhauer, that there was no key in the

11      ignition, which was further evidence this vehicle was stolen.

12   17. I immediately pulled out my duty weapon and held it in the low ready position behind my

13      leg as I was fearful for my safety at that point and had cause to believe this vehicle was

14      stolen.

15   18. The passenger door of the Mustang attempted to open so I shut the door to keep the

16      passengers inside of the vehicle.

17   19. I then ordered the front passenger to place his hands on the dashboard and the back

18      passenger to put his hands on the headrest.

19   20. The occupants were not complying with our orders to keep their hands in plain sight.

20   21. The passenger in the backseat continued to move. Eventually, the passengers complied

21      with placing their hands at the appropriate locations where I could see them.

22   22. During this same time, Deputy Vorhauer was attempting to get the driver (which turned

23      out to be Decedent Steffen Day ("Day")) out of the vehicle. I then saw Deputy Vorhauer

24      beginning to put Day into a position to search him for weapons.

25   23. Day and the passengers apparently could not turn the engine off on the Mustang when we

26      ordered them to do so and the vehicle remained idling during this process. This was

27      further evidence that this vehicle may have been stolen and then hot-wired to drive

28      without a key.

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

DECLARATION OF JOSHUA PATZER IN SUPPORT    3
OF MSJ/MSA - Case No. C07-4335 PJH

24. When I looked back at the rear passenger, he had dropped his hands from the headrest and I could not see his hands. This was an officer safety issue as I did not know if there were any weapons in this vehicle and I could not now see this passenger's hands.

25. I again told the backseat passenger to place his hands back on the headrest at which point I saw Day running in front of the Mustang, between the front of the Mustang and the garage door of the house, past my direction.

26. When I looked back towards the Mustang, the front passenger was again attempting to open the door so I used my foot and kicked the door shut to keep the passengers in the vehicle.

27. I then put my duty weapon back into the holster and gave chase after Day as I was now closer to Day then Deputy Vorhauer. I stated to Deputy Vorhauer that I was proceeding with a "foot pursuit" of the fleeing driver Day.

28. I believed that Deputy Vorhauer did not complete any pat search of Day so I did not know whether or not Day had any weapons on him, like a gun or a knife, when he fled.

29. Day then jumped the wall between that home and the home next door and I could see him fall after jumping over the wall.

30. I then jumped on top of the wall, watched Day run off and then I jumped down to continue to pursue him.

31. After I jumped over the wall, I pulled my flashlight out and shined it in the area where I was located which was very dark.

32. I shined my flashlight towards Day who was attempting to get into the front door of the residence.

33. I did not know if Day knew the people in that residence or if he was just continuing in his attempt to flee.

34. I continued to chase Day back out onto the street as Day moved one more house down the street.

35. I loudly yelled to Day to "stop, Sheriff's Office, police, stop," or words to that effect, several times during the foot pursuit, but Day continued to run and flee, ignoring my

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1    orders.

2    36. As I chased Day to the house next door, Day ran towards the front door of that residence.

3    At the last second, Day turned towards his right and jumped on the nearby fence. As Day

4    jumped on the fence, I caught up to him and grabbed his shoulders to pull him back down

5    towards me to control and handcuff Day.

6    37. The fence turned out to be a gate so when the gate gave way and opened, this caused me

7    to fall forward to the ground on my knees and drop my flashlight. At that point, there was

8    no ambient light in this side yard area and one could only see by flashlight in this area,

9    though I had dropped my flashlight when I fell.

10    38. At this point, we were in a very narrow side yard area next to a house. There was also lots

11    of debris and garbage in this narrow area.

12    39. As I was attempting to stand back up and to locate my flashlight, I was hit in the face by

13    Day, it felt like a fist punch to the left side of my head, which caused me to stumble

14    backwards and dazed me. I had a hard time seeing as the area was very dark and I had

15    dropped my flashlight which now was located under the debris in this narrow area.

16    40. I went to grab Day to prevent him from continuing to run and instead of grabbing his

17    back, as I had anticipated if Day was indeed attempting to further flee, I grabbed Day's

18    shoulders as he was facing me and I could feel Day continuing to punch and take swings

19    at me in a threatening manner.

20    41. I ducked my head between my arms to prevent Day from hitting me square in the face or

21    head area at which point I started to be pushed backwards by Day. Some of Day's blows

22    were making contact with me on the side of my head, the top of my head and in my

23    shoulder areas.

24    42. I then pushed Day away from me thinking that this would give him time to run away and

25    would stop his assault and battery on me. At this point in time, I was on uneven ground, I

26    was slipping around on the debris on the ground and I could not gain any solid leverage or

27    balance.

28    43. As I regained my balance, Day was again forcing himself on me, causing me to fall down

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5530

1    in a pile of debris and garbage that was on the ground in this narrow side yard of the house

2    where we were located.

44. It was so dark in that side yard area during the struggle that I could only really see a

4    silhouette of Day and could not specifically see Day's hands or if Day had any weapons in

5    his hands or in his waistband.

45. When I had fallen back down to the ground, my right arm went through the pile of trash

7    and I held my left arm up to try to protect myself from Day who was now essentially on

8    top of me and aggressively swinging at me. Day was once again hovering over me at this

9    point, Day was in the position of advantage and his punches were making contact with my

10    body.

46. I used my legs to push off the ground and to get up again. As I was getting up, I expected

12    Day to just run away and that was okay with me as Day had been on top of me twice, had

13    been overpowering me and I was still dazed from the initial punch to the face. I was

14    willing to let Day run away to get him away from me at that time to stop his violent

15    assault in this narrow and very dark area.

47. Instead of fleeing, Day came at me again swinging at me in an aggressive manner. I put

17    my left arm up to protect myself and put my other hand on my duty weapon.

48. As I was being pushed back, something hit me from behind in the middle of my back

19    which I believed could have been an ambush from either the other passengers in the

20    Mustang or friends of Day that came from a nearby house where we were located to join

21    in on the assault and battery on me.

49. Day continued to use aggression towards me causing me to lose my footing. Day was

23    now on top of me for the third time, was pushing me backwards and continually punching

24    and hitting me.

50. During that process, I had grabbed my duty weapon, tried to step back and bend down a

26    little bit and I fired one gunshot at the direction of Day with my arm bent backwards,

27    close to my body and away from Day, in what is known in the law enforcement field as

28    the retention position. This retention position is used by officers in situations when they

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1    are being assaulted and/or to prevent a suspect from grabbing the officer's gun. I did not

2    have a taser on me at the time of the incident. Also, I could not use a baton or pepper

3    spray due to the close proximity of Day to me and the severity and constant rapid barrage

4    of aggression from Day, forcing me to defend myself.

5    51. I saw the muzzle of the gun flash as it was very dark in that area which had no ambient

6    lighting. The force of the gunshot made my foot slip out on the ground so I had to again

7    regain my balance.

8    52. Immediately after the gunshot, the force on me by Day had stopped, my arm then went

9    straight out with the gun towards the area of Day and it appeared at first that Day may had

10    run off as I could not feel him nearby.

11    53. I could see my flashlight down and to my left underneath the debris so I kicked the

12    garbage away and picked up my flashlight. I shined the light behind me to see who or

13    what was behind me and saw that there was nothing behind me except for an external

14    square air conditioner unit in the window of the house.

15    54. I then shined the flashlight in front of me and I noticed Day on the ground attempting to

16    get up. I again yelled "Sheriff's Office, stay on the ground, don't get up" or words to that

17    effect.

18    55. At this time, I had my duty weapon and flashlight out and both were pointed at Day. I

19    was physically exhausted at this point due to the significant struggle with Day.

20    56. As Day was attempting to get up, I could see that he was bleeding. I then got onto my

21    radio and immediately asked for a Code 3 cover, meaning asking other officers to come to

22    the scene urgently with lights and sirens to assist, and I also asked dispatch to send fire

23    and ambulance for Day. I also informed dispatch that shots had been fired and the suspect

24    was down. I informed dispatch of my location as I could see the number of the house

25    across the street.

26    57. At that point, I was unsure of what Deputy Vorhauer was doing with regard to the other

27    two passengers of the Mustang, whether the passengers were armed, fighting with the

28    officer or fleeing.

58. Soon thereafter, other officers arrived on the scene and I was quickly sequestered away from the side yard area and into a Sheriff's Office patrol vehicle while the other officers took control of the scene. Before I was sequestered, I assisted in moving some of the garbage out of the way so the gate could be fully opened and there could be a path through the gate for medical staff and other officers. It was apparent to me that the side yard area gate was not meant to be opened as it appeared that garbage and debris had accumulated for a long period of time behind that gate.

59. During the time when I was pursuing Day, on at least five to seven occasions, I stated to Day that I was "Sheriff's Office, stop running," and Sheriff's Office, stop resisting" or words to that effect.

60. In retrospect, the item that hit me in the back when I was in the side yard defending myself from Day's assault and battery was apparently the external square air conditioner unit in the window.

61. After I was sequestered, I became aware of the injuries I suffered in this altercation, including knots on my forehead and head, scrapes on my hands, arms and knees. My uniform was also damaged in the knee area and I had lost buttons off my shirt from the violence by Day.

62. At the time that I intentionally fired one gunshot at Day, I firmly believed that Day was going to get on top of me again, would perhaps overpower me and obtain my weapon and shoot me. At that moment, I believed my life was in immediate danger so I defended my life by shooting at Day to stop Day's violent assault and battery. Day was very strong during this struggle and was overpowering me up until the point when I fired at him.

63. I did not fire my weapon at Day accidentally.

64. On more than one occasion, Day had the opportunity to stop resisting, to retreat and/or continue to flee out of the side yard area of the house during our struggle, but instead chose to continue threatening me with assault and battery and endangering my life.

65. At no point did Day ever stop resisting.

66. From the time when Day started struggling with me in the side yard after we went over the

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1  fence to the time when I fired my weapon at Day was only a time period of approximately

2  15-20 seconds.

3  67. I am aware that Day died as a result of the gunshot wound.

4  68. I am aware that a significant amount of methamphetamine was found in Day's system.

5  69. I am aware that a methamphetamine cutting substance was also found in the pants pocket

6  of Day.

7  70. I am aware that Day did not have a California driver's license though he was driving the

8  Mustang.

9  71. Overall, from the time we stopped our patrol car and got out of the car due to the Mustang

10  occupants' behavior to the time when I broadcasted that a gunshot had been fired, was a

11  period of approximately two minutes.

12  72. After the incident, photographs were taken of my injuries caused by Day.

13  73. True and correct copies of these photographs of my injuries are attached to this motion as

14  an exhibit and these photographs fairly and accurately represent those injuries.

15  74. In addition, after the incident, I was present when investigators placed traffic cones to

16  show the path of travel of Day from the Mustang all the way over to the side yard area

17  where the shooting occurred.

18  75. A video of the coned path of travel of Day to the side yard area was taken. I viewed the

19  video and it fairly and accurately portrays the path of travel of Day from the Mustang to

20  the side yard area, with the exception that Day went in front of the Mustang and not

21  behind the Mustang when he initially started to flee.

22  76. A true and correct copy of the video of the coned path of travel of Day is attached to this

23  motion as an exhibit.

24  77. Aerial photographs were taken of the coned path of travel of Day from the Mustang to the

25  side yard area. I viewed the aerial photographs and they fairly and accurately portray the

26  path of travel of Day from the Mustang to the side yard area, with the exception that Day

27  went in front of the Mustang and not behind the Mustang when he initially started to flee.

28  78. A true and correct copy of the aerial photographs of the coned path of travel of Day is

attached to this motion as an exhibit.

79. On the date of the incident, I was five feet eleven inches tall and weighed approximately 180-190 pounds.

I declare under penalty of perjury the foregoing is true and correct.

Executed this _____|_____ day of August, 2008 at Wⁿ_ᵤ̃ᵤ̃ Cₒ₆ₑₑ____, California.

By: _____
Joshua Patzer, Declarant

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

# EXHIBIT B

1  JAMES V. FITZGERALD, III (State Bar No. 55632)
   NOAH G. BLECHMAN (State Bar No. 197167)
2  McNAMARA, DODGE, NEY, BEATTY, SLATTERY,
   PFALZER, BORGES & BROTHERS LLP
3  1211 Newell Avenue
   Post Office Box 5288
4  Walnut Creek, CA 94596
   Telephone: (925) 939-5330
5  Facsimile: (925) 939-0203

6  Attorneys for Defendant
   COUNTY OF CONTRA COSTA, JOSHUA PATZER, and
7  WARREN RUPF

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11 | SHAWN DAY, individually and as          Case No. C07-4335 PJH
   | successor in interest to the Estate of Steffen
12 | Matthew Day,                             **DECLARATION OF DEPUTY**
   |                                          **VORHAUER IN SUPPORT OF MOTION**
13 |            Plaintiff,                    **FOR SUMMARY JUDGMENT /**
   |                                          **SUMMARY ADJUDICATION**
14 |    vs.

15 | COUNTY OF CONTRA COSTA;
   | JOSHUA PATZER; WARREN RUPF, and
16 | Does 1 through 50, et al.,

17 |            Defendants.

18

19     I, Jason Vorhauer, hereby declare:

20  1. I am currently a Deputy Sheriff with the Contra Costa County Sheriff's Office, where I

21     have worked in that capacity since August of 2000. I have been a patrol officer for the last

22     two plus years with the Sheriff's Office, including on the date of the subject incident of

23     August 15, 2006. Since December of 2007, I have been acting as a detective.

24  2. I graduated from the police academy in August of 2000. Since the academy, I have

25     attended annual advanced officers' training with the Sheriff's Office.

26  3. On August 15, 2006, at approximately 1:45 a.m., while in a full Sheriff's Office uniform,

27     driving a marked Sheriff's Office patrol car performing patrol work with Deputy Patzer

28     (also in full uniform) in the Bay Point area of Contra Costa County, we noticed two

DECLARATION OF DEPUTY VORHAUER IN
SUPPORT OF MSJ/MSA - Case No. C07-4335 PJH

vehicles, a pickup truck and a black Mustang ("Mustang"), driving erratically and tailgating each other on the roadway.

4. I was driving the patrol vehicle so I made a turn and got behind the pickup truck which was behind the Mustang.

5. My partner, Deputy Patzer, was in the passenger seat of the patrol vehicle and was attempting to use the computer in the vehicle to run the license plate of the pickup truck.

6. We made a right turn onto a roadway while we followed the vehicles that were continuing to drive erratically.

7. As we got closer to the pickup truck, it appeared that the driver of the pickup truck noticed our police vehicle and then the pickup truck started to drive correctly.

8. On the other hand, the Mustang had sped up, continued to drive erratically and kept making right hand turns so our attention was then drawn to the Mustang.

9. We then followed the Mustang while Deputy Patzer was trying to run the license plate of the Mustang in the vehicle's computer to check on the status of the vehicle.

10. The vehicles made one or two turns and then came to a stop at some point as Deputy Patzer was trying to run the license plate of the Mustang.

11. When I looked at the trunk of the briefly stopped Mustang just before it continued to flee, I could see that it did not have a lock on the trunk which was indicative of a lock that had been punched, a common criminal technique used for car thefts.

12. At that point, I believed the vehicle may have been stolen so Deputy Patzer continued looking on the computer to see if we could confirm the vehicle's status and then myself and Deputy Patzer could develop a strategy if we were going to perform a felony traffic stop. The Mustang vehicle then continued to flee and drive on.

13. Before being able to confirm via computer whether or not the vehicle was listed as stolen, the Mustang pulled into a driveway. At that point, we activated both of our side spotlights to illuminate the vehicle as it was very dark out.

14. After illuminating the Mustang, I saw furtive movements inside of the vehicle by the three occupants. Also, the front two passengers appeared to be handing items to the passenger in

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

DECLARATION OF DEPUTY VORHAUER IN SUPPORT OF MSJ/MSA - Case No. C07-4335 PJH

2

1    the back seat. This is common behavior by suspects who are trying to hide or obtain

2    weapons or contraband.

3   15. At that point, we exited our patrol vehicle and I approached the Mustang on the driver's

4    side. I had my flashlight in my right hand as I approached.

5   16. As I approached, I saw glass on the floorboard on the driver's side and a "center punch"

6    tool in the center console area. I know that typically in a stolen vehicle there is broken

7    glass because of a forced entry and a "center punch" tool is a metal object often used to

8    break windows.

9   17. At around that same time, my partner, Deputy Patzer, informed me that there was no key in

10    the ignition, though the engine was idling, which was further evidence this vehicle was

11    stolen.

12   18. As the vehicle was still idling, I asked the driver (who turned out to be Decedent Steffen

13    Day ("Day")), to turn the vehicle off. He stated that he could not turn off the vehicle which

14    I interpreted to be due to the fact that the ignition had been illegally punched.

15   19. I then asked Day to step out of the vehicle. It was my normal practice to trap the driver

16    between the car and the door. However, because Day could not turn the vehicle off and

17    because I did not want Day to get back in the car and take off, potentially putting myself

18    and Deputy Patzer at risk of injury or death, I asked Day to step around the door towards

19    the front left panel of the vehicle.

20   20. I wanted to get Day away from the vehicle and then I was going to pat search him for

21    weapons.

22   21. Day stepped around the door while I followed him towards the front of the car.

23   22. When Day got to the front left panel of the vehicle, Day then started running around the

24    front of the car towards and past Deputy Patzer's location, between the vehicle and garage

25    door, and fled the scene over a fence.

26   23. Deputy Patzer then began chasing Day on foot and indicated to me that he was in a foot

27    pursuit with Day.

28   24. I did not get an opportunity to pat search Day for weapons so neither myself nor Deputy

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

Patzer was aware of whether Day had any weapons, like a gun or a knife, on his person when he fled.

25. After Day ran from the scene, I stayed with the two other passengers in the vehicle for officer safety reasons.

26. Approximately 30-40 seconds after Day ran from the scene, I heard a single gunshot nearby.

27. I then pulled out my firearm and pointed it at the two passengers in the Mustang as I did not know the circumstances surrounding the single gunshot.

28. I waited to hear from Deputy Patzer as to what was going on and shortly thereafter, Deputy Patzer broadcasted over the radio that shots had been fired, the suspect was down and Deputy Patzer was requesting Code 3 cover and for dispatch to send Code 3 fire and ambulance to the scene.

29. Once the other passengers in the Mustang were safety handcuffed, I located Deputy Patzer and asked him what happened. Deputy Patzer stated to me something to the effect of that the guy (Day) was on top of him (Deputy Patzer) and had hit him.

30. I could see a large fresh bump/knot injury on the left side of Deputy Patzer's forehead.

31. Soon thereafter, other officers arrived on the scene and I was quickly sequestered away from the scene and into a Sheriff's Office patrol vehicle while the other officers took control of the scene.

32. Overall, from the time we stopped our patrol car and got out of the car due to the Mustang occupants' behavior to the time when I heard the broadcast by Deputy Patzer that a gunshot had been fired, was a period of approximately two minutes.

I declare under penalty of perjury the foregoing is true and correct.

Executed this ___24___ day of July, 2008 at _WALNUT CREEK_, California.

By: _Jason Vorl_____
Jason Vorhauer, Declarant

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

# EXHIBIT C

1  Andrew C. Schwartz (State Bar No. 64578)
   Larry E. Cook (State Bar No. 122776)
2  **CASPER, MEADOWS, SCHWARTZ & COOK**
   A Professional Corporation
3  California Plaza
   2121 North California Blvd., Suite 1020
4  Walnut Creek, California 94596
   Telephone:   (925) 947-1147
5  Facsimile:   (925) 947-1131

6  Attorneys for Plaintiffs

*ORIGINAL FILED*

*AUG 2 2 2007*

*RICHARD W. WIEKING*
*CLERK, U.S. DISTRICT COURT*
*NORTHERN DISTRICT OF CALIFORNIA*

E-filing

PJH

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11  SHAWN DAY, individually and as            Case No.
    successor in interest to the Estate of
12  Steffen Matthew Day,                      **C 07 4335**

13              Plaintiff,                     COMPLAINT FOR DAMAGES
                                              (Violation of Civil Rights, Wrongful Death)
14       vs.
                                              Jury Trial Demanded
15  COUNTY OF CONTRA COSTA, JOSHUA
    PATZER, WARREN RUPF, and Does 1
16  through 50, et al.,

17              Defendants.

18                   **JURISDICTION & VENUE**

19       1.  This complaint alleges violations of the civil rights of Steffen Matthew Day,

20  deceased, and of SHAWN DAY, Steffen Matthew Day's father and sole heir at law.

21  This action arises under Title 42 United States Code section 1983.  Jurisdiction is

22  conferred upon this court by Title 28 United States Code sections 1331 and 1343.

23  The unlawful acts and practices alleged herein occurred in the City of Pittsburg, in

24  CONTRA COSTA COUNTY, California, which is within this judicial district.  Venue is

25  conferred upon this court by Title 28 United States Code section 1391(b).

26       2.  With respect to those claims brought pursuant to California law, plaintiff is

27  required to comply with an administrative claim requirement.  Plaintiff has complied

28  with all applicable requirements.

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147

*Day vs. County of Contra Costa*                                Page 1
COMPLAINT

3.  Plaintiff hereby demands a jury trial in this action.

## IDENTIFICATION OF PARTIES

4.  Plaintiff SHAWN DAY is a citizen of the United States and is a resident of the State of Louisiana. SHAWN DAY is the surviving father and sole heir at law of Steffen Matthew Day, deceased. Steffen Day was 17 years old at the time of his death. He died without leaving a will. SHAWN DAY brings this action individually, and as the successor in interest to the Estate of Steffen Matthew Day, in accordance with California Code of Civil Procedure sections 377.10 and 377.11.

5.  Defendant COUNTY OF CONTRA COSTA ("COUNTY") is a public entity, duly organized and existing under the laws of the State of California. COUNTY operates under its authority the Contra Costa County Sheriff's Office.

6.  Defendant JOSHUA PATZER ('PATZER") is a deputy sheriff with the Contra Costa County Sheriff's Office. Defendant PATZER is sued in this complaint in his individual capacity, acting under color of law and as an agent or employee of defendant COUNTY.

7.  Defendant WARREN RUPF ("RUPF") is the Sheriff of CONTRA COSTA COUNTY. Defendant RUPF is sued in this complaint in his individual capacity, acting under color of law and as an agent and employee of defendant COUNTY.

8.  Plaintiff is ignorant of the true names and capacities of defendants DOES 1 through 50, and therefore sues these defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each defendant so named is responsible in some manner for the injuries and damages suffered by plaintiff as described in this complaint. Plaintiff will amend his complaint to state the true names and capacities of defendants DOES 1 through 50 when they have been ascertained.

9.  Any reference in this complaint to "defendant," "defendants," or to a specifically-named defendant refers also to defendants DOES 1 through 50.

10. At all times mentioned in this complaint, defendants PATZER, RUPF, and DOES 1 through 50 were acting under color of law, and as the agents or employees of

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147

*Day vs. County of Contra Costa*

COMPLAINT

Page 2

1   defendant COUNTY.

2                              **STATEMENT OF FACTS**

3        11.  On the evening of August 14-15, 2006, decedent Steffen Matthew Day was

4   the driver of an automobile with two passengers in the vicinity of Bay Point and

5   Pittsburg in Contra Costa County.  Defendant PATZER was on duty, riding as the

6   passenger in a Sheriff's patrol vehicle driven by Deputy Sheriff Jason Vorhauer.

7   PATZER and Vorhauer followed the vehicle driven by Steffen Day for a number of

8   blocks, but did not attempt to stop Day's car.  Neither PATZER nor Vorhauer had any

9   information to suggest that Day or his passengers had committed any criminal

10  offense, or were wanted by law enforcement for any reason, although they believed

11  the car was being driven somewhat erratically.

12       12.  Day and his passengers noticed the patrol car behind them and were

13  curious whether the deputies were specifically following them.  Day drove the car into

14  a nearby residential neighborhood to see if the deputies would continue to follow.

15  When the deputies followed Day around each turn, Day pulled the car into the

16  driveway of house number 36 Galleon Way.

17       13.  Vorhauer stopped the patrol vehicle behind Day's car and the deputies

18  shined a spotlight to illuminate Day's car and its occupants.  Neither Vorhauer nor

19  PATZER had any obtained any additional information about the car or its occupants

20  before this point, although they noted that there was no lock on the car's trunk or rear

21  hatch.

22       14.  Vorhauer and PATZER approached Day's car on foot and directed Day

23  and his passengers to show their hands and remain inside the car.  PATZER drew his

24  service revolver.  PATZER and Vorhauer noted that the car driven by Day did not have

25  a key in the ignition.  Vorhauer directed Day to come out of the car and stand near its

26  engine compartment.  Day initially complied and then took flight, running toward an

27  adjacent home.

28       15.  PATZER followed Day at a sprint.  At the time PATZER pursued Day on

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147

*Day vs. County of Contra Costa*                                      Page 3
                          COMPLAINT

1    foot, PATZER had not obtained any additional information about Day other than his

2    apparent desire to flee from the two deputies.

3        16.  Day climbed or jumped over several fences in the attempt to flee from

4    PATZER.  PATZER followed Day and attempted to seize Day in a dark, fenced area

5    alongside house number 26 Galleon Way.

6        17.  Without justification or provocation, less than one minute after Day first ran

7    from the deputies, PATZER intentionally fired his service revolver at Day.

8        18.  Day did not exhibit any conduct to warrant the use of deadly force by

9    PATZER.  There were no grounds to support an objective belief by a reasonably

10   trained peace officer that the use of deadly force against Day was consistent with

11   state and federal law and the policies of the Contra Costa Sheriff's Office, or in

12   accordance with PATZER's training in the use of deadly force.

13       19.  PATZER's bullet entered Day's abdomen several inches to the left of his

14   navel, and lodged in Day's right buttock after passing through the iliac artery and right

15   pelvic bone.

16       20.  PATZER saw Day attempting to stand after the shot was fired.  PATZER

17   directed Day to stay on the ground.  Day lay on the ground and did not attempt to get

18   up again.

19       21.  Day later died as a result of the gunshot wound inflicted by PATZER.

20       22.  Plaintiff is informed and believes, and on that basis alleges that defendant

21   RUPF reviewed and investigated the conduct of PATZER which resulted in the death

22   of Steffen Matthew Day.  After reviewing the evidence regarding PATZER's use of

23   deadly force against Steffen Matthew Day, defendant RUPF had actual and/or

24   constructive knowledge that PATZER's use of deadly force against Steffen Matthew

25   Day was excessive, unjustified, illegal, and unconstitutional.  Plaintiff is further

26   informed and believes, and on that basis alleges that, despite this knowledge,

27   defendant RUPF determined that the use of deadly force by PATZER was not

28   improper, and declined to take any disciplinary action against PATZER.  In addition,

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147

Day vs. County of Contra Costa                                    Page 4

COMPLAINT

1   plaintiff is informed and believes, and on that basis alleges that defendant RUPF had

2   prior notice and knowledge of other incidents involving the use of excessive force by

3   defendant PATZER.    Despite such notice and knowledge, RUPF failed to timely,

4   reasonably, properly, or adequately investigate, discipline, supervise, or train

5   defendant PATZER with respect to the appropriate use of force, including deadly

6   force.  The injuries alleged in this complaint are a proximate result of the conduct of

7   RUPF in the supervision and training of PATZER.

8       23.  Plaintiff SHAWN DAY was physically, mentally, emotionally, and financially

9   injured and damaged as a proximate result of defendants' conduct and as a proximate

10  result of his son's wrongful death.  SHAWN DAY has suffered the loss of decedent's

11  society, comfort, protection, companionship, love, solace, affection, and moral

12  support, as well as the loss of decedent's financial support and future financial

13  support.  SHAWN DAY has also suffered the violation of his constitutionally-protected

14  liberty interest in the preservation of his paternal relationship with Steffen Matthew

15  Day.  In addition to these damages, plaintiff has incurred funeral and burial expenses.

16      24.  As a proximate result of defendants' conduct, decedent Steffen Matthew

17  Day suffered physical pain, emotional distress, and violation of his constitutional

18  rights, prior to his death from the gunshot wound inflicted by PATZER.

19      25.   The conduct of defendant PATZER was malicious, wanton, and

20  oppressive.  Plaintiff is therefore entitled to an award of punitive damages against

21  PATZER.

22      26.  Plaintiff found it necessary to engage the services of private counsel to

23  vindicate his rights, and the rights of decedent under the law.  Plaintiff is therefore

24  entitled to recover all attorney's fees incurred in relation to this action pursuant to Title

25  42 United States Code section 1988.

26  ///

27  ///

28  ///

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147

Day vs. County of Contra Costa

COMPLAINT

Page 5

# FIRST CLAIM FOR RELIEF

## 42 U.S.C. Section 1983 - Violation of Decedent's Rights

## (By SHAWN DAY, As Successor In Interest To The Estate of Steffen Matthew Day, Against Defendant PATZER)

27. Plaintiff realleges and incorporates by reference paragraphs 1 through 26 as though fully set forth in this claim for relief.

28. Defendant PATZER acted under color of law in shooting decedent without lawful justification, thereby depriving decedent of certain constitutionally-protected rights, including, but not limited to the right to be free from the use of excessive force by law enforcement officers, as guaranteed by the fourth amendment to the United States Constitution.

29. As a proximate result of the conduct of defendant PATZER, decedent suffered physical pain and emotional distress prior to his death and incurred general damages for the deprivation of his constitutional rights.

30. Defendant PATZER acted in reckless and callous disregard for the constitutional rights of decedent, and with willful oppression and malice. Plaintiff therefore seeks an award of punitive damages against PATZER.

WHEREFORE, plaintiff prays for relief as set forth below.

# SECOND CLAIM FOR RELIEF

## 42 U.S.C. Section 1983 - Violation of Plaintiff's Right to Maintain Parental Relationship By SHAWN DAY, individually, Against Defendant PATZER

31. Plaintiff realleges and incorporates by reference paragraphs 1 through 26 as though fully set forth in this claim for relief.

32. The intentional killing of plaintiff's decedent without lawful justification or provocation constituted an arbitrary abuse of police power under color of state law. In addition, defendant intentionally attempted to conceal the use of excessive force to hide the true cause of the decedent's death and deprive plaintiff of his right to seek redress, which further constituted an arbitrary abuse of police power under color of

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147

*Day vs. County of Contra Costa*

COMPLAINT

Page 6

1  state law.  The conduct of defendant therefore violated the liberty interest of plaintiff in

2  his parental relationship with decedent, an interest which is protected by the

3  Fourteenth Amendment to the United States Constitution.

4      33.  As a proximate result of defendant's violations of plaintiff's fourteenth

5  amendment rights, plaintiff suffered the loss of the love, companionship, society,

6  comfort, services, and moral and financial support of the decedent, and his sense of

7  security, dignity, and pride as an American citizen.

8      34.  Defendant PATZER acted in reckless and callous disregard for the

9  constitutional rights of plaintiff, and with willful oppression and malice.  Plaintiff

10  therefore seeks an award of punitive damages against defendant PATZER.

11      WHEREFORE, plaintiff prays for relief as set forth below.

12  **THIRD CLAIM FOR RELIEF**

13  **42 U.S.C. Section 1983 - Violation of Plaintiff's and Decedent's Rights**

14  **(By SHAWN DAY, Individually and As Successor In Interest To The Estate of**

15  **Steffen Matthew Day, Against Defendant RUPF)**

16      35.  Plaintiff realleges and incorporates by reference paragraphs 1 through 26

17  as though fully set forth in this claim for relief.

18      36.  Plaintiffs are informed and believe and on that basis allege that defendant

19  RUPF participated in the violation of SHAWN DAY's rights and the rights of plaintiff's

20  decedent by failing to provide adequate training, supervision, discipline, and control of

21  defendant PATZER with respect to the constitutionally appropriate use of force,

22  including deadly force.  Plaintiffs are further informed and believe and on that basis

23  allege that defendant RUPF, in his individual capacity, participated in the violation of

24  plaintiff's rights and the rights of plaintiff's' decedent by ratifying the conduct of

25  defendant PATZER, as described in this complaint, thereby acquiescing in the

26  deprivation of those rights.

27      WHEREFORE, plaintiff prays for relief as set forth below.

28  ///

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147

Day vs. County of Contra Costa

COMPLAINT

Page 7

### FOURTH CLAIM FOR RELIEF

#### Wrongful Death

#### By SHAWN DAY, individually, Against All Defendants

37. Plaintiff realleges and incorporates by reference paragraphs 1 through 26 as though fully set forth in this claim for relief.

38. At all times mentioned in this complaint, each of the defendants, including all defendants sued under fictitious names, was the agent and employee of each of the remaining defendants, and was acting within the course and scope of this agency or employment.

39. At all times mentioned in this complaint, defendants had a duty to use reasonable care to avoid causing foreseeable harm to decedent. Defendant PATZER breached this duty of care in battering decedent and in negligently using excessive and deadly force against decedent, and in causing decedent's death. Defendant RUPF and DOES 1 through 50 breached this duty of care in negligently hiring, training, retaining, supervising, and disciplining defendant PATZER. The negligent acts and omissions of defendants, and each of them, proximately caused the decedent's death.

40. Plaintiff was dependent upon decedent for love, society, comfort, companionship, and moral and financial support. As a proximate result of the defendants' negligence and the wrongful death of plaintiff's decedent, plaintiff suffered pecuniary damages, and incurred burial and funeral expenses.

WHEREFORE, plaintiff prays for relief as set forth below.

### FIFTH CLAIM FOR RELIEF

#### California Civil Code Section 52.1

#### By SHAWN DAY, as Successor in Interest To The Estate of Steffan Matthew Day, Against Defendants PATZER and COUNTY

41. Plaintiff realleges and incorporates by reference paragraphs 1 through 26 as though fully set forth in this claim for relief.

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147

Day vs. County of Contra Costa                    COMPLAINT                    Page 8

42.  In using unreasonable and deadly force against the decedent, defendant PATZER, acting within the course and scope of his employment with COUNTY, interfered and attempted to interfere with the rights of Steffen Matthew Day under the Fourth Amendment to the United States Constitution and under Article I, Section 13 of the California Constitution by threats, intimidation, and coercion.

43.  As a proximate result of the conduct of defendant PATZER, plaintiff suffered damages, as described in this complaint, including actual damages within the meaning of California Civil Code section 52.

44.  As a proximate result of the unlawful threats, intimidation, and coercion employed by defendant PATZER, plaintiff is entitled to an award of exemplary damages, civil penalties, and attorneys' fees, as provided by California Civil Code section 52.

WHEREFORE, plaintiffs pray for relief as follows:

1.  For general damages, according to proof;

2.  For special damages, according to proof;

3.  For pecuniary damages, according to proof;

4.  For funeral and burial expenses according to proof;

5.  For punitive damages against the individually-named defendants;

6.  For actual damages, civil penalties, and exemplary damages pursuant to California Civil Code section 52;

7.  For attorneys' fees pursuant to 42 U.S.C. section 1988 and California Civil Code section 52;

8.  For costs of suit incurred herein; and

9.  For such other and further relief as the court may deem just and proper.

Dated:  August  22, 2007

Andrew C. Schwartz
CASPER, MEADOWS, SCHWARTZ & COOK
Attorneys for Plaintiff

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147

Day vs. County of Contra Costa                    COMPLAINT                    Page 9

# EXHIBIT D

1    JAMES V. FITZGERALD, III (State Bar No. 55632)
     NOAH G. BLECHMAN (State Bar No. 197167)
2    MᶜNAMARA, DODGE, NEY, BEATTY, SLATTERY,
     PFALZER, BORGES & BROTHERS LLP
3    1211 Newell Avenue
     Post Office Box 5288
4    Walnut Creek, CA 94596
     Telephone: (925) 939-5330
5    Facsimile: (925) 939-0203

6    Attorneys for Defendant
     COUNTY OF CONTRA COSTA, JOSHUA PATZER, and
7    WARREN RUPF

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11   SHAWN DAY, individually and as          Case No. C07-4335 PJH
     successor in interest to the Estate of Steffen
12   Matthew Day,                            **DECLARATION OF DR. BRIAN
                                             PETERSON**
13              Plaintiff,

14        vs.

15   COUNTY OF CONTRA COSTA;
     JOSHUA PATZER; WARREN RUPF, and
16   Does 1 through 50, et al.,

17              Defendants.

18

19        I, Dr. Brian Peterson, hereby declare:

20   1.   I am a physician currently licensed in Ohio, California and Wisconsin, and my specialty is

21        forensic pathology.  I am certified by the American Board of Pathology in combined

22        Anatomic and Clinical Pathology (1987) and Forensic Pathology (1989), with subsequent

23        voluntary recertification in 2002.  Forensic Pathology as a medical subspecialty deals

24        specifically with cause and manner of death in the medical-legal setting.  The following

25        experience qualifies me to give this declaration:

26        A.    Forensic Autopsies – over 7000 to date;

27        B.    Membership in Relevant Professional Organizations

28              a.    College of American Pathologists (Fellow);

DECLARATION OF DR. PETERSON IN SUPPORT
OF MSJ/MSA - Case No. C07-4335 PJH

MᶜNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1     b.  National Association of Medical Examiners (Member);

2     c.  American Academy of Forensic Sciences (Fellow).

3  2. On or about August 15, 2006, I was employed as a forensic pathologist by Forensic

4    Medical Group, a group that provided coroner related services to various agencies in

5    Northern California, including for the County of Contra Costa.

6  3. On or about August 15, 2006, I personally examined Steffen Matthew Day's ("Decedent")

7    body several hours after he was pronounced dead on August 15, 2006 at 2:55 a.m. at

8    Sutter Delta Hospital, per my duties on behalf of the Contra Costa County Coroner's

9    Office.

10  4. Decedent's body measured approximately 71 inches in length (5 foot 11 inches) and

11    weighed 178.5 pounds.

12  5. From my information and examination, it was apparent that Decedent suffered a gunshot

13    injury. The bullet came through the front of Decedent's body, went through his

14    abdominal wall and severed a key artery, then lodged in his pelvis.

15  6. The cause of Decedent's death was internal bleeding due to the gunshot wound.

16  7. Upon external examination, I found fresh scratches on the back of Decedent's right hand

17    which were consistent with Decedent being in a struggle and punching. I also found a

18    fresh abrasion in the middle of Decedent's forehead that was a brush-type abrasion. He

19    also had a fresh abrasion on his chest that was reminiscent and matched a pattern of

20    contact with a fence.

21  8. Some of Decedent's fluids were tested for toxicological results. In terms of toxicology, a

22    significant amount (0.55 micrograms per ml.) of methamphetamine was detected in

23    Decedent's system at the time of his death.

24  9. It is generally accepted in the medical community that a methamphetamine level higher

25    than 0.50 is deemed a lethal level and Decedent's level was above that lethal level.

26  10. It is also very likely that Decedent had a higher level of methamphetamine in his system at

27    the time of the shooting incident which was then diluted during the introduction of

28    intravenous fluids for Decedent's emergency medical treatment.

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P. O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

11. Decedent also had an amphetamine level of 0.04 micrograms per ml. which means that only a small amount of methamphetamine was actually metabolized. This indicated that Decedent used methamphetamine recently before his death.

12. Overall, a large and recent dose of methamphetamine was found in Decedent's system at the time of his death.

I declare under penalty of perjury the foregoing is true and correct.

Executed this 28 day of July, 2008 at Mukwonago, Wisconsin.

By: _____
Dr. Brian Peterson, Declarant

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

# EXHIBIT E

JAMES V. FITZGERALD, III (State Bar No. 55632)
NOAH G. BLECHMAN (State Bar No. 197167)
McNAMARA, DODGE, NEY, BEATTY, SLATTERY,
PFALZER, BORGES & BROTHERS LLP
1211 Newell Avenue
Post Office Box 5288
Walnut Creek, CA 94596
Telephone: (925) 939-5330
Facsimile:  (925) 939-0203

Attorneys for Defendant
COUNTY OF CONTRA COSTA, JOSHUA PATZER, and
WARREN RUPF

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN DAY, individually and as successor in interest to the Estate of Steffen Matthew Day,<br><br>            Plaintiff,<br><br>    vs.<br><br>COUNTY OF CONTRA COSTA; JOSHUA PATZER; WARREN RUPF, and Does 1 through 50, et al.,<br><br>            Defendants. | Case No. C07-4335 PJH<br><br>**DECLARATION OF MONICA SIEGRIST** |

I, Monica Siegrist, hereby declare:

1. I am employed as a forensic toxicologist with the Forensic Services Division of the Contra Costa County Sheriff's Office where I perform forensic testing work.

2. On or about August 15, 2006, our office received samples of blood of Decedent Steffen Day ("Decedent") from the hospital, as requested by Dr. Brian Peterson, the forensic pathologist, for toxicological testing.

3. Per the normal course of our business, such toxicological testing was performed by myself and other staff members of the Forensic Services Division and the results of such testing are reflected in the one page Report of Toxicology Examination ("Toxicology Report") generated by myself, a forensic toxicologist, dated August 29, 2006, attached hereto. This

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

1  Toxicology Report was directed to the attention of the Contra Costa County Coroner's

2  Office and is referenced as Case No. 06-1850.

3  4. The Toxicology Report was drafted and/or generated at or around the time of the

4  toxicology testing of Decedent's blood by employees with knowledge and information of

5  such toxicological testing.

6  5. Such Toxicology Report is kept and maintained by the custodian of records on behalf of

7  the Forensic Services Division of the Contra Costa County Sheriff's Office in the course

8  of their regular business activities.

9  6. It is the regular business practice of the Forensic Services Division of the Contra Costa

10  County Sheriff's Office to create and maintain such toxicology reports, similar to the

11  Toxicology Report generated pertaining to Decedent.

12  7. This testing was performed under proper chain of custody protocol and such chain of

13  custody records are maintained at Forensic Services Division of the Contra Costa County

14  Sheriff's Office.

15  8. Decedent's blood tested positive for methamphetamine in the amount of 0.55 micrograms

16  per ml. and positive for amphetamine at the level of 0.04 micrograms per ml.

17

18  I declare under penalty of perjury the foregoing is true and correct.

19

20  Executed this _29_ day of July, 2008 at _Martinez_, California.

21

22  By: _M Siegrist_

23  Monica Siegrist, Declarant

24

25

26

27

28

DECLARATION OF TOXICOLOGIST IN SUPPORT          2
OF MSJ/MSA - Case No. C07-4335 PJH

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP
ATTORNEYS AT LAW
P.O. BOX 5288, WALNUT CREEK, CA 94596
TELEPHONE: (925) 939-5330

**FORENSIC SERVICES DIVISION**
Office of the Sheriff, Contra Costa County
**REPORT OF TOXICOLOGY EXAMINATION**

| Laboratory Number | Type of Case | Date(s) of Examination |
|---|---|---|
| 06-009865 - 0002 | Homicide | 8/23/06 - 8/29/06 |

| Requesting Agency & Case Number | Date of Request | Examination Requested By |
|---|---|---|
| Coroner's Office  06-1850 | 08/15/2006 | Peterson |

| Complainant(s) | Suspect(s) |
|---|---|
| PEOPLE | -------- |

## DESCRIPTION OF EVIDENCE:

**The following evidence was received from Sandy Jagoda by Kathy Master on 8/15/2006**

**Submission #001:**

- ☐ One tape sealed sample envelope Kit #   ☐ Blood Alcohol/Drug(s)   ☐ Urine Alcohol/Drug(s)
- ☒ One tape sealed plastic bag containing Coroner's   ☒ Blood   ☐ Urine   ☐ Vitreous   ☐ Other
     hospital

## EXAMINATION RESULT(S):

☒ The sample was NEGATIVE for the following drug classes:          Test Subject's Name

- ☐ Amphetamines          ☐ Acid/Neutral Drugs
- ☒ Cocaine/Cocaine Metabolite          ☐ Basic Drugs          **Day, Steffen**
- ☒ Opiates (Codeine/Morphine)
- ☒ Benzodiazepines          ☐ Other: _____

☒ The following drug(s) were IDENTIFIED in the sample:
☐ The sample SCREENED POSITIVE for the following drug(s):

| | | mcg/ml | | mcg/ml |
|---|---|---|---|---|
| ☒ Amphetamines | Methamphetamine | 0.55 | Amphetamine | 0.04 |
| | MDMA* | ⊝ | MDA** | ⊝ |
| ☐ Cocaine/Cocaine Metabolite | Cocaine | _____ | Coc. Metabolite | _____ |
| ☐ Opiates (Codeine/Morphine) | Morphine | _____ | Codeine | _____ |
| | Hydrocodone | _____ | Hydromorphone | _____ |
| ☐ Benzodiazepines | Diazepam | _____ | Nordiazepam | _____ |
| | Oxazepam | _____ | Temazepam | _____ |
| ☐ Carboxy-Tetrahydrocannabinol | | _____ | | |
| ☐ Gamma-Hydroxybutyrate (GHB) | | _____ | | |
| ☐ Acid-Neutral Drug(s) | | _____ | | |
| ☐ Basic Drug(s) | | _____ | | |
| ☐ Other | | _____ | | |

*Methylenedioxymethamphetamine          **Methylenedioxyamphetamine

If a drug is not reported as positive, it indicates either that it was not detected or, if a drug was detected, it was present at a concentration less than this Laboratory's established cut-off levels.  All confirmations, if required, are done by Gas Chromatography/Mass Spectrometry.

## REMARKS:

| Signature & Date | | Distribution: |
|---|---|---|
| M Siegrist  AUG 29 2006 | | ☐ Agency  ☐ District Attorney  ☐ Other  ☒ File |
| Reported By & Title | | |
| Monica Siegrist, Forensic Toxicologist | | |
| Approved by Supervising Forensic Toxicologist | | For Additional Information Call: |
| Niraajit Gill | | (925) 646-2455 |

RECEIVED
SEP - 5 2006
CORONER CONTRA COSTA COUNTY
Martinez, California

CL-209 (rev. 1/02)