1  Andrew C. Schwartz (State Bar No. 64578)
   Larry E. Cook (State Bar No. 122776)
2  Thom Seaton (State Bar No. 62317)
   **CASPER, MEADOWS, SCHWARTZ & COOK**
3  A Professional Corporation
   California Plaza
4  2121 North California Blvd., Suite 1020
   Walnut Creek, California 94596
5  Telephone:  (925) 947-1147
   Facsimile:  (925) 947-1131
6
   Attorneys for Plaintiff
7  SHAWN DAY

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12  SHAWN DAY, individually and as          | **Case No. C07-4335-PJH**
    successor in interest to the Estate of
13  Steffen Matthew Day,                     | **PLAINTIFF'S MEMORANDUM IN
                                             | OPPOSITION TO DEFENDANTS'
14                       Plaintiff,          | MOTION FOR SUMMARY JUDGMENT /
                                             | SUMMARY ADJUDICATION**
15       vs.

16  COUNTY OF CONTRA COSTA, JOSHUA
    PATZER, WARREN RUPF, and Does 1
17  through 50, et al.,                       | Date:    September 10, 2008
                                             | Time:    9:00 a.m.
18                       Defendants.          | Judge:   Honorable Phyllis J. Hamilton
                                             | Dept:    Courtroom 3, 17th Floor (SF)
19

20

21

22

23

24

25

26

27

28

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

1

2

# TABLE OF CONTENTS

Overview of Plaintiff's Opposition ...................................................................1

Statement of Facts ..........................................................................................2

Deputy Patzer and His Partner Notice A Ford Mustang Driving
Erratically; Believing The Car May Be Stolen, They Follow The
Mustang Into A Driveway Before Receiving Confirmation That
The Vehicle Is Stolen, The Deputies Approach The Car.....................................4

The Mustang's Driver, 17 Year-Old Steffen Day, Flees And
Deputy Patzer Give Chase, A Reckless And Dangerous
Departure From Established Police Tactics .....................................................4

Viewing The Evidence In Plaintiff's Favor, Deputy Patzer
Shoots And Kills The Unarmed Steffen Day Although Day Has
Inflicted No Serious Injury To Patzer And Is Not Threatening
The Deputy With Serious Injury Or Death When The Deputy
Kills Him .........................................................................................................5

Legal Argument ............................................................................................10

I.      Principles Of Qualified Immunity ...........................................10

II.     The Law Governing Excessive Force ....................................11

III.    The Ninth Circuit Has Reiterated That Excessive Force
        Cases Are Not Amenable To Resolution By Summary
        Judgment..............................................................................13

IV.     Substantial Evidence Exists That Deputy Patzer's Use
        Of Deadly Force Was Not Objectively Reasonable And
        That He Therefore Violated Steffen Day's Fourth Amendment
        Right Not To Be Seized Unlawfully; In Any Event, Triable
        Issues Of Fact Exist As To Whether Deputy Patzer Used
        Excessive Force ....................................................................

        A. Under Deputy Patzer's Own Version Of The Facts, His
           Use Of Deadly Force Was Not Objectively Reasonable ..................14

        B. Given The Factual Conflicts And Competing Inferences
           Which A Reasonable Jury May Infer From The Record;
           The Court May Not Find As A Matter Of Law That No
           Constitutional Violation Occurred ......................................................15

V.      Clearly Established Law Prohibited Deputy Patzer's Use
        Of Deadly Force Against The Unarmed Steffen Day; In
        Any Event Competing Inferences From The Record
        Preclude Summary Judgment On Qualified Immunity.............................17

CASPER, MEADOWS
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

- i -

A.  Defendants' Case Are Readily Distinguishable;  In Virtually Every Case Defendants Cite, The Suspect Was Armed And/Or Witnesses Corroborated The Officer's Testimony .......................................................................... 18

VI.   Plaintiff's Fourteenth Amendment Claim Survives Summary Judgment ............................................................................. 22

VII.  Plaintiff Has Viable Monell Claims Under Failure To Train And Ratification Theories ............................................................. 22

VIII.  The County May Be Held Liable Under State Law ................................ 24

CONCLUSION     ............................................................................................ 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CASPER, MEADOWS
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

1

# TABLE OF AUTHORITIES

2

<u>CASES</u>

3

*Acosta v. City and County of San Francisco*
 83 F.3d 1143 (9th Cir. 1996) ............................................................................ 19

4

*Adams v. Speers*
 473 F.3d 989, 993 (9th Cir. 2007) .................................................................... 11

5

6

*Banner v. Leeds*
 (2000) 24 Cal.4[th] 676 .......................................................................................... 25

7

*Beckett-Crabtree v. Hair*
 2007 WL 3311393, (N.D. Okla. 2007) ............................................................. 21

8

9

*Berry v. City of Detroit*
 25 F.3d 1342, 1345-1346 (6ht Cir. 1994( .......................................................... 23

10

*Billington v. Smith*
 292 F.3d 1177 (9th Cir. 2002) .......................................................................... 19

11

12

*Blackhawk v. City of Chubbuck*
 488 F.Supp.2d 1097, 1104-1105 (D. Idaho 2006) ............................................ 11

13

*Blanford v. Sacramento County*
 406 F.3d 1110 (9th Cir. 2005) .......................................................................... 20

14

15

*Board of the County Commissioners of Bryan County, Oklahoma v. Brown*
 520 U.S. 397, 409 (1997) .................................................................................... 24

16

*Boyd v. City of San Francisco*
 2007 WL 1202521 (N.D. Cal. 2007) .................................................................. 20

17

18

*Brossau v. Haugen*
 543 U.S. 194 (2004) ............................................................................................. 18

19

*Brown v. San Francisco Sheriffs Dept.*
 WL 4166007, 2-3 (N.D. Cal., 2007) ............................................................. 13, 24

20

21

*Chew v. Gates*
 27 F.3d 1432, 1441, n.5 (9th Cir. 1994) .......................................................... 12

22

*City of Canton v. Harris*
 489 U.S. 378 (1989( ............................................................................................. 23

23

24

*Curley v. Klem*
 298 F.3d 271, 278 (3d Cir. 2002) ...................................................................... 17

25

*Dale v. Fernandez*
 2007 WL 640640 at 2 (N.D. Cal. 2007) ............................................................ 14

26

27

*Davis v. City of Las Vegas*
 478 F.3d 1048, 1054 (9th Cir. 2007) ............................................................... 12

28

CASPER, MEADOWS
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

1

2

*Davis v. Mason County*
    927 F.2d 1473, 1484-85 (ith Cir. 1991) ...................................................... 12, 23

3

*Deorle v. Rutheford*
    272 F.3d 1272, 1281 (9th Cir. 2001) .......................................................1, 12, 15

4

5

*Drummond ex rel. Drummond y. City of Anaheim*
    343 F.3d 1052, 1059 (9th Cir. 2003) .......................................................... 12, 13

6

*Figueroa v. Gates*
    207 F.Supp.2d 1085, 1083 (C.D. Cal. 202) ...................................................... 11

7

*Forrett v. Richardson*
    112 F.3d 416, 418 (9th Cir. 1997) .............................................................. 19, 20

8

9

*Foster v. City of Philadelphia*
    2004 WL 225041, at 14 (E.D. Pa. 2004) ........................................................... 23

10

*Harris v. Roderick*
    126 F.3d 1189, 1203 (9th Cir. 1997) ............................................. 10, 11, 14, 17

11

12

*Hays v. Ellis*
    331 F.Supp.2d 1303, 1308 (D. Colo. 2004) ...................................................... 13

13

*Ingle ex. Rel. Estate of Ingle v. Yelton*
    439 F.3d 191, 195 (4th Cir. 2006) ..................................................................... 3

14

15

*Johnson v. State of California*
    69 Cal.2d 782 (1968)........................................................................................ 25

16

*Larez v. City of Los Angeles*
    946 F.2d 630, 635 (9th Cir. 1991) .............................................................. 12, 22

17

18

*Liston v. County of Riverside*
    120 F.3d 965, 976 n. 10, 977 (9th Cir. 1997) .................................................. 13

19

*Long v. County of Los Angeles*
    442 F.3d 1178, 1188 (9th Cir. 2006) ................................................................ 23

20

21

*Marshall v. Castro*
    2008 WL 649813 at 11 (E.D. Cal. 2008) .......................................................... 13

22

*McCorkle v. City of Los Angeles*
    70 Cal.2d 252, 261 (1969)................................................................................ 25

23

24

*McRorie v. Shimoda*
    795 F.2d 780, 784 (9th Cir. 1986) .................................................................... 22

25

*Megargee v. Wittman*
    550 F.Supp.2nd 1190, 1200-1201 (E.D. Cal. 2008) ................................3, 11, 12

26

*Menuel v. City of Atlanta*
    25 F.3d 990 (11th Cir. 1994) ............................................................................ 19

27

28

CASPER, MEADOWS
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

1    *Munger v. City of Glasglow Police Dept.*
        227 F.3d 1082, 1088 (9th Cir. 2000) ....................................................23
2
     *Munoz v. City of Union City*
3        120 Cal.App.4th 1077, 1102 (2004) ....................................................24

4    *Murray v. Stockton*
         2007 WL 172521, at 5 (E.D. Tenn. 2007) ...........................................17
5
     *Obert ex. Rel. Estate of Obert v. Vargo*
6        331 F.3d 2937 (2nd Cir. 2003)..............................................................3

7    *Parks v. Pomeroy*
         387 F.3d 949 (9th Cir. 2004) ...............................................................20
8
     *People v. Rivera*
9        8 Cal.App.4th 1000, 1007(1992) ........................................................25

10   *Price v. Sery*
         513 F.3d 962, 969 (9th Cir. 2008) ..................................................12, 14
11
     *Romero v. Board of County Commissioners of Lake, State of California*
12       60 F.3d 702 (19th Cir. 1995) ..............................................................20

13   *Rosales v. City of Phoenix*
         202 F.Supp.2d 1055, 1030 (D.Ariz., 1999).........................................13
14
     *Reed v. City of Cleveland*
15       2006 WL 3861082 at 14 (N.D. Ohio 2006)............................................3

16   *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*
         402 F.3d 962 (9th Cir. 2005) ...............................................................10
17
     *Santos v. Gates*
18       287 F.3d 846, 853 (9th Cir. 2002) .......................................................13

19   *Saucier v. Katz*
         533 U.S. 194 (2001)......................................................................10, 18
20
     *Scott v. Harris*
21       127 S.Ct. 1769, 1774 (2007)............................................................2, 10

22   *Scott v. Henrich*
         39 F.3d 912, 915 (9th Cir. 1994) ...................................................3, 13, 14
23
     *Sigley v. City of Parma Heights*
24       437 F.3d 527, 535-536 (6th Cir. 2006) ................................................18

25   *Smith v. City of Hemet*
         394 F.3d at 689, 701 (9th Cir. 2005) ..........................................1, 12, 13
26
     *Smith v. Freeland*
27       954 F.3d 343 (6th Cir. 1992) .........................................................18, 19

28

CASPER, MEADOWS
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Tennessee v. Garner*
    471 U.S. 1, 11, (1985) .........................................................4, 11, 17, 24

*Tom v. Voida*
    963 F.2d 952 (7th Cir. 1992) .................................................................21

*Wall v. County of Orange*
    364 F.3d 1107, 1111 (9th Cir.2004) ......................................................14

*Watson v. Albin*
    551 F.Supp.2d 954, 959 (N.D. Cal. 2008).............................................14

*Wilkins v. City of Oakland*
    350 F. 3d 949, 955-956 (9th Cir. 2003) .................................................17

*Winterrowd v. Nelson*
    480 F.3d 1181, 1185 (9th Cir. 2007) ...............................................12, 14

CASPER, MEADOWS
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

**OVERVIEW OF PLAINTIFF'S OPPOSITION**

In the early hours of August 15, 2006, Contra Costa County Sheriff's Deputy Joshua Patzer began a foot pursuit of unarmed 17 year-old Steffen Day. After a chase which took the Deputy over a wall and through tall bushes, Patzer and Day crashed through a gate and into the yard of 26 Galleon Way in Pittsburg. It was pitch black with virtually no visibility and the yard was strewn with debris, toys and garbage bags. According to the Deputy, Steffen Day punched him in the head, and shortly thereafter began swinging at him and pushed him several times, causing the Deputy to fall into the debris. Deputy Patzer backed into an air conditioner located near the gate, believed that Day's confederates had ambushed Patzer and the Deputy shot and killed the unarmed juvenile. Patzer was crouched, but the bullet took a downward trajectory through Steffen Day's body. During the short altercation, Deputy Patzer sustained a bump on his forehead, scrapes on his hands and his knee and a mark on his uniform back.

In fact, the record reveals that Deputy Patzer sustained no serious physical harm and was not threatened with such harm when he killed Steffen Day. Neighbors who heard, but did not see the confrontation, state that Patzer likely struck his forehead on the air conditioner when he fell through the gate, an inference supported by the Patzer's statement to his patrol sergeant before he spoke with his counsel. No one was in the yard besides Patzer and Day. What Patzer thought was an ambush was actually the Deputy backing into the air conditioner, a fact which Defendants admit. The Deputy's conduct was based solely on his subjective fear, unconnected to objective facts. *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir.2001); Declaration of Roger Clark, ¶¶ 10, 18.

In any event, issues of fact permeate the record. What was Deputy Patzer's physical and mental state that night? Did Deputy Patzer suffer serious physical harm at the hands of Steffen Day prior to the shooting? Was Steffen Day getting the better of the fight? Did Patzer ever signal Day that Day could flee unmolested? Did Day pose a threat of serious bodily harm or death to Patzer when Patzer shot him? Could Deputy Patzer have resorted to other means of self-defense? How serious was Day's crime and what did Deputy Patzer know? Could Patzer have warned Day that he was about to use deadly force? In *Smith v. City of Hemet*, 394 F.3d

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

689, 701 (9th Cir. 2005), the Ninth Circuit noted that it had "held on many occasions" that summary judgment should only be "granted sparingly" in excessive force cases "'[b]ecause [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom.'" Because the record supports conflicting inferences, the Court must deny summary judgment. [1]

## STATEMENT OF FACTS

In seeking summary judgment, the law enforcement defendants rely almost entirely on the testimony of Defendant Deputy Joshua Patzer. Steffen Day cannot provide his own sworn competing account of the events which occurred in the back yard of 26 Galleon Way in Pittsburg, California in the early hours of August 15, 2006.

In *Scott v. Henrich,* 39 F.3d 912, 915 (9th Cir. 1994), the Ninth Circuit emphasized that a court must be particularly careful in approaching a summary judgment motion in a deadly force case where the law enforcement defendants primarily rely on the version of events provided by the lone survivor of the confrontation.

> Deadly force cases pose a particularly difficult problem under this regime because the officer defendant is often the only surviving eyewitness. Therefore, the judge must ensure that the officer is not taking advantage of the fact that the witness most likely to contradict his story-the person shot dead-is unable to testify. The judge must carefully examine all the evidence in the record, such as medical reports, contemporaneous statements by the officer and the available physical evidence, as well as any expert testimony proffered by the plaintiff, to determine whether the officer's story is internally consistent and consistent with other known facts. *Hopkins,* 958 F.2d at 885-88; *Ting v. United States,* 927 F.2d 1504, 1510-11 (9th Cir.1991). In other words, the court may not simply accept what may be a self-serving account by the police officer. It must also look at the circumstantial evidence that, if believed, would tend to discredit the police officer's story, and

---

[1] Plaintiff is startled by Defendants' comment in fn. 3, implying that the Court has prejudged the case and their motion simply closes the circle which the Court began to draw at the earliest stage of the case.

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

1    consider whether this evidence could convince a rational factfinder that the officer
2    acted unreasonably.

3    39 F.3d at 915. *See, also, Ingle ex rel. Estate of Ingle v. Yelton,* 439 F.3d 191, 195 (4th Cir.
4    2006) (Decedent had "no way to directly contradict the officers' statements." When there is
5    contrary evidence, a "court may not simply accept what may be a self-serving account by the
6    police officer."); *Obert ex rel. Estate of Obert v. Vargo,* 331 F.3d 2937 (2nd Cir. 2003) (Quoting
7    *Scott v. Henrich* and finding that issues of fact precluded summary judgment); *Megargee v.*
8    *Wittman* 550 F.Supp.2d 1190, 1200-1201 (E.D. Cal. 2008) (quoting *Scott v. Henrich); Reed v.*
9    *City of Cleveland,* 2006 WL 3861082, at 14 (N.D. Ohio 2006) (Only reasonable justification
10    came from surviving officer's version and court denied summary judgment, noting, "Where the
11    witness most likely to contradict the officer's testimony is dead, the court must view the
12    officer's testimony critically.")

13        Looking beyond Deputy Patzer's self-serving declaration, Plaintiff directs the Court to
14    evidence which would provide a jury with a credible, competing narrative of the events which
15    would support a jury's finding that Deputy Patzer used excessive force in shooting Steffen Day,
16    an unarmed juvenile.  Deputy Patzer states that Steffen Day punched him in the head, yet
17    competing evidence supports the conclusion that the Deputy sustained the bump on the front of
18    his head when his head struck an air conditioner jutting out from the house into the yard.
19    Defendants point to other scrapes and abrasions, but these are consistent with bruises caused by
20    running through high bushes and slipping in the debris-filled yard.  Reading Steffen Day's
21    mind, Defendants emphasize that decedent could have fled, but chose to attack Deputy Patzer.
22    Yet, on that pitch-black night, the most obvious escape route was back through the gate and the
23    evidence sustains the reasonable conclusion that Deputy Patzer stood between Steffen Day and
24    the gate.  Only a jury may determine whether Deputy Patzer's use of deadly force against the
25    unarmed Steffen Day was objectively reasonable.

26        Resolving all facts and reasonable inferences therefrom in Plaintiff's favor, this Court
27    must conclude that prior to his death, Steffen Day had inflicted no "serious physical harm" and,
28    when Patzer shot him, posed no threat of inflicting such harm or injury to the Deputy.

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

Plaintiff's Memorandum In Opposition To Defendants' Motion For Summary Judgment /    Page 3
Summary Adjudication

*Tennessee v. Garner,* 471 U.S. 1, 11 (1985); Sheriff's Policy And Procedure No. 1.06.61 *Use of Force,* Seaton Declaration, Ex. 1. (Deputy may use deadly force "only where he or she has probable cause to believe that a suspect poses a significant threat of death or serious physical harm to the Deputy or others.").

**Deputy Patzer And His Partner Notice A Ford Mustang Driving Erratically; Believing The Car May Be Stolen, They Follow the Mustang Into A Driveway. Before Receiving Confirmation That The Vehicle Is Stolen, The Deputies Approach The Car.**

After viewing what they considered Steffen Day's erratic driving of a Ford Mustang, Deputies Patzer and Vorhauer saw indicia on the car which suggested that it may have been stolen. Patzer Decl. ¶¶ 3-11; While following the Mustang, the deputies used the squad car's computer to determine if the Mustang had been stolen. *Id.*, ¶¶ 11-12.

Before the deputies determined whether the car had been stolen, however, the Mustang turned into a driveway at 36 Galleon Way. Defendant's Ex. H; Patzer Decl., ¶ 13. The deputies then approached the Mustang, carrying their flashlights. Patzer Decl., ¶ 15; Vorhauer Decl., ¶ 15.

**The Mustang's Driver, 17 Year-Old Steffen Day, Flees And Deputy Patzer Give Chase, A Reckless And Dangerous Departure From Established Police Tactics.**

Deputy Vorhauer directed Steffen Day to leave the Mustang, but Day fled, running past Patzer. Patzer Decl., ¶ 25. Patzer took chase, leaving Vorhauer with the Mustang's passengers. Vorhauser Decl., ¶ 25. Deputy Patzer was equipped with pepper spray, a collapsible 19-inch baton and a firearm. Deposition of Joshua Patzer, Ex. 2 to Declaration of Thom Seaton, at 40:13-23. 79:14-25. Deputy Patzer also was wearing a bullet-proof vest. *Id.* 115:20-22.

According to Roger Clark, Plaintiff's expert on police procedures, Patzer's decision to chase Day was "an extreme and reckless departure from a fundamental rule of tactics, that it can be only viewed as a deliberate act . . . [which] put everyone at risk. Deposition of Roger Clark, Ex. 3 to Seaton Decl., at 23:15-17, 20. In Clark's view, in deciding to pursue Day, Patzer's "disregard [of his] training" was "stunning" and could not be "overstate[d]." *Id.,* 23:23-24, 24:3-9.

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

Plaintiff's Memorandum In Opposition To Defendants' Motion For Summary Judgment /
Summary Adjudication                                                      Page 4

Patzer's decision to pursue Day was a departure from tactics classified in training regimens as one example of "fatal error" which compromises the safety of both officers and civilians. Report of Roger Clark, Ex. 2 to Clark Decl., at p. 3. Clark noted that "Officers are trained that separating from your partner to pursue a lone fleeing suspect is extremely dangerous and frequently results in unnecessary injury and/or death. It is so inherently dangerous that a number of major agencies forbid it by policy." Clark Report, at 4. Clark concluded that, "Deputy Patzer's decision to engage in a foot pursuit (totally by himself) can only be viewed as deliberately reckless and dangerous and an act directly connected to the shooting death of Steffen Day." *Id.*, p. 4. Patzer's decision to pursue was a "fatal error." Clark Deposition, 57:4-5.

**Viewing The Evidence In Plaintiff's Favor, Deputy Patzer Shoots And Kills The Unarmed Steffen Day Although Day Has Inflicted No Serious Injury To Patzer And Is Not Threatening The Deputy With Serious Injury Or Death When The Deputy Kills Him .**

Steffen Day fled from the driveway toward the next-door home located at 30 Galleon Way and jumped a wall located between the two homes. Patzer Decl., ¶ 29. The wall appears on Defendants' Video of Steffen Day's Path (Ex. H) between 35 and 42. Patzer scaled the wall and jumped down onto the 30 Galleon Way property. Patzer decl., ¶ 30. A photograph of Deputy Patzer's shirt shows the mark made by the gray wall on his uniform. Ex. G. It was "very dark." Patzer Decl. ¶ 30.

After Steffen Day and Deputy Patzer had scaled the wall, they ran through tall bushes and plants bordering 30 Galleon Way. Their path through those bushes appears on Defendants' Video (Ex. H) between 42 and 48 seconds. Viewing that video, a jury could reasonably conclude that Deputy Patzer sustained several of the abrasions depicted on the photographs of Deputy Patzer included in Defendants' Ex. G while running through that tall vegetation on a dark night.

Steffen Day continued to flee, running alongside the property located at 26 Galleon Way. Defendants' Video, Ex. H. Day ran toward what appeared to be a fence into the property's yard. Ex. H, Patzer Decl., ¶ 36. Deputy Patzer grabbed Day, seeking to apprehend

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

1

2

3    and handcuff him.  Patzer Decl., ¶ 36.  The fence, however, was a gate, which fell open,

causing the Deputy to fall "on my knees" and drop the flashlight in the side yard.  *Id.*, ¶ 37.

4    There was no ambient light. *Id.*  Deputy Patzer sustained an abrasion on his knee tumbling into

5    the yard and some of his other bruises may also have been sustained in that fall as well.  *See,*

6    Photographs showing abrasions on knee and elsewhere on Patzer's body Defendants' Ex. G.

7        Patzer and Day fell about "three feet inside the gate."  Patzer Administrative Review

8    Interview (hereinafter "Interview"), Ex. 4 to Seaton Declaration, at 18:6-7.  It was "pitch black"

9    and Patzer could not "see [his] hand."  *Id.*, 18:8-9.  Photographs and sketches of the yard into

10   which Patzer and Day fell depict an air conditioner jutting out from the wall of the house just

11   inside the gate.  Defendants' Ex. F; Ex. 1 to Declaration of Archie Gore.

12       According to the Report of the Sheriff's Department Criminalistics Laboratory, an air

13   conditioner was affixed to the wall of the east side of the house located at 26 Galleon Way.

14   The air conditioner was 32 inches north of the gate; extended 15 inches away from the wall and

15   the lowest edge was approximately 41 inches from the ground.  Report of the Sheriff's

16   Department Criminalistics Laboratory, Ex. 5 to Seaton Declaration, at p. 772..

17       As Deputy Patzer began to rise from the ground, he was hit in the head.  Interview,

18   18:15-16, 20-21.  He couldn't and didn't see what hit him.  *Id.*, 18:18-19.  As he recalled, "It

19   felt like a solid box or punch, but I can't be sure 'cause I couldn't see anything." *Id.*, 18:23-24.

20   Given Patzer's inability to see what had hit him; his testimony that he and Day fell about three

21   feet from the gate and the physical evidence, including the layout of the yard, Patzer probably

22   struck his head on the air conditioner, which jutted out from the wall approximately 15 inches.

Criminalistics Laboratory Report, Ex. 5, at 772.

23       Mr. Henry Martin and his wife, Sonja Martin, have executed declarations in opposition

24   to the summary judgment motion.  These statements indicate that the Martins heard loud noises

25   shortly before the shooting.  After reconsidering the event, Sonja Martin concluded that the first

26   loud sounds they heard sounds "were those of the gate breaking down and possibly someone

27   running into the air conditioning unit."  Sonja Martin Decl., ¶ 5.  Mr. Martin believed that the

28

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

sound he head was "the breaking of the gate and /or someone running into the gate and air conditioner almost simultaneously." Henry Martin, Decl. ¶ 3)

Pittsburg Police Detective Adam Deplitch interviewed Sergeant Gary Clark, the patrol sergeant responsible for the Bay Point area when the shooting occurred. Sergeant Clark arrived soon after the shooting and spoke with Deputy Patzer before Deputy Patzer had conferred with counsel. Patzer said nothing to Clark about anybody going for his weapon. Sergeant Gary Clark Interview, Ex. 6 to Seaton Decl., at 616:643-645. During the interview, Sergeant Clark was asked, if he knew if the deputy hit his head on the air conditioner. Sergeant Clark responded, "Yes he said he bumped on his head – on the corner of the air conditioner, he had a nice goose egg up there." *Id.,* at 615:625-626. See, Excerpt from Continuation/Supplemental Report by Detective A. Deplitch, Ex. 7 to Seaton Declaration, at 402.

After Deputy Patzer stood, he probably was standing between the side of the air conditioner which faced the north end of the yard and Steffen Day. The air conditioner, the gate and Patzer were on south end of the yard and, therefore, between Day and the gate. Ex. 1 to Gore Declaration. Deputy Patzer "couldn't see anything." Patzer Interview, 18:24, 24:2. He grabbed Day's shirt. *Id.,* 19:15. Steffen Day approached Patzer, swinging his arms at Patzer and pushing him into the debris strewn about the yard. *Id.,* 19:22-23. Due to the debris, Deputy Patzer's "feet never had a firm setting on anything." Interview, 24:2-3. He lost his footing "in the rubble and the plastic stuff back there." *Id.*, 21:3-4. Indeed, after the shooting, Patzer moved a bicycle and eight garbage bags to enable people to come through the gate. *Id.,* 24:4-10. Day's conduct is fully consistent with an attempt by Day to escape Patzer's grasp of his shirt and flee the yard through the gate.

Day caused no serious physical harm to Patzer, landing only "glancing blows." Interview, 31:22. The Deputy "was able to duck and move" and none of the swings "connected like the first one." *Id.* 31:20-24.

After Deputy Patzer stood up, Day came toward him again. Patzer sought to push Day away, but slipped again and arm went "into this pile of rubble." *Id.*, 21:7-9. Patzer may well have sustained additional abrasions when he slipped o the rubble. .

However, Deputy Patzer was able to push Day away. *Id.*, 21:10-13. He was exhausted. Patzer Declaration, ¶ 55. He then placed his hand on his pistol (*Id.*, 21:14-15), but, as he did so he felt something hit him from behind. *Id.*, 21:15-16. It was the air conditioner. Patzer Declaration, ¶¶ 53, 60. The Deputy then crouched (Interview 24:18-23); Day came toward Deputy Patzer in a southbound direction (Interview, 27:22-28:2 (toward the gate) again and Deputy Patzer fired one pistol round into Day. Interview, 21:16-18, 24:22-23. Patzer never considered using his pepper spray or baton to defend himself. Patzer Depo., 126:14-18. No evidence exists that Deputy Patzer warned Day that the Deputy was about to use deadly force.

The bullet entered Steffen Day just to the left of his navel and passed *downward* stopping in Steffen Day's buttock. Testimony of Brian Peterson, M.D., Coroner's Inquest, Ex. 8 to Seaton Declaration, at 31:5-8.

After Deputy Patzer shot Steffen Day, Henry Martin looked onto the yard from his property and saw Deputy Patzer, who "appeared to be in a highly agitated or panicked state of mind." Henry Martin Declaration, ¶ 2. Sergeant Clark also observed that Deputy Patzer was "in a panic . . . "very shaken up." Sergeant Clark Interview, Ex. 6 to Seaton Declaration, at 602:27-37.

Deputy Patzer did not indicate to Sergeant Clark that he was hurt. Sergeant Clark Interview at 607:227-229. He received some medical attention for his bruises from American Medical Response at the police station, but received no other medical attention thereafter and lost no time from work to his medical condition. Patzer Deposition, 102:2-20

Reviewing the record, Plaintiff's expert, Roger Clark, concluded:

> After reviewing the material, I remain convinced that Deputy Patzer's use of deadly force was objectively unreasonable even if Deputy Patzer's recollection of events is entirely accurate. Deputy Patzer had not sustained

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

1    serious physical harm and was not under threat of serious physical harm or

2    death when he used deadly force against the unarmed Steffen Day, but

3    instead, acted from an unwarranted and unsupportable subjective fear.

4        While the shooting of Steffen Day would have been objectively

5    unreasonable and unwarranted even if Day had punched Deputy Patzer in the

6    head, evidence that the deputy may have struck his head on the air

7    conditioning unit renders the shooting even more unreasonable and

8    unsupportable.

9        Including the bump on Deputy Patzer's head depicted in the

10    photographs the Defendants have attached as Exhibit G to their motion, the

11    photographs do not depict a person who has sustained serious, much less life-

12    threatening, physical harm or injury. Discounting the bump on the head, there

13    is no evidence whatever that prior to the shooting, Steffen Day inflicted any

14    physical harm or injury to Deputy Patzer.

15        As I testified in my deposition, it appears that the immediate event

16    which precipitated the shooting was the contact between Deputy Patzer and

17    the air conditioner. From the photographs of the scene; the location of Steffen

18    Day's body, and the Deputy's statements, it appears that Day was moving

19    toward the air conditioner and gate and that Deputy Patzer was moving

20    backwards when his back struck the air conditioner. Believing that Steffen

21    Day's confederates had escaped from his fellow Deputy and that he was thus

22    surrounded, Deputy Patzer shot Steffen Day. Deputy Patzer's fear was

23    entirely imaginary and subjective. No evidence exists that the Deputy had any

24    sensory indication (hearing, touch or visual) that anyone other than he or

25    Steffen was in the yard when he shot Steffen. Any fear that Deputy Patzer

26    possessed cannot be considered *objectively* reasonable justifying the use of

27    deadly force.

28        [I]t does not appear that Steffen Day caused any serious physical harm

to Deputy Patzer. The bruises the Deputy sustained likely occurred when he

hit the air conditioner; when he ran through the bushes; by the fall through the

gate; and when he stumbled and pushed his arm through the debris in the yard

as he tried to get up. Even assuming Day struck him in the head, other than

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

Plaintiff's Memorandum In Opposition To Defendants' Motion For Summary Judgment /
Summary Adjudication    Page 9

that one punch, Patzer only sustained glancing blows which caused no damage.

To summarize my conclusion: Deputy Patzer's shooting of Steffen Day was completely unjustified and not objectively reasonable. Steffen Day was 17 years old. Deputy Patzer had no confirmed information that Steffen had committed any crime; carried any weapons or had ingested any drugs. Deputy Patzer had other non-lethal law enforcement tools, including a collapsible baton and pepper spray which could have subdued Steffen Day, but he made no attempt to use them. Most significantly, Steffen Day inflicted no serious physical harm or injury to Deputy Patzer and threatened no such injury.

Declaration of Roger Clark, ¶¶ .10, 15, 16, 18-20.

## LEGAL ARGUMENT

### I.    PRINCIPLES OF QUALIFIED IMMUNITY

Following *Saucier v. Katz*, 533 U.S. 194 (2001), the Ninth Circuit in *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962 (9th Cir. 2005) set forth the qualified immunity inquiry which this Court will follow:

The Supreme Court has set forth a two-pronged inquiry to resolve all qualified immunity claims. First, "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officers' conduct violated a constitutional right?"   Second, if so, was that right clearly established? "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." This inquiry is wholly objective and is undertaken in light of the specific factual circumstances of the case.

402 F.3d at 971; *See, also, Scott v. Harris*, 127 S.Ct. 1769, 1774 (2007).

On this record, a qualified immunity ruling is rendered quite problematical because the Court cannot confidently determine the situation Deputy Patzer actually confronted.   What

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

Plaintiff's Memorandum In Opposition To Defendants' Motion For Summary Judgment / Summary Adjudication    Page 10

caused the abrasions? Was Steffen Day trying to flee? Had Deputy Patzer sustained serious harm? Would he sustain such harm if he failed to use deadly force? Was Deputy Patzer's use of deadly force objectively reasonable?

## II.     THE LAW GOVERNING EXCESSIVE FORCE

Since *Tennessee v. Garner,* 471 U.S. 1, 11 (1985), the use of deadly force against unarmed suspects has remained unchanged:

> A police officer may not seize an unarmed, nondangerous suspect by shooting him dead. . . . Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given. As applied in such circumstances, the Tennessee statute would pass constitutional muster.

471 U.S. at 11-12. The Ninth Circuit has consistently adhered to *Garner. See, e.g., Adams v. Speers,* 473 F.3d 989, 993 (9th Cir. 2007) ("[I]t is unreasonable for a police officer to 'seize an unarmed, non-dangerous suspect by shooting him dead.'"); *Harris v. Roderick,* 126 F.3d 1189, 1203 (9th Cir. 1997) (shooting of unarmed suspect who had earlier committed violent crime); *Megargee v. Wittman* 550 F.Supp.2d 1190, 1200, (E.D. Cal. 2008) (Question is whether "defendant officers had probable cause to believe that the plaintiff posed a significant threat of death or serious physical injury to themselves or others, and used reasonable force to alleviate that threat."); *Figueroa v. Gates* 207 F.Supp.2d 1085, 1093 (C.D. Cal. 2002) (Courts have repeatedly held that excessive force defendants are not entitled to qualified immunity in cases where decedents did not have weapons on their persons, brandish weapons, or threaten to use them-even if the officers believed the decedents were armed."); *Blackhawk v. City of Chubbuck,* 488 F.Supp.2d 1097, 1104-1105 (D. Idaho 2006) (Quoting *Figueroa*).

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

1

2      An officer's subjective fear, unsupported by objective facts, fails to support the use of

3  deadly force. In *Winterrowd v. Nelson*, 480 F.3d 1181, 1185 (9th Cir. 2007), the Ninth Circuit

4  reiterated that "[A] simple statement by an officer that he fears for his safety or the safety of

5  others is not enough; there must be objective factors to justify such a concern," quoting *Deorle

6  v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir.2001), *Megargee v. Wittman, supra*, 550 F.Supp.2d

7  at 1200. As the Ninth Circuit recently explained in *Price v. Sery*, 513 F.3d 962, (9th Cir. 2008):

8          [W]hen there is objective reason to fear for one's safety . . . but not one's life,

9          then force short of deadly force might be justified; to justify deadly force, an

10         objective belief that an imminent threat of death or serious physical harm is

11         required. In neither case would a merely subjective sense of threat justify the

12         use of force; rather, the objectively describable totality of the circumstances

13         would have to be such as to justify the use of force. Sincerely held but

14         unreasonable belief does not justify the use of force under *Garner, Graham*,

           or our own precedents.

15  513 F.3d at 969.

16      The Ninth Circuit also has reiterated that courts may also consider "the availability of

17  alternative methods of capturing or subduing a suspect." *Davis v. City of Las Vegas*, 478 F.3d

18  1048, 1054 (9th Cir. 2007), quoting *Smith v. City of Hemet, supra*, 394 F.3d at 703. *See, Chew

19  v. Gates*, 27 F.3d 1432, 1441, n.5 (9th Cir. 1994) ("In some cases, for example, the availability

20  of alternative methods of capturing or subduing a suspect may be a factor to consider.")

21      This Court "may certainly consider a police department's own guidelines when

22  evaluating whether a particular use of force is constitutionally unreasonable." *Drummond ex

23  rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1059 (9th Cir. 2003)

24      Moreover, the testimony of a police practices expert is relevant and admissible in

25  determining whether use of force was reasonable. *Smith v, Hemet, supra*, 394 F.3d at 703,

26  citing *Larez v. City of Los Angeles*, 946 F.2d 630, 635 (9th Cir.1991) (as amended) (finding

27  that testimony of "an expert on proper police procedures and policies" was relevant and

28  admissible); *Davis v. Mason County*, 927 F.2d 1473, 1484-85 (9th Cir.1991) (as amended)

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

Plaintiff's Memorandum In Opposition To Defendants' Motion For Summary Judgment /       Page 12
Summary Adjudication

(testimony of plaintiffs' police practices expert that officers violated law enforcement standards properly received).    Expert testimony is particularly significant where, as here, the police officer is the only surviving eyewitness. *Scott v. Henrich, supra,* 39 F.3d at 915.

## III   THE NINTH CIRCUIT HAS REITERATED THAT EXCESSIVE FORCE CASES ARE NOT AMENABLE TO RESOLUTION BY SUMMARY JUDGMENT

In *Smith v. City of Hemet, supra,* 394 F.3d at 689, the Ninth Circuit noted that it had "held on many occasions" that summary judgment should only be "granted sparingly" in excessive force cases "'[b]ecause [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom.' This is because such cases almost always turn on a jury's credibility determinations," quoting *Santos v. Gates,* 287 F.3d 846, 853 (9th Cir.2002).    *See, e.g.* ,Drummond v. City of Anaheim, 343 F.3d 1052, 1056 (9th Cir. 2003) (Following *Santos*); *Liston v. County of Riverside,* 120 F.3d 965, 976 n. 10, 977 (9th Cir.1997) ("It is for the finder of fact to determine the reasonableness of the force used in this case, and that can be done only upon a fully developed record."); *Marshall v. Castro,* 2008 WL 649816, at 11 (E.D. Cal.2008) ("[E]valuation of plaintiff's excessive force claims depends principally on credibility determinations and the drawing of factual inferences from circumstantial evidence, both of which are the traditional functions of the jury."); *Hays v. Ellis,* 331 F.Supp.2d 1303, 1308 (D. Colo. 2004) ("[W]hether the level of force used by [the officers] was or was not objectively reasonable in light of the facts and circumstances confronting them is appropriately answered not by a trial judge on summary judgment, but by a jury whose primary function is to make determinations about people's conduct based on objective standards."), *Rosales v. City of Phoenix,* 202 F.Supp.2d 1055, 1060 (D.Ariz.,1999) ("The Ninth Circuit has held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury.").

As this Court noted in *Browne v. San Francisco Sheriffs Dept*. 2007 WL 4166007, 2-3 (N.D. Cal.,2007), the Ninth Circuit has cautioned against relying on defendant's statement of fact, explaining that "'By deciding to rely on the defendants' statement of fact [in deciding a

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

Plaintiff's Memorandum In Opposition To Defendants' Motion For Summary Judgment /    Page 13
Summary Adjudication

1  summary judgment motion], the district court became a jury[,]'"quoting *Wall v. County of*

2  *Orange,* 364 F.3d 1107, 1111 (9th Cir.2004). *See, also, Dale v. Fernandez,* 2007 WL 640640,

3  at 2 (N.D. Cal.2007) (Quoting *Wall*). Thus, "The jury, not the court, must determine which

4  version of events is the truth. *See, also, Watson v. Albin,* 551 F.Supp.2d 954, 959 (N.D. Cal.

5  2008) (Quoting *Wall*).

6

7  **IV.     SUBSTANTIAL EVIDENCE EXISTS THAT DEPUTY PATZER'S USE OF**
   **DEADLY FORCE WAS NOT OBJECTIVELY REASONABLE AND THAT**
8  **HE      THEREFORE       VIOLATED       STEFFEN       DAY'S      FOURTH**
   **AMENDMENT RIGHT NOT TO BE SEIZED UNLAWFULLY; IN ANY**
9  **EVENT, TRIABLE ISSUES OF FACT EXIST AS TO WHETHER**
   **DEPUTY PATZER USED EXCESSIVE FORCE.**
10

11         **A.     Under Deputy Patzer's Own Version Of The Facts, His Use Of Deadly**
                  **Force Was Not Objectively Reasonable.**

12         Even accepting Deputy Patzer's version of events as true and disregarding *Scott v.*

13  *Henrich* and similar authorities, the use of deadly force was not objectively reasonable under

14  *Garner, Harris v. Roderick, supra,* and other Ninth Circuit precedent. Steffen was unarmed

15  and had fled from a vehicle which may have been stolen, but the car's status as a stolen vehicle

16  had not been confirmed. According to Deputy Patzer, Steffen Day had punched him once in

17  the head and had assaulted him three times before he was shot. The photographs of Deputy

18  Patzer which Defendants have supplied (Ec. G) show no serious injuries. The precise event

19  which precipitated the shooting was the Deputy's contact with the air conditioner, which he

20  mistook for Day's confederates engaged in an ambush. As Plaintiff's expert states, "I remain

21  convinced that Deputy Patzer's use of deadly force was objectively unreasonable even if

22  Deputy Patzer's recollection of events is entirely accurate. Deputy Patzer had not sustained

23  serious physical harm and was not under threat of serious physical harm or death when he used

24  deadly force against the unarmed Steffen Day, but instead, acted from an unwarranted and

25  unsupportable subjective fear." Clark Decl., ¶¶ 10; *See,* Clark Decl., ¶ 18. . *See, Price v. Sery,*

26  *supra,* 513 F.3d at 969 ("Sincerely held but unreasonable belief does not justify the use of force

27  under *Garner, Graham,* or our own precedents."); *Winterrowd v. Nelson, supra,* 480 F.3d at

28  1185 ("[A] simple statement by an officer that he fears for his safety or the safety of others is

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

Plaintiff's Memorandum In Opposition To Defendants' Motion For Summary Judgment /    Page 14
Summary Adjudication

not enough; there must be objective factors to justify such a concern."); *Deorle v. Rutherford, supra,* 272 F.3d at 1281 (same).  Thus, even accepting Deputy Patzer's version as accurate, he committed a constitutional violation by shooting unarmed Steffen Day when the Deputy was under no threat of serious physical harm or death.

    **B.    Given The Factual Conflicts And Competing Inferences Which A Reasonable Jury May Infer From The Record; The Court May Not Find As A Matter Of Law That No Constitutional Violation Occurred.**

A review of the record raises numerous questions about what occurred in the yard of 26 Galleon Way at 1:45 a.m. on August 15, 2006.  These questions, which only a jury may answer, include:

- What was Deputy Patzer's physical and mental state that night?  When he shot Steffen Day, Deputy Patzer was exhausted.  Patzer Decl. ¶ 55.  He had worked a double shift on August 14, 2006 on a shift that started at 6:00 and ended at about 3:00.  Patzer Depo., 32:23-33:4.  He stated that he slept at the Muir Road facility until beginning his patrol shift at 9:30.  *Id.,* 34:8-23.  At his Interview, however, he stated he went to his mother's home in Vallejo between shifts.  Interview, 10:11-14.  The Henry Martin declaration and Sergeant Gary Clark interview indicate Deputy Patzer was in a panicked state.  Did Deputy Patzer have sufficient sleep to make proper level-headed decisions under stress?  *See,* Roger Clark Decl., ¶ 11.

- Did Deputy Patzer suffer serious physical harm at the hands of Steffen Day prior to the shooting?  The photographs in Defendants' Ex. F show abrasions on the knee which were caused by the Deputy's fall through the fence.  Scratches on his hand may well have occurred when he ran through the high bushes depicted in Ex. H.  The bump on the front of his head likely occurred when his head struck the air conditioner when he rose from the ground after falling through the gate – as he admitted to Sergeant Clark.  The yard was pitch black and Deputy Patzer couldn't see anything.  Interview, 18:24, 24:2.  Other scratches may have

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

Plaintiff's Memorandum In Opposition To Defendants' Motion For Summary Judgment /
Summary Adjudication    Page 15

occurred when the Deputy pushed his hand through the rubble. *Id.*, 21:7-9. The abrasion on his back occurred when he backed into the air conditioner. It is far from clear that Steffen Day landed anything but "glancing blows" or inflicted any serious harm.

• Was Steffen Day getting the better of the fight? Steffen Day and Deputy Patzer were the same height. The Deputy sustained no physical harm from Day. A comparison between the medical examiner's description of Day and the photographs of Patzer in Ex. G fail to disclose that Day had gained the upper hand. Patterson Decl., ¶ 7.

• Did Patzer ever signal Day that Day could flee unmolested? Defendants emphasize that Patzer gave Day several opportunities to flee. No evidence exists that he verbally communicated that intent. In Deputy Patzer's narrative, he grabbed Day at least once. While he may have pushed Day back, this was not necessarily a signal for Day that he was free to leave. More significantly, when Patzer shot Day, Patzer was standing near the air conditioner and Day was coming south, toward the gate. Interview, 27:22-28:2. Patzer therefore was between Day and the gate. A jury reasonably could conclude that in the dark, rubble-strewn yard, Day was attempting to flee, but was blocked by the Deputy.

• Did Day pose a threat of serious bodily harm or death to Patzer when Patzer shot him? While Patzer has stated that Day hovered over him, both men were the same height. Just prior to the shooting, Patzer assumed a crouching position. Interview 24:18-23. According to Dr. Patterson, the bullet took a downward trajectory. A rational jury could determine that, in fact, Patzer was standing over Day when he fired. Can the Court be confident in selecting a narrative provided by a Deputy who was exhausted and dazed when he fired his weapon and couldn't see a thing in the pitch black dark night?

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

- Could Deputy Patzer have resorted to other means of self-defense? The Deputy was armed with a baton and pepper spray but didn't consider using them. Only a jury may decide whether these tools were accessible to him.

- How serious was Day's crime and what did Deputy Patzer know? At most, Deputy Patzer knew that Day might be a car thief, but had received no confirmation of that suspicion. Patzer did not know Day had ingested drugs.

## V. CLEARLY ESTABLISHED LAW PROHIBITED DEPUTY PATZER'S USE OF DEADLY FORCE AGAINST THE UNARMED STEFFEN DAY; IN ANY EVENT COMPETING INFERENCES FROM THE RECORD PRECLUDE SUMMARY JUDGMENT ON QUALIFIED IMMUNITY.

The Supreme Court's decision in *Tennessee v. Garner, supra,* and Ninth Circuit decisions in deadly force cases including *Harris v.* Roderick, *supra,* have consistently held that law enforcement personnel may not shoot an unarmed suspect who does not threaten the officer or others with serious physical injury or death. That standard is incorporated in the Sheriff's Department Policy. *See,* Sheriff's Policy And Procedure No. 1.06.61 *Use of Force,* Seaton Declaration, Ex. 1. (Deputy may use deadly force "only where he or she has probable cause to believe that a suspect poses a significant threat of death or serious physical harm to the Deputy or others.").

In *Wilkins v. City of Oakland,* 350 F.3d 949, 955-956 (9th Cir. 2003), the court explained that when the answer to the question of whether an officer's belief in the necessity of his action was objectively reasonable "depends on disputed issues of material fact, it is not a legal inquiry, but rather a question of fact best resolved by a jury." *Wilkins* cited *Curley v. Klem,* 298 F.3d 271, 278 (3d Cir. 2002) to support this proposition, noting the Third Circuit's admonition that "the existence of disputed, historical facts material to the objective reasonableness of an officer's conduct will give rise to a jury issue." *See, also, Murray v. Stockton,* 2007 WL 172521, at 5 (E.D. Tenn. 2007) ("[S]ummary judgment is not appropriate if the legal question of excessive force and immunity turns on which version of the facts is accepted, because then 'the reasonableness of the use of force is the linchpin of the case.'")

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

1

2

**A.  Defendants' Cases Are Readily Distinguishable; In Virtually Every Case Defendants Cite, The Suspect Was Armed And/Or Witnesses Corroborated The Officer's Testimony.**

3   In seeking qualified immunity for Deputy Patzer, Defendants cite several cases to

4   convince the Court that it must rule, as a matter of law, that Deputy Patzer's shooting of the

5   unarmed Steffen Day was objectively reasonable.  In each of these cases, the officer faced a far

6   greater threat than that which actually confronted Deputy Patzer when he killed Steffen Day.

7   Moreover, in each case the officer's version of events was corroborated by other officers and/or

8   civilian witnesses.  The factual distinctions between the objectively verified threats of death or

9   grave physical harm which confronted the officers in the cases on which Defendants rely and

10   the absence of such threats to Deputy Patzer confirm that summary judgment is unwarranted

11   here.  The uncertainties which surround the Deputy's recollection further counsel in favor of a

12   jury trial to ascertain what occurred in the yard of 26 Galleon Way.

13   In *Brossau v. Haugen*, 543 U.S. 194 (2004), which focused solely on the "clearly

14   established" prong of *Saucier v.* Katz, 533 U.S. 194 (2001) and did not decide whether the

15   officer had violated the suspect's Fourth Amendment rights, the officer shot Mr. Haugen when

16   Haugen, sitting at the wheel of his Jeep, refused to turn off the ignition and began to drive the

17   Jeep away from the officer.  The question for the Court was whether it had been clearly

18   established prior to the shooting that an officer violated the Fourth Amendment when the

19   officer used deadly force to seize "a disturbed felon, set on avoiding capture through vehicular

20   flight, when persons in the immediate area are at risk from that flight." 543 U.S. at 200.

21   The Court held that the Fourth Amendment right of the plaintiff was not clearly

22   established.  The Court cited *Smith v. Freeland* 954 F.3d 343 (6th Cir. 1992), as do Defendants

23   here.  There, police shot the driver of a vehicle who had driven 90 miles per hour; had evaded

24   several roadblocks, rammed a police car and was speeding toward another roadblock when he

25   was shot.  Affirming summary judgment in the officer's favor, the court noted that "Even

26   unarmed [the suspect] he was not harmless; a car can be a deadly weapon." 954 F.2d at 347.

27   *Haugen v. Brooseau* noted that the Sixth Circuit had recognized that a "'car can be a deadly

28   weapon'" and that the decedent "posed a major threat to others." In *Sigley v.City of Parma*

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Heights,* 437 F.3d 527, 535-536 (6th Cir. 2006), a case involving the shooting of a fleeing drug dealer, the Sixth Circuit distinguished *Freeland,* noting that the driver in *Freeland* had used his speeding car as a potentially deadly weapon and the factual disputes about what had occurred barred summary judgment for the City.   In *Freeland,* unlike the instant case, numerous eyewitnesses attested to decedent's conduct.   *Cf. Acosta v. City and County of San Francisco,* 83 F.3d 1143 (9th Cir. 1996) (Jury verdict reinstated where disputed facts existed about speed at which car was moving toward officer when officer shot the driver).   Here, Steffen Day, though resisting capture, was unarmed and the harm, if any, which he inflicted with his fists cannot be equated with the speeding cars which threatened grave harm in *Brosseau* and *Smith.*

In *Menuel v. City of Atlanta,* 25 F.3d 990 (11th Cir. 1994), police shot a mentally ill woman after she had attacked an officer with a knife; could not be subdued with non-lethal force and had fired a gun at officers.   Steffen Day's conduct bore no resemblance to decedent's conduct in *Menuel.*

Defendants' reliance on *Billington v. Smith,* 292 F.3d 1177 (9th Cir. 2002), reveals the extent to which Defendants' authorities include facts far removed from those at hand. Detective Smith noticed a car driving erratically.   The driver failed to respond to Smith's red light and siren.   The driver crashed and Smith approached the vehicle.   After Smith sought to arrest the driver, the driver physically assaulted the officer and *grabbed the barrel of the officer's gun.* 292 F.3d at 1181.   As the two men fought for control of the gun, Smith fired the weapon killing decedent.   The court noted that the decedent not only had actively and violently resisted arrest, but had "tried to turn Smith's gun against him" 292 F.3d at 1185. Unlike the instant case, the court noted that many bystanders witnessed the struggle.   Here, no evidence exists that Day was actually reaching for, had touched or grabbed Patzer's weapon.

Defendants' reliance *Forrett v. Richardson,* 112 F.3d 416, 418 (9th Cir. 1997) is somewhat surprising for *Forrett* demonstrates the type of showing which an officer must make to justify the shooting of an unarmed fleeing suspect.   Though unarmed when shot, the plaintiff had committed and then fled from a violent residential burglary during which he had first shot

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

two residents and then fled with firearms and substantial ammunition. The possible theft doesn't approximate the crimes for which Day was suspected. Indeed, when the chase began, no confirmation had arrived that the Mustang was stolen. Given this disparity, *Forrett* supports the argument that Deputy Patzer's use of deadly force was not objectively reasonable.

In *Blanford v. Sacramento County,* 406 F.3d 1110 (9th Cir. 2005), deputies shot and seriously injured plaintiff whom deputies saw "carrying a 2 ½ foot-long Civil War-era saber by the handle;" and wearing a ski mask. Plaintiff refused to respond to the deputies' command to drop the sword and their warning that they would shoot if plaintiff failed to comply. Blanford, armed with a sword, was entering a private residence when shot. 406 F.3d at 1112, 1118. *Blanford* provides no cover for the shooting of unarmed Steffen Day.

*Boyd v. City of San Francisco*, 2007 WL 1202521 (N.D. Cal. 2007) held that although triable issues existed as to whether the officer's use of deadly force was objectively reasonable, the law was not clearly established that the officer was not entitled to use deadly force under the facts he confronted. The opinion, however, contains no recitation whatever of the particular circumstances the officer confronted.

In *Parks v. Pomeroy,* 387 F.3d 949 (9th Cir. 2004), two officers responded to a domestic dispute. Following their arrival, the decedent became involved in a physical struggle with one of the officers who was six inches shorter and 50 pounds lighter than decedent. During the struggle, the officer yelled to his partner, "I think he's going for my gun." 387 F.3d at 953. Shortly thereafter, the partner killed decedent. Undisputed evidence existed that the officer in the struggle had yelled that decedent was reaching for his gun and that decedent's hand was inches from the gun when he was shot. As the court noted, the situation was "potentially deadly." 387 F.3d at 958. Here, there was no evidence that Day had ever reached for Deputy Patzer's gun. *See* Clark Interview, Ex. 6 to Seaton Decl., at 616:643-645.

In *Romero v. Board of County Commissioners of Lake, State of Colorado*, 60 F.3d 702 (10th Cir. 1995), the decedent first punched the deputy and then ran a knife across the deputy's stomach. The deputy shot decedent after decedent advanced toward the deputy with a knife,

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

Plaintiff's Memorandum In Opposition To Defendants' Motion For Summary Judgment /    Page 20
Summary Adjudication

ignored the deputy's warning that he would shoot decedent, but refused to drop the knife. 60 F.3d at 703. Here, no warning preceded the shooting of the unarmed Steffen Day.

In *Tom v. Voida*, 963 F.2d 952 (7th Cir. 1992), a female officer chased the teenaged decedent who had fled after the officer had approached him after he had fallen from a bicycle. Believing the bicycle was stolen, the officer chased the teenager and finally caught him. He resisted violently, "repeatedly hitting Voida's head on the concrete." 963 F.2d 955. After he took flight, the officer again caught him, but he continued to hit her in the head. The officer drew her weapon, repeatedly warned decedent that she would shoot him, and, after he lunged at the officer, she shot him. 963 F.2d at 956. Witnesses saw decedent kick the officer in the head, face and body and her injuries were consistent with such a vicious attack.

Here, however, Deputy Patzer did not sustain injuries nearly as severe as those Officer Voida suffered. Moreover, Officer Voida, unlike Deputy Patzer, warned decedent three times that she would use deadly force if did not desist. Unlike the instant case, the Seventh Circuit could reach its result with the confidence supplied by eyewitness accounts which tallied with the officer's testimony.

In *Beckett-Crabtree v. Hair*, 2007 WL 3311393, (N.D. Okla. 2007), the deputy engaged in pursuit of decedent whom he suspected of using methamphetamine. During the chase, decedent reached for the deputy's gun and, later in the struggle, struck the deputy in the head with the deputy's flashlight, rendering the deputy groggy and temporarily incapacitated. Rendered almost unconscious and believing decedent would kill him by striking him again with the flashlight, the deputy shot and killed decedent. Before resorting to deadly force, the deputy had unsuccessfully used a taser and his baton. The deputy was taken by ambulance to a hospital for treatment where he was diagnosed with a concussion.

It is unclear which, if any, wounds Steffen Day inflicted. Deputy Patzer was examined at the scene and sought no further medical assistance and lost no time at work due to any injury he sustained during the pursuit. He did not attempt to use non-lethal means to detain Day such as his baton or pepper spray. While both Officer Hair and Deputy Patzer were struck in the

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

head, Hair was struck with the deputy's flashlight, a potentially deadly weapon, which concussed him.

## VI.    PLAINTIFF'S FOURTEENTH AMENDMENT CLAIM SURVIVES SUMMARY JUDGMENT

Defendants correctly note that a parent may state a claim for violation of the parental relationship. Defendants' Memorandum, at 22:4-18. For the same reasons that summary judgment may not be granted on the Fourth Amendment claim, issues of material fact preclude summary disposition of the Fourteenth Amendment claim.

## VII.   PLAINTIFF HAS VIABLE MONELL CLAIMS UNDER FAILURE TO TRAIN AND RATIFICATION THEORIES

Plaintiff may prevail on his claim for municipal liability under *Monell v. Department of Social Services of City of New York,* 436 U.S. 658 (1978) based on the County's ratification of Deputy Patzer's unconstitutional conduct and its failure to train.

Entity liability also flow from the entity's ratification of or acquiescence in the unconstitutional conduct of subordinate employees whom the entity has failed to discipline for the violation of constitutional rights. As the Ninth Circuit has reiterated, "A policy or custom be found either in an official proclamation of policy or in the failure of an official 'to take any remedial; steps after the violation.'" *Gomez v. Vernon,* 255 F.3d 1118, 1127 (9th Cir. 2001). *See, Amnesty America v. Town of West Hartford* 361 F.3d 113, 125-127 (2nd Cir. 2004); *Henry v. County of* Shasta, 132 F.3d 512 (9th Cir 1997); *Larez v. City of Los* Angeles, 946 F.2d 630, 647 (9th Cir. 1991) (Upholding a jury's verdict against the City based on the City's policy of condoning the condoning excessive force; "The jury properly could find such policy or custom from the failure of Gates to take any remedial steps after the violations."); *McRorie v. Shimoda,* 795 F.2d 780, 784 (9th Cir. 1986) ("Policy or custom may be inferred if, after the shakedown, the prison officials took no steps to reprimand or discharge the guards, or if they otherwise failed to admit the guards' conduct was in error.").

Substantial evidence supports would support a jury verdict finding that Deputy Patzer violated Steffen Day's Fourth Amendment right to be free from an unlawful seizure

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

Plaintiff's Memorandum In Opposition To Defendants' Motion For Summary Judgment /    Page 22
Summary Adjudication

committed by the objectively unreasonable use of deadly force.  By exonerating Steffen Day the County signaled to its deputies that a policy was in place allowing the use of deadly force even in the absence of a serious threat of physical harm or death.  As the excerpts from the Clark interview and report of Detective Deplitch make clear, Deputy Patzer may well have sustained his injury to his forehead when he struck the air conditioner.   When he backed against the air conditioner later, he unreasonably and subjectively believed that he was surrounded and immediately shot Steffen Day.  Nonetheless, possessing this information, the County exonerated Deputy Patzer and may be held liable under *Monell.*

The County also may be liable for failure to train under *City of Canton v. Harris*  489 U.S. 378 (1989).  The County points to what it asserts is an excellent training program.  Yet, the existence of written policies and a training program does not preclude a finding that the program failed to provide the training necessary to implement the written policies and thereby avoid the constitutional violation. *Long v. County of Los Angeles* 442 F.3d 1178, 1188 (9th Cir. 2006) explained that "A county's failure adequately to train its employees to implement a facially valid policy can amount to deliberate indifference."  442 F.3d at 1188.  *See, also Berry v. Baca,* 379 F.3d 764, 768 (9th Cir. 2004) (although county policy theoretically reasonable, county liability could exist if, in practice, its implementation of the policy amounted to deliberate indifference); *Munger v. City of Glasgow Police Dept.* 227 F.3d 1082, 1088 (9th Cir. 2000) (existence of City's policy to help intoxicated individuals did not preclude liability for death of intoxicated individual whom police left to freeze to death if the city could have failed to implement the policy because they did not train their officers adequately.") *Foster v. City of Philadelphia,* 2004 WL 225041, at 14 (E.D. Pa. 2004), (notwithstanding "comprehensive written policies regarding the handling detainees who are high-risk for suicide," the city failed to refute plaintiffs' contention that the content of the city's training program was inadequate."); *Berry v. City fo Detroit,* 25 F.3d 1342, 1345-1346 (6th Cir. 1994) (existence of deadly force policy did not preclude liability for failure to train); *Davis v. Mason County,* 927 F.2d 1473, 1483 (9th Cir. 1991), ("The issue is not whether the officers had received *any*

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

Plaintiff's Memorandum In Opposition To Defendants' Motion For Summary Judgment /
Summary Adjudication                                                          Page 23

1  training—most of the deputies involved had some training, even if it was minimal at best—
2  rather the issue is the adequacy of that training.")
3
4      The County emphasizes that there has been no pattern of the improper use of deadly
5  force. But a *Canton* claim may arise without a pattern of constitutional violations known to the
6  municipality, "where a violation of federal rights may be a highly predictable consequence of a
7  failure to equip law enforcement officers with specific tools to handle recurring situations."
8  *Board of the County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 409
   (1997).
9
10     *Canton* itself cites the use of excessive force as conduct which may result in failure to
11  train liability even absent of pattern of misconduct: "For example, city policymakers know to a
12  moral certainty that their police officers will be required to arrest fleeing felons. The city has
13  armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to
14  train officers in the constitutional limitations on the use of deadly force, see *Tennessee v.
   Garner,* 471 U.S. 1 (1985), can be said to be "so obvious," that failure to do so could properly
15  be characterized as "deliberate indifference" to constitutional rights." 489 U.S. at 390, n. 10.
16
17     Roger Clark's Declaration and Report chronicles Patzer's reckless conduct preceding
18  the shooting; his use of unreasonable force and the County's inexplicable exoneration of that
19  conduct.  Clark concluded Patzer's disgeard of his training was "stunning."  Clark Depo.,
20  23:23-24. 24:3-9.  Given the issues of fact which swirl about the events which occurred at 26
21  Galleon Way, only a jury may determine what occurred and whether the County had a policy
   permitting the unreasonable use of deadly force and of failure to train its armed personnel.
22
**VIII.   THE COUNTY MAY BE HELD LIABLE UNDER STATE LAW**
23
24     Plaintiff agrees that Plaintiff's claims under California law are governed by the
   "Objective reasonableness" test.  *Munoz v. City of Union City* 120 Cal.App.4th 1077, 1102,
25  (2004).  Because issues of fact exist precluding summary disposition of Plaintiff's federal
26  claims, summary judgment may not be granted on the claims arising under State law.
27
28

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

Defendants' immunity argument fails. *People v. Rivera*, 8 Cal.App.4[th] 1000, 1007 (1992) was not a governmental immunity case; it involved the legality of search undertaken with help from a police dog. Since the landmark opinion in *Johnson v. State of California* 69 Cal.2d 782, (1968) California law has limited § 820.2 immunity to "basic policy decisions," differentiating between the "'the 'planning' and 'operational' levels of decision-making.'" *See, also, Banner v. Leeds* (2000) 24 Cal.4[th] 676 (Reaffirming no immunity for operational, non-discretionary acts). Deputy Patzer's actions were operational in nature. Under Defendants' incorrect reading of controlling law, a plaintiff could never bring a improper use of deadly force case against police officers. *Munoz* says the contrary.

In any event, in *McCorkle v. City of Los Angeles* 70 Cal.2d 252, 261, (1969) cited by Defendants, the Court noted that "[C]lassification of the act of a public employee as 'discretionary' will not produce immunity under section 820.2 if the injury to another results, not from the employee's exercise of 'discretion vested in him' to undertake the act, but from his negligence in performing it after having made the discretionary decision to do so." Again, decision on these claims must await a jury's determination of what actually occurred.

### CONCLUSION

In the backyard of 26 Galleon Way in the dark early hours of August 15, 2006, Deputy Patzer could barely see what was occurring. He had fallen through a gate; hit his head on the air conditioning unit and repeatedly slipped on debris which cluttered the yard. Before killing the unarmed Steffen Day, he had sustained only several abrasions but, when he backed into the air conditioning unit, irrationally thought he was ambushed and killed the unarmed Steffen Day. His subjective fear did not support his use of deadly force. At a minimum, the presence of starkly conflicting inferences and unanswered questions bar summary judgment.

Dated:___August 20, 2008_____          _____

Thom Seaton
**CASPER, MEADOWS, SCHWARTZ & COOK**
Attorneys for Plaintiff

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

1

**PROOF OF SERVICE**

2    **RE:    Shawn Day, et al. v. County of Contra Costa, et al.
         United States District Court Case No. C07-4335-PJH**

3

4        I am a citizen of the United States and am employed in the County of Contra
Costa, State of California. I am over eighteen (18) years of age and not a party to the
5    above-entitled action. My business address is 2121 North California Blvd., Suite
1020, Walnut Creek, CA 94596. On the date below, I served the following documents
6    in the manner indicated on the below-named parties and/or counsel of record:

7    **PLAINTIFF'S MEMORANDUM IN OPPSOITION TO DEFENDANTS' MOTION FOR
         SUMMARY JUDGMENT / SUMMARY ADJUDICATION**

8

9

10    ☐    **U.S. MAIL**, with First Class postage prepaid and deposited in sealed envelopes
            at Walnut Creek, California.
      ☐    **ELECTRONICALLY**, I caused said documents to be transmitted using ECF as
11          specified by General Order No. 45 to the following parties.
      ☐    **FACSIMILE TRANSMISSION** from (925) 947-1131 during normal business hours,
12          complete and without error on the date indicated below, as evidenced by the
            report issued by the transmitting facsimile machine.
13    ☐    **Hand-Delivery Via Courier**
      ☒    **Other**: OVERNIGHT DELIVERY. On the date indicated below, I placed a true and
14          correct copy of the aforementioned document(s) in a sealed envelope and/or
            package designated by *Federal Express Priority Overnight*, individually
15          addressed to the parties indicated below, with fees fully prepaid, and caused
            each such envelope and/or package to be deposited for pick-up on the same
16          day by an authorized representative of *Federal Express* at Walnut Creek,
            California, in the ordinary course of business.

17

18    **For Defendants**
      James V. Fitzgerald, III
19    McNamara, Dodge, Ney, Beatty, Slattery & Pfalzer LLP
      1211 Newell Avenue
20    Walnut Creek, CA 94596
      Tel: (925) 939-5330
21    Fax: (925) 939-0203

22

23        I declare under penalty of perjury under the laws of the State of California,
and the United States of America, that the foregoing is true and correct and that I am
24    readily familiar with this firm's practice for collection and processing of documents for
mailing with the U.S. Postal Service.

25

26    Dated: August 20, 2008                    *Shannon M. Bowers*
                                                 _____
27                                                SHANNON M. BOWERS

28

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131