EXHIBIT 1

| Contra Costa County **Office of the Sheriff** Policy and Procedure | CCCSO | NUMBER: 1.06.61 |
|---|---|---|
| | **RELATED ORDERS:** C.A.L.E. 1.1 PC 835-845, 2652.5, 12403, 12601 Board of Corrections, Minimum Jail Standards, Title 15 CCCSO 1.07.31, 1.06.52, 1.06.35, 1.05.58, 1.05.70, 1.06.62 Police Executive Research Forum <u>Conducted Energy Policy and Training Guidelines for Consideration</u> 2005 | |
| **ISSUE DATE:** 2-1-2006 **REVISION DATE:** 7-10-2006 | **CLEARANCE:** Office of the Sheriff | |
| **CHAPTER:** Office of the Sheriff Operations | **SUBJECT:** Use of Force | |

*CCCSO Red Stripe Policy*

*CONFIDENTIAL*

I.  **POLICY**

   A. Deputies shall use only that degree of force that is objectively reasonable to protect themselves and others, or to overcome resistance to their lawful authority.

II. **DEFINITIONS**

   A. CHEMICAL AGENT: A substance in either liquid or solid form, intended to produce temporary irritation and physical discomfort in a person, containing formulations of chloroacetophenone (CN), chlorobenzylidene malononitrile (CS), or oleoresin capsicum (OC).

   B. DEADLY FORCE: Any use of force that creates a substantial risk of causing death or serious bodily injury.

   C. DISTRACTION DEVICE: A device that produces a loud report, brilliant flash, smoke and may disperse a quantity of small rubber balls in a circular pattern that is intended to temporarily distract and disorient a person.

   D. CONDUCTED ENERGY DEVICE (CED): A device intended to temporarily immobilize a person by the infliction of an electrical charge, including hand held devices which impart an electrical charge through wiring via propelled metal probes and shields which impart an electrical charge upon direct contact (Currently used only in the Custody Services Bureau).

   E. FORCE: Any physical effort used to control, restrain, or overcome the resistance of another.

0000782

    F.    IMPACT PROJECTILE WEAPON: Any device that is designed to, or that has been converted to expel or propel less lethal ammunition by any action, mechanism, or process for the purpose of incapacitating, immobilizing, or stunning a human being through the infliction of any less than lethal impairment of physical condition, function, or senses, including physical pain or discomfort.

    G.    NON-DEADLY FORCE: Any use of force other than that which is deadly force. This includes any physical efforts used to control or restrain another, or to overcome the resistance of another, other than the mere application of temporary restraining devices on a compliant person.

## III. GENERAL

    A.    DECISION TO USE FORCE. A Deputy's decision to use force shall take into consideration the facts and circumstances of each individual situation. Factors a Deputy should consider when deciding to use force in a given situation include but are not limited to:

1. Severity of the crime at issue;
2. Whether the suspects pose an immediate threat to the safety of Deputies or others;
3. Whether the suspects are actively resisting arrest or attempting to evade arrest by flight;
4. The time available to make decisions;
5. Number of Deputies versus number of suspects;
6. Proximity to potential weapons (the Deputy's or others);
7. Age, size and relative strength of Deputy versus suspect;
8. Suspect's special knowledge or skill level;
9. Deputy's injury or exhaustion;
10. Suspect's mental illness, emotional disturbance, or drug usage and impact on pain tolerance or rationality of response;
11. Knowledge of/or prior contacts with suspect;
12. The opportunity when feasible to give a warning in cases where force may result in serious injury, unless such a warning would increase the risk of greater injury to Deputies, citizens, or the suspect;
13. Potential for and risk of escape;
14. Environmental factors, i.e. lighting, terrain, etc.

B. **USE OF FORCE.** The amount of force used shall only be the amount that is objectively reasonable to control the resistance encountered in light of all the relevant circumstances. The force used should not be escalated unless it's reasonably determined that a lower level of force would not be adequate, or such a level of force is attempted and found to be inadequate. When deciding to use force, Deputies should consider the following specific factors for evaluating their use of force:

1. The need for the use of force;

2. The relationship between the need and the amount of force to be used;

3. The extent of potential injuries that could result;

4. The threat reasonably perceived by the Deputy;

5. Other available force options that could temper the severity of a forceful response.

C. **AUTHORIZED WEAPONS AND FORCE TECHNIQUES.** Deputy Sheriffs shall only carry and/or use approved weapons and force techniques for which they have received and completed P.O.S.T. certified and/or Sheriff's Office authorized training.

D. **FORCE OPTIONS.** The Office of the Sheriff recognizes a Deputy's need for a degree of flexibility in making use of force assessments given the fluid dynamics of a confrontation. The standard for evaluating a Deputy's use of force is "reasonableness under the facts and circumstances known to the Deputy at the time." Therefore, a Deputy may choose any of the following force options, including no use of force, provided the force option selected is objectively reasonable.

1. <u>Professional Presence Non-Verbal and Verbal (no force).</u> Includes display of authority as a peace officer and such non-verbal means of communication as body language, demeanor, and manner of approaching. Verbalization involves the directions and commands given to the subject.

2. <u>Control, Search and Handcuff.</u> Includes restraining and detaining by a Deputy laying hands on a subject with the intention of gaining control of the subject. Examples include the use of a firm grip, escort position or grappling types of techniques designed to hold a subject down by using the weight of a Deputy's body. Also included in this level would be the application of temporary restraining devices such as handcuffs and leg restraints (hobble devices).

3. <u>Defensive Tactics.</u> Includes techniques such as control holds, joint manipulations, pressure point applications, takedowns, and ground grappling.

4. <u>Chemical Agents.</u> Includes substances in either liquid or solid form, including chloroacetophenone (CN), chlorobenzylidene malononitrile (CS), or oleoresin capsicum (OC).

5. <u>Conducted Energy Devices (CEDs).</u> Includes hand held devices such as the stun gun, taser, or shields, which impart an electrical charge. Also known as Electronic Restraint Devices (ERDs). CED/ERD brand names include Taser, Stinger, and Law Enforcement Associates.

6. <u>Personal Weapons.</u> Includes parts of the human body such as hands, feet, elbows and knees to strike a suspect.

7. <u>Intermediate Weapons.</u> Includes impact weapons such as straight batons, side handle batons, and collapsible batons of either variety used in the application of a control technique or in an impact mode.

8. <u>K-9.</u> The deployment of a specially trained dog by a certified handler. The function of the dog is to conduct building searches, assist in arrest or prevention of escape of serious or violent offenders, protect Deputy or others from death or serious injury, or other assignments with approval of K-9 Unit Supervisor.

9. <u>Specialized Weapons.</u> Includes items such as impact projectiles or ammunition which is designed to immobilize, incapacitate or stun a human being through the infliction of any less lethal impairment of physical condition, function, or senses, including physical pain or discomfort.

10. <u>Carotid Restraint.</u> Includes upper body control holds such as the Lateral Vascular Neck Restraint (LVNR).

11. <u>Firearms.</u> Includes handguns, rifles, shotguns, and automatic weapons authorized for use by the Office of the Sheriff.

12. <u>Deadly Force.</u> The use of deadly force is not limited to the use of firearms. Deadly force options may include the intentional use of legal intervention techniques and any physical means which creates a substantial risk of causing death or serious bodily injury. Note that any force option listed above may be categorized as "deadly force" when used intentionally in a manner that falls within the definition of deadly force. For example, intentionally directing a baton strike to the head of a suspect would be a use of deadly force. A Deputy may use deadly force only where he or she has probable cause to believe that a suspect poses a significant threat of death or serious physical injury to the Deputy or others.

IV. **PROCEDURE 1.**

A. <u>USE OF CHEMICAL AGENTS.</u> Chemical agents (CN Mace or aerosol OC) will only be used as a defensive or control weapon in those instances that threaten the safety of the Deputy or other persons. Chemical agents will not be used against non-combative persons. Application:

1. The primary target area for application of chemical agents is the facial area with coverage of the forehead, and brow. A secondary target area is the nose and mouth.

2. Use short, multiple one-half second bursts, spraying into the facial area (bursts of longer duration seldom increase effectiveness but do increase the possibility of injury).

3. CN Mace is most effective at a distance of approximately five to seven feet, although it can be used up to ten to twelve feet in calm air. Aerosol OC is most effective at a distance of approximately five to ten feet, although it can be used up

to fifteen feet in calm air. If it is necessary to use CN Mace or aerosol OC at less than five feet, Deputies should avoid aiming directly at eyes.

4. Deployment sequence

   a. Spray the person.
   b. Command the person to get on the ground.
   c. Evaluate the person's response. If necessary, repeat the first two steps.
   d. Control the person. Handcuff if necessary. Avoid pressing down on the person's back.
   e. Care for the person. Provide medical treatment and decontamination as soon as possible.

5. Aerosol OC is effective against persons and animals, i.e. angry or attacking dogs. CN Mace is only effective against persons and will not incapacitate animals.

6. Once deployed, the use of chemical agents must be reported to the immediate Supervisor and recorded in a crime or incident report.

B. USE OF CONDUCTED ENERGY DEVICES. CEDs will only be used by trained and certified employees. CEDs will only be used against persons who are actively resisting or exhibiting active aggression, or to prevent individuals from harming themselves or others. The display of the CEDs electrical arc can be a powerful deterrent and is permitted to gain compliance in those instances where resistance is anticipated. Special care and consideration will be taken when using CEDs in situations involving pregnant women, the elderly, or frail persons.

1. The primary target area for deployment of a CED is the subject's front or back, center mass torso. Devices that propel metal probes should not be directed at a subject's head, neck or genitalia.

2. No more than one Deputy should activate a CED at a time.

3. The fact that a subject is fleeing should not be the sole justification for use of a CED

4. In the event an CED is deployed, once the exposed subject is under control, all injuries associated with the deployment of the CED shall be photographed.

5. CED exposed subjects shall be provided medical treatment as soon as possible. Deputies should be aware of secondary injuries to the exposed subject due to falling. In the event the use of the CED involved metal probes entering the subject's body, only medical personnel will remove the metal probes. The metal probes will be treated as biohazard "sharps" and placed into evidence accordingly.

6. All use of CEDs must be in compliance with the Custody Services Bureau Manual Policy 8.28.

C. USE OF DISTRACTION DEVICES. Distraction devices will only be used as a defensive or control device in those instances that threaten the safety of the Deputy or other persons. When properly deployed as part of an overall tactical plan, the distraction device can afford an enhanced margin of officer safety.

1. The primary target area for deployment of a distraction device is the floor area immediately inside a primary entry point, i.e. a door or other available means of ingress into a room or structure. A secondary deployment area may be any area where activation of the device will provide an enhanced margin of officer safety by attracting a suspect's attention to the area of activation.

    a. Prior to deploying a distraction device, the Deputy deploying the device will visually check the immediate area where the device is to be deployed in order to ensure that no persons are in that immediate area. Extreme caution should be used upon deployment of a distraction device in areas where there is potential for fire hazard due to flammable vapors, gases, substances or other flame hazard.

D. USE OF IMPACT PROJECTILE WEAPONS.

1. Impact projectile weapons are intended primarily for use against persons who engage in conduct that is likely to result in serious harm to themselves or other person(s).

2. Such conduct includes but is not limited to, violent, combative, assaultive, and/or resistive behavior; when the person is either armed or unarmed.

3. Upon assessing and determining the need for the impact projectile weapon, the Deputy will request a Supervisor to respond. Additionally, the Deputy will advise the Supervisor of the circumstances. The Supervisor if available, should make an assessment of the circumstances and situation. In determining whether or not the impact projectile weapon system should be used, the Supervisor, or Deputy when no Supervisor is available, will consider among other factors, the following:

    a. The individual is violently attacking, resisting, combative, and/or armed;

    b. Tactical considerations indicate that the use of impact projectile system would provide greater officer safety and reduce the likelihood of serious or lethal injury to the suspect(s).

4. If the circumstances permit, the Supervisor or Deputy should make an attempt to have the subject submit to lawful authority without the use of the impact projectile weapon, and if feasible, should warn the subject of the intended use of the weapon should the subject not submit to lawful authority.

5. If the circumstances permit the Supervisor or Deputy to authorize the use of the impact projectile weapon, it shall be deployed as prescribed and in accordance with Sheriff's Office approved training. Prior to deployment:

    a. A cover Deputy or Supervisor shall be assigned to the Deputy deploying the impact Projectile weapon;

    b. Deputies shall be prepared and ready to take the suspect into custody following deployment;

    c. Deputies on the scene should be advised prior to the deployment of the impact projectile weapon.

      6.    Impact projectile weapons shall be treated the same as firearms for safety practices. Refer to Office of the Sheriff Policy Section 1.07.12, <u>Firearms Safety and Qualification for firearm safety practices.</u>

E.    <u>USE OF BATON.</u> When properly used, the baton can frustrate attacks on Deputies and aid in overcoming a hostile arrest situation.

    1.    The baton may be used as a defensive or control weapon in those instances that threaten the safety of Deputies or other persons, or to subdue and arrest combative persons. Deputies will not use the baton against non-combative persons. However, Deputies may use the baton as a control device when directing, controlling, or escorting uncooperative persons.

    2.    The Detention Division maintains specific restrictions regarding the use and carrying of batons. Absent authorization from the Facility Commander, batons shall not be carried into the security area of any Detention Facility.

F.    <u>USE OF CAROTID HOLD.</u> The use of the Carotid hold is only authorized in life-threatening situations where other methods of restraint or less lethal or non-lethal weapons are not accessible or have been determined to be ineffective.

    1.    Chokeholds are not authorized restraint techniques.

G.    <u>USE OF FIREARM/DEADLY FORCE.</u>

    1.    A firearm may be discharged only for one or more of the following circumstances:

        a.    At an approved target range, or for evidence examination purposes;

        b.    When killing a seriously wounded animal when other disposal is impractical or when killing an animal that poses an immediate threat of physical harm. Attempts should be made to:

- Wait for Animal Control, if possible;
- Confine or contain the animal, if possible;
- Consider deployment of pepper (OC) spray or other less lethal force;
- Use lethal force as a last resort, if other options are not reasonable.

        c.    When necessary in the defense of one's own life or to prevent serious physical harm;

        d.    When necessary in the defense of any person in immediate danger of death or serious physical injury;

        e.    To capture or prevent the escape of a person when ALL the conditions below are met:

- There is reasonable belief the person is committing or has committed a violent felony which involves the use of deadly force;

- The person's use of deadly force threatens or results in the death or serious bodily injury of another person; and

- All other available means of apprehending the person have failed.

2. **WHEN FIREARMS WILL NOT BE DISCHARGED.** Firearms will not be discharged:

   a. As a warning;

   b. To effect the capture or prevent the escape of a person who is reasonably believed to be committing, or have committed, a felony which DOES NOT involve the use or threat to use deadly force;

   c. In any misdemeanor case;

   d. From or at a moving vehicle except in the defense of one's own life or the life of another person.

V. **PROCEDURE 2.**

A. **PROVIDING MEDICAL AID AFTER USE OF FORCE.** When use of force causes injury, which would reasonably require medical attention, the Deputies using such force will ensure the injured person receives proper medical attention as soon as possible.

   1. Deputies will normally transport or arrange for transport of injured persons to the Contra Costa Regional Medical Center, unless the nature and/or extent of the injuries necessitate transport to a closer facility, or as directed by a Supervisor.

VI. **PROCEDURE 3.**

A. **REPORTING USE OF FORCE.** Any member of the Office of the Sheriff who either uses force or witnesses the use of force by another member of this Office shall, as soon as possible, make an oral report to their immediate Supervisor. All such reports shall be made no later than the end of duty shift on which the force was used. In all cases where there is a use of force, as defined in this policy, a DR will be drawn and details of the use of force will be reported by the Deputy who used the force on either a Crime Report, or Detention Incident Report as applicable. All such reports will include:

   1. Type of force used;
   2. Reason for the use of force;
   3. Extent of injury;
   4. Other pertinent information the Deputy wishes to include;
   5. If an animal shooting, conditions set forth in G, 1, b of this policy shall be observed.
   6. If the incident preceding the use of force would normally be reported on a Crime Report, the details of the use shall be included in that report

7. Use of force reports where impact projectile weapons or distraction devices are used will also include:

   a. Name of the Deputy deploying the munition;

   b. Supervisor's name authorizing deployment;

   c. Number of munitions deployed;

   d. Distance between the suspect and the Deputy deploying the munition;

   e. Area of suspect's body struck by the munition(s); and

   f. Suspect's reaction to the munition.

   g. If the subject is admitted to the hospital, send a copy of the report to: <u>Office of the County Administrator, Risk Management Division, Assistant Risk Manager, 2530 Arnold Dr., Ste 140, Martinez, CA. 94553, attn: Liability Claims</u> or fax to number 335-1421 within 24 hours of the incident. An emergency room visit does not constitute a hospital admission.

## VII.   PROCEDURE 4.

   A.   <u>REPORTING USE OF FIREARMS</u>.

   1. The discharge of a firearm at a target range or for evidence collection does not require a report.

   2. The discharge of a firearm to dispatch an animal normally requires prior permission from the Patrol Sergeant. Should exigent circumstances prevent prior authorization, the Patrol Sergeant will be advised as soon as possible. A memorandum to the Patrol Division Commander via the chain of command outlining the need for the action shall follow the incident.

   3. When any other discharge of a firearm, either accidentally or in the performance of police duty, occurs and there are no serious injuries or deaths, the following shall be done:

      a. The Deputy who discharged the firearm shall notify his/her Supervisor or the senior Deputy on duty as soon as time and circumstances permit. The Deputy shall submit a detailed written report of the circumstances via the chain of command to his/her Division Commander.

      b. The Deputy's Supervisor will notify the Division Commander and shall protect the scene and identify witnesses pending further instructions from the Division Commander.

      c. The Deputy's Division Commander shall conduct an investigation.

         - If the incident occurs when the Division Commander is either off-duty or unavailable, the Patrol Station House Commander shall be

        notified and will immediately and personally conduct the investigation when notified.

- The Station House Commander will submit an inter-office memo to the Deputy's Division Commander detailing the incident and the investigation.

- If the area Station House Commander is unavailable, the Officer of the Day will conduct the investigation.

- Should a thorough investigation of the incident indicate the need for corrective action the Division Commander will initiate appropriate procedures as covered in Office of the Sheriff Policy Section 1.05.25, Corrective Counseling System and Section 1.05.27, Personnel Management Regulations.

    d.    Following the investigation of the incident, a detailed written report shall be submitted via the chain of command to the Sheriff. This report shall include the observations and conclusions of the Division Commander.

4. When any on duty or off-duty discharge of a firearm by a Office of the Sheriff employee results in death or serious injury, Office of the Sheriff Policy Section 1.06.36, Police Involved Fatal or Serious Injury Incidents Policy shall apply.

    a.    The Division Commander will receive a detailed written report concerning the incident completed by the Internal Affairs Detail, after review by the Undersheriff. This report shall be reviewed in conjunction with any other documents and/or information available and the Division Commander will submit a recommendation via the chain of command to the Sheriff/Undersheriff.

    b.    Should the completed investigation of the incident indicate a need for corrective action the Division Commander will initiate appropriate procedures as covered in Office of the Sheriff Policy Section 1.05.25, Corrective Counseling System or Section 1.05.27, Personnel Management Regulations.