JAMES V. FITZGERALD, III (State Bar No. 55632)
NOAH G. BLECHMAN (State Bar No. 197167)
MCNAMARA, DODGE, NEY, BEATTY, SLATTERY,
PFALZER, BORGES & BROTHERS LLP
1211 Newell Avenue
Post Office Box 5288
Walnut Creek, CA 94596
Telephone: (925) 939-5330
Facsimile: (925) 939-0203

Attorneys for Defendants
COUNTY OF CONTRA COSTA, JOSHUA PATZER, and
WARREN RUPF

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN DAY, individually and as successor in interest to the Estate of Steffen Matthew Day,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF CONTRA COSTA; JOSHUA PATZER; WARREN RUPF, and Does 1 through 50, et al.,<br><br>Defendants. | Case No. C07-4335 PJH<br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT / SUMMARY ADJUDICATION**<br><br>Date:    September 10, 2008<br>Time:    9:00 a.m.<br>Judge:   Hon. Phyllis J. Hamilton<br>Dept:    Courtroom 3, 17th Floor (SF) |

Defendants County of Contra Costa (hereafter "County"), Deputy Joshua Patzer (hereafter "Deputy Patzer"), and Sheriff Warren Rupf (hereafter "Sheriff Rupf"), (collectively "Defendants"), hereby file the following Reply Brief in Support of their Motion for Summary Judgment, or in the alternative, Motion for Summary Adjudication, in this matter. Concurrently filed with this Reply Brief is Defendants' "Objections and Motions to Strike Plaintiff's Proffered Evidence In Opposition to Defendants' Motion for Summary Judgment/Summary Adjudication."[1]

## I. INTRODUCTION

Plaintiff's opposition consists of nothing more than speculation, conjecture and includes

---

[1] Plaintiff's Opposition includes a litany of objectionable evidence which Defendants are moving to strike on various grounds included in the concurrently filed Objections and Motion to Strike, including, but not limited to, any and all evidence proffered by Plaintiff's claimed expert Mr. Clark.

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MSJ/MSA -
C07-4335 PJH

clearly objectionable evidence, new factual contentions not disclosed in discovery and distortions of the record. Plaintiff does not include any credible, persuasive and/or material evidence to support their imaginative opposition arguments. Though Plaintiff has attempted to raise questions in the Court's mind about what happened on the night of the incident, even listing such questions, Plaintiff has patently failed to provide any credible evidence to counter the extensive evidence submitted by Defendants and/or has failed to create any <u>genuine</u> issues of material fact to defeat Defendants' motion. Plaintiff has not submitted evidence sufficient for a jury to find that Deputy Patzer violated Decedent's 4th Amendment rights, the essential issue that dominates in this motion. Without such substantive evidence, Plaintiff has not created any genuine issue of any material fact to warrant the denial of Defendants' motion.

With Plaintiff's choppy arguments, Plaintiff inartfully tries to steer the Court away from <u>the key issue in this case, namely the threat profile presented to Deputy Patzer by Decedent at the time Deputy Patzer discharged his weapon at Decedent</u>. This defining issue is not genuinely disputed with any credible evidence by Plaintiff. Rather, the significant and detailed evidence presented by Defendants, much of which is not challenged by Plaintiff, demonstrates that Deputy Patzer's use of deadly force in self-defense against the violent and hostile Decedent was objectively reasonable under the totality of the circumstances, or fell within the hazy border between excessive and acceptable force to entitle him to qualified immunity and Defendants to summary judgment. From the perspective of a reasonable officer in the shoes of Deputy Patzer, it was reasonable, indeed lawful and constitutional, to use deadly force to stop the threat and attacks of Decedent. In short, Plaintiff's opposition is long on assumptions and distortions, but short on supporting evidence. Even viewing the evidence in the light most favorable to Plaintiff, Defendants are still entitled to judgment as a matter of law as to all claims.

## II. <u>REPLY ARGUMENTS</u>

A.   <u>Plaintiff Does Not Dispute the Key Evidence Submitted By Defendants</u>

Plaintiff does not dispute some of the key evidence submitted by Defendants which bears heavily on the issues in this motion. These are some of the key examples of unrefuted evidence:

1) It was extremely dark and/or pitch black in the side yard area where the struggle

occurred. (See Plaintiff's Opposition ("Opp.") pgs. 1:5-6, 3:22, 5:18-25, 6:3).

2) There was a considerable amount of garbage in the side yard area. (Opp. pg. 1:5-6).

3) There were indications contained on the Mustang that suggested it may be stolen. (Opp. pgs. 4:12-13; 14:15).

4) Decedent fled and ran past Deputy Patzer. (Opp. pg. 4:18-19).

5) As a result of the struggle with Decedent, Deputy Patzer was physically exhausted. (Opp. pg. 15:12).

6) Deputy Patzer suffered scrapes to his body and a bump on his head as a result of this incident. (Opp. pg. 1:11-12).

7) Plaintiff does not provide any evidence to dispute the fact that the events relating to the foot pursuit, the struggle and the shooting happened quickly.

8) Plaintiff does not provide any evidence to dispute the fact that Decedent was under the influence of a significant amount and recent dose of methamphetamine at the time of the incident.

9) Plaintiff does not provide any evidence to dispute the fact that <u>Decedent never stopped resisting Deputy Patzer</u>. Though Plaintiff attempts to downplay the admitted ongoing resistance of Decedent towards Deputy Patzer, there has been no evidence submitted that Decedent stopped resisting Deputy Patzer at any time and/or tried to flee from Deputy Patzer. This is important as it is settled that "from the viewpoint of an officer confronting a dangerous suspect, "a potential arrestee who is neither physically subdued nor compliantly yielding remains capable of generating surprise, aggression, and death." <u>Menuel v. City of Atlanta</u>, 25 F.3d 990, 995 (11th Cir. 1994).

10) Plaintiff does not dispute the evidence submitted by Defendants that Decedent was aggressing on and over Deputy Patzer three times prior Deputy Patzer shooting at Decedent to stop the threat. No circumstantial evidence was submitted by Plaintiff to refute this key evidence of Decedent's constant onslaught of aggression towards Deputy Patzer necessitating Deputy Patzer to use deadly force in self defense.

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MSJ/MSA -     2
C07-4335 PJH

11) Plaintiff does not dispute the fact that prior to the shooting of Decedent, Deputy Patzer backed into the air conditioning unit causing an abrasion to the Deputy's back. (Opp. pg. 16:1-2).

12) Plaintiff provides no evidence to counter the evidence of the threat profile presented by Decedent towards Deputy Patzer at the moment that Deputy Patzer fired at Decedent. With the Decedent aggressing at Deputy Patzer numerous times and failing to flee when given several opportunities to do so (or to stop resisting), Deputy Patzer was faced with a drug crazed individual who was showing excessive strength, willingness to continue to fight the Deputy instead of an intent to flee, and essentially someone who was unwilling or incapable of complying with any police commands.

13) Plaintiff provides no evidence to refute the testimony of Dr. Peterson, the pathologist, who indicated in his declaration that Decedent had marks on the back of his hand which indicated injuries consistent with punching movements. This testimony is unopposed by Plaintiff's opposition.

These relevant and critical facts, unopposed by Plaintiff, further strengthen Defendants' arguments and position on this motion. Without Plaintiff meeting his burden of demonstrating a genuine issue of a material fact, which has not been met here, Defendants are entitled to summary judgment.

**B.  Plaintiff's Speculation and Conjecture Does Not Create a Genuine Issue of Material Fact of a Constitutional Violation**

Plaintiff goes to great lengths to offer the Court assumptions, conjecture and deductions, but totally fails to provide any credible <u>evidence</u> to defeat this evidentiary motion. For example, Plaintiff uses the following speculative statements to attempt to counter Defendants' motion:

- "<u>most obvious</u> escape route was . ." (Opp., pg. 3:22).
- "Patzer <u>probably</u> struck his head on the air conditioner . ." (Opp., pg. 6:20-22)
- "he [Patzer] <u>probably</u> was standing between the side of the air conditioner . . and Steffen Day." (Opp., pg. 7:12-14).

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MSJ/MSA -    3
C07-4335 PJH

- "Day's conduct is <u>fully consistent with</u> . . " (Opp. pg. 7:21-23).
- "Patzer <u>may well have</u> sustained additional abrasions when he slipped o (sic) the rubble." (Opp. pg. 8:2-4).
- "Scratches on his [Patzer's] hand <u>may well have</u> occurred when he ran through the high bushes . ." (Opp. pg. 15:23-24).
- "The bump on the front of his [Patzer's] head <u>likely occurred</u> when . ." (Opp. pg. 15:25-26).
- "Other scratches <u>may have occurred</u> when . ." (Opp. pgs. 15:28-16:1).
- "Deputy Patzer <u>may well have</u> sustained his injury to his forehead when . ." (Opp. pg. 23:4-6).

Speculation and assumptions cannot defeat Defendants' evidentiary motion. Similarly, the production of a mere scintilla of evidence, an amount which has not even been presented here by Plaintiff, is insufficient to create a genuine issue. Once the burden shifts to Plaintiff, as is the case here as Defendants have shown an absence of evidence to support Plaintiff's case, Plaintiff must show more than the "mere existence of a scintilla of evidence in support of the plaintiff's position." Rather, there must be "evidence on which the jury could reasonably find for the plaintiff." <u>U.S ex rel. Anderson v. N. Telecom, Inc.</u>, 52 F.3d 810, 815 (9th Cir. 1995). In fact, Plaintiff needed to produce "<u>specific evidence</u>, through affidavits or admissible discovery material, to show that the dispute exists." <u>Bhan v. NME Hospitals, Inc.</u>, 929 F.2d 1404, 1409 (9th Cir. 1991). (emphasis added). "The more implausible the claim or defense asserted by the nonmoving party, the more persuasive its evidence must be to avoid summary judgment." <u>U.S. ex rel Anderson,</u> at 815.

Plaintiff has not submitted any credible evidence to counter the significant supporting evidence submitted by Defendants. Instead, Plaintiff has offered the Court only supposition and speculation. Plaintiff has not provided specific evidence to demonstrate that Deputy Patzer's scrapes or injuries came from the bushes or the garbage, as opposed to the violence inflicted by Decedent. Plaintiff has not provided any specific evidence to show Deputy Patzer's specific standing location at the time of the shooting. Plaintiff has not provided specific evidence, such as

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MSJ/MSA -   4
C07-4335 PJH

expert forensic or medical testimony or other corroboration, that Deputy Patzer's forehead injury came from anything other than a violent punch from Decedent.

One key example of Plaintiff's production of speculative evidence is the laughable (and apparently desperate) submission of the declarations of the neighbors, Sonja and Henry Martin ("Martin declarations"). These Martin declarations should be disregarded for several valid reasons (See Objections and Motion to Strike), including, but not limited to, the fact that the Martin declarations are clearly grounded in pure guesswork.[2] In essence, the Martins apparently lived behind the house where the shooting took place and they claim that they heard noises in the backyard area of that house that night. They then claim that after the incident, they went over to the scene to inspect it and then they discussed together what they heard. After discussing the incident and inspecting the scene, they declared that:

> "I believe the noises I heard were those of the gate breaking down and possibly someone running into the air-conditioning wall unit." (Decl. of Sonja Martin, ¶ 5) (emphasis added);
>
> "I came to believe that the original banging sound that I heard was in fact the breaking of the gate and/or someone or something running into the gate and the air conditioner almost simultaneously." (Decl. of Henry Martin, ¶ 3) (emphasis added).

The Martins, through Plaintiff's counsel, are essentially inferring that Deputy Patzer ran into the air conditioning unit. However, neither of the Martins witnessed the incident or the facts preceding the shooting. Neither of the Martins have any first hand knowledge of whether or not anyone or anything actually made any impact with the air conditioner unit. Instead, the Martins heard some noises and then are making huge conclusory leaps that such noises relate to someone (inferred to be Deputy Patzer) running into the air conditioner unit. Ms. Sonja Martin thinks that "possibly" happened, while Mr. Henry Martin "came to believe" it happened. This is no more than pure speculation about the events that transpired. How did they know the person was running into the air conditioning unit by the noises? In addition, Mr. Martin qualified his

---

[2] Yet another ground for exclusion and/or disregard of this evidence, as raised in detail in Defendants Objections and Motion to Strike, is the fact that in discovery, Plaintiff clearly asserted to Defendants that "Neighbors did not see or hear any fights between Patzer and the decedent." Defendants' MPA, pgs. 12:14-13:15 (see specifically pg. 13:8). Now, Plaintiff attempts to improperly sandbag Defendants with these manufactured and speculative declarations which should be disregarded.

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MSJ/MSA -     5
C07-4335 PJH

conjectural statement of belief that it could have been something (as opposed to someone) impacting the air conditioner unit. The guessing by the Martins is evident in that, per their declarations, it could be interpreted that it was Decedent who made impact with the air conditioning unit. All in all, the Martins lack foundation, are not competent to testify about any correlation between noises they heard and any specific facts as they were not present, and were some distance away from the incident which occurred late at night. Mr. Martin was not even sure if it was a person that allegedly ran into the air conditioner. This is yet another example that highlights how Plaintiff's opposition is based upon speculation, conjecture and pure guesswork, an insufficient evidentiary showing to defeat Defendants' meritorious motion.

Even if the Court is satisfied that there exists a dispute as to whether or not Deputy Patzer hit his head on the air conditioner unit when he entered the yard, this does not rise to the level of a genuine issue of a material fact to defeat this motion. This is not a genuine issue as Plaintiff has not provided evidence to counter Defendants' proof that Decedent still struck Deputy Patzer in the head in the side yard area. Moreover, this issue is not material to the threat profile presented by Decedent at the time of the shooting as Decedent had still attacked Decedent three times at the time he was shot by Deputy Patzer. Whether or not Deputy Patzer hit his head on the air conditioner when he entered the yard does not affect the outcome of this action, meaning it is not material to the Court's determination. <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987). This is yet another example of Plaintiff's reliance on non-issues to attempt to defeat this motion.

    C.    **<u>The Uncontraverted Evidence Demonstrates the Numerous Objective Factors That Justified Deputy Patzer's Concern for His Safety and His Use of Deadly Force</u>**

          1.    <u>The Objective Evidence Clearly Corroborates That Deputy Patzer Had Probable Cause to Believe that Decedent Posed a Threat of Serious Physical Harm or Death</u>

The pivotal issue on this motion boils down to whether Defendants' evidence provides objective factors that justified Deputy Patzer's concern for his personal safety to support his use of deadly force. In essence, Defendants have provided the Court with a significant number of objective factors to validate Deputy Patzer's reasonable belief that Decedent threatened him with

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MSJ/MSA -    6
C07-4335 PJH

severe physical harm and/or death. In contrast, Plaintiff provided no evidence to counter these objective factors.

For example, <u>it is undisputed on this record</u> that Decedent was suspected of involvement in a felony vehicle theft crime due to the indications of theft on the Mustang. Decedent then fled prior to being patted down for weapons. The side yard area where Deputy Patzer and Decedent struggled was very dark, even pitch black, and contained a bunch of garbage and debris. As a result of the struggle, Deputy Patzer was exhausted. Deputy Patzer suffered scrapes, bumps and bruises as a result of this struggle. The struggle and the shooting incident happened quickly, under a minute per the unrefuted testimony of Deputy Patzer and Deputy Vorhauer. Decedent was under the influence of a significant amount and recent dose of methamphetamine at the time of the incident, a drug that gave Decedent significant strength during the struggle. Decedent never stopped resisting Deputy Patzer during the struggle. Decedent had aggressed on and over Deputy Patzer three times prior to Deputy Patzer shooting at Decedent to stop the threat. Prior to the shooting, Deputy Patzer was pushed or backed into the air conditioning unit and reasonably believed at the time that the contact was perhaps another individual present to assist Decedent in his attack on Deputy Patzer. Decedent failed to flee when given the ability to do so by Deputy Patzer pushing Decedent back several times, conceding that Decedent could continue to flee while Deputy Patzer would stay put.

In short, here we have a situation where a dazed peace officer is locked in hand-to-hand combat initiated by the drug crazed Decedent, a felony car theft suspect who may or may not have weapons on him, in a pitch black and garbage ridden area, and the peace officer is losing the battle as the Decedent continues to aggress on and over the peace officer despite several opportunities to stop resisting and/or to continue to flee. Deputy Patzer's injuries as a result of this incident corroborate the threat he was facing by Decedent. Decedent's injuries to the back of his right hand corroborate the punches that made contact with Deputy Patzer.

This is not a situation where Deputy Patzer shot Decedent in the back when Decedent may reasonably have been attempting to flee. This is not a situation where Deputy Patzer knew that Decedent did not have any weapons, could clearly see the hands and body of Decedent or was

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MSJ/MSA -   7
C07-4335 PJH

simply involved in a stand-off with Decedent as opposed to defending himself from the constant attack of Decedent. Nor is this the situation where Deputy Patzer had sufficient time to formalize a plan in dealing with the combative suspect and/or had the time and space to deploy non-deadly force options. On the contrary, this entire incident, from the fleeing to the shooting, happened in <u>under a minute</u> and the time from the struggle to the shooting was 15-20 seconds per Deputy Patzer (Patzer Decl. ¶ 66), <u>key facts that are not contradicted by Plaintiff</u>. This is hardly a significant period of time to allow Deputy Patzer to consider all potential avenues of response to Decedent's violent attack in this completely dark, confined and garbage laden area. Deputy Patzer was facing an overly aggressive, significantly strong, drug intoxicated and non-compliant silhouette of Decedent in a short amount of time, a silhouette that was winning the fight against this well trained Deputy.

Deputy Patzer's use of deadly force in such situations is constitutionally permissible even though Deputy Patzer may not have been significantly injured or close to death at the time he fired his weapon. In other words, the constitution does not make it a prerequisite for the use of deadly force that the officer be near death, bloodied or close to paralysis. Rather, all that is required for the constitutional use of deadly force here is "probable cause to believe that the suspect poses a **threat** of serious physical harm" or death to Deputy Patzer. (Opp. pg. 11:8-11, citing <u>Tennessee v. Garner</u>, 471 U.S. 1, 11 (1985)). (emphasis added). The "threat" aspect of this standard is the key element. Decedent's threat to Deputy Patzer was manifested in the fact that he dazed Deputy Patzer with the initial punch to the head, Deputy Patzer suffered scrapes, bruises and a large knot to the head, and Decedent had injuries to his right hand that were consistent with punching movements. Further, a telling uncontraverted fact is that Deputy Patzer was willing to let Decedent continue to flee by pushing him away from his body <u>several times</u>, though Decedent instead chose to remain and persist in attacking Deputy Patzer. This fact demonstrates Decedent's motivation and state of mind to try to hurt and incapacitate Deputy Patzer as opposed to trying to get away from Deputy Patzer and the police. In other words, it cannot be disputed that at all times when he was in the side yard area, Decedent chose to "fight," instead of "flight." This highlights the serious threat that was facing Deputy Patzer.

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MSJ/MSA -     8
C07-4335 PJH

Here, if Deputy Patzer did not fire at Decedent to try to stop the threat, a jury could reasonably infer that Decedent, high on methamphetamine, showing extensive strength and refusing to flee when allowed, would continue to batter Deputy Patzer to the point of unconsciousness or worse, would try to obtain Deputy Patzer's firearm, baton, flashlight, or other weapon to use on Deputy Patzer, or would have potentially pulled out a weapon of his own to use on Deputy Patzer (as Deputy Patzer did not know whether or not Decedent had any weapons on his person as Decedent had not allowed himself to be pat searched prior to fleeing). The constitution does not mandate that Deputy Patzer wait to find out Decedent's devious intent as opposed to using his firearm in self defense.

It should also be noted that Deputy Patzer <u>fired only one gunshot</u> at Decedent. This fact corroborates Deputy Patzer's contentions that he fired at Decedent to stop the threat of the advancing and attacking Decedent. In fact, as is undisputed, the one gunshot stopped Decedent's attack so it was a successful end to the threat of Decedent. All in all, Defendants have demonstrated the litany of objective factors that gave Deputy Patzer probable cause to believe that Decedent posed a threat of serious harm or death to Deputy Patzer to allow the constitutional use of deadly force per <u>Tennessee v. Garner</u> and its progeny.

2. <u>Plaintiff's Effort to Minimize the Threat of Decedent Towards Deputy Patzer Fails</u>

Plaintiff's attempt to downplay the **significant threat** of Decedent towards Deputy Patzer is unpersuasive. Initially, Plaintiff tries to argue that Deputy Patzer did not have significant injuries following this incident so he could not use deadly force. Such an argument misapprehends the standard of <u>Tennessee v. Garner</u> that deadly force can be used where there is probable cause to believe that a suspect <u>poses a threat</u> of serious physical harm or death to the officer or others. Even if Deputy Patzer was somewhat successful in defending himself from Decedent's constant barrage of punches by minimizing any direct impact, this did not eliminate the potential **threat** of Decedent to Deputy Patzer because if another head blow was suffered by Deputy Patzer after already being dazed, it is reasonable to assume that he could have suffered significant head trauma, been knocked unconscious or even died. When dealing with a crazed

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MSJ/MSA -   9
C07-4335 PJH

drug induced suspect who chose to fight instead of fleeing, it is not hard to imagine a scenario where Decedent could attempt to finish off an injured Deputy Patzer via his fists, the Deputy's flashlight or even firearm. Plaintiff's reliance on the claimed inadequate injuries suffered by Deputy Patzer is an unpersuasive diversion and also directly disregards the standard of Tennessee v. Garner and its progeny.

Secondly, Plaintiff tries to appeal to the Court's emotions by constantly mentioning the fact that after this shooting incident occurred, it was found that Decedent was unarmed  Whether Decedent was found to be unarmed after this incident is a non-issue. Deputy Patzer could reasonably assume that Decedent had a weapon on him during the foot pursuit and struggle as Decedent was stopped for a felony offense often associated with violence, and fled on foot (right before being pat searched), leading to a reasonable inference that Decedent was hiding something. Deputy Patzer could have reasonably assumed that Decedent fled right before the pat search to dispose of any weapon in his possession during his flight or he intended to access his weapon during his flight to battle the Deputy in a dark and confined area. It is evident that this is a non-issue as the analysis on the use of deadly force here is the same even if, after Decedent was shot, Decedent was found to have had a hidden weapon in his pants as Deputy Patzer did not know whether or not Decedent had a weapon (though prudently assumed he could have such a weapon). Simply because Decedent was unarmed does not factor into the analysis here and is an improper "hindsight" argument.

Thirdly, Plaintiff attempts to distort the record by arguing that Deputy Patzer backed into the air conditioner and then immediately fired his weapon at Decedent. **This is a blatant misrepresentation of the record and the undisputed chronology of events.** The fact is that after Deputy Patzer was pushed or backed into what he later learned was the air conditioner unit, a fact that has not been contested by Plaintiff, Decedent was again on top of Deputy Patzer and aggressing over him which was the third such time. (Patzer Decl. ¶¶ 48-49). It was only after Decedent was continuing to hit and punch Deputy Patzer on this third such occasion, which came after Deputy Patzer had backed into the air conditioner unit, that Deputy Patzer deployed deadly force at Decedent. In other words, the act that immediately preceded the shooting was Decedent

aggressing over Deputy Patzer for the third time. Not surprisingly, Plaintiff's expert Clark also relies upon this inaccuracy for his opinion by trying to show a direct nexus between the backing into the air conditioning unit and the shooting of Decedent. This argument by Plaintiff and his expert are not supported by the record as <u>Deputy Patzer was clearly under attack again by Decedent after he hit the air conditioner unit</u>, the third such attack, which was the attack that **directly preceded** Deputy Patzer's decision to defend his life by the use of deadly force towards Decedent. The Court should not entertain such distortions of the record by Plaintiff and his hired expert. Further, an opinion of an expert based on facts that are indisputably wrong is excludible on general principles of relevance. <u>Guillory v. Domtar Industries, Inc.</u>, 95 F.3d 1320, 1330 (5th Cir. 1996).

In addition, Plaintiff speculates that Decedent's most obvious escape route was back through the gate where Deputy Patzer was standing. This is clearly hyperbole and is not supported by any evidence. The photographs submitted by Defendants (Exh.'s F and H) show other various escape routes through the backyard of that house which opened up to other houses and properties. Indeed, the most obvious escape route for Decedent would have been to the backyard of that house and into the yard of the house right behind the area where the shooting took place, which was not fenced off, or to other nearby fences to access other properties. This argument of Plaintiff is further unsupported speculation.

Finally, Plaintiff argues that Deputy Patzer did not attempt to use his non-deadly force options on his duty belt such as his baton or OC (pepper) spray prior to or instead of resorting to deadly force. This is a hollow argument as <u>Plaintiff provides no evidence of the reasonable availability of such options during this significant and rapid struggle</u>. Defendants have demonstrated that this incident occurred in a pitch black, confined and garbage laden area where Deputy Patzer found himself defending his life against what was, in essence, the aggressive and threatening silhouette of Decedent. This struggle in the dark side yard area lasted approximately 15-20 seconds, a fact which is not contradicted by Plaintiff. (Patzer Decl. ¶ 66). In essence, Deputy Patzer did not have the ability (time or space) to deploy his non-deadly force options. (Patzer Decl. ¶ 50). OC spray would have been ineffective as Deputy Patzer could not see

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MSJ/MSA -    11
C07-4335 PJH

Decedent's face and it also may have worsened matters by Deputy Patzer exposing himself to the noxious spray in that confined area. Further, Deputy Patzer did not have any time to deploy his baton, nor could he see his target to render it effective. It should again be highlighted that Decedent was forcing himself on Deputy Patzer several times and punching at him in a rapidly evolving violent struggle in close quarters which did not allow enough space (or time) for Deputy Patzer to deploy these other potential options. These non-deadly force options were not only unavailable due to the time and space issues, but were not prudent when Deputy Patzer was being significantly attacked by Decedent and feared for his own life. (Patzer Decl. ¶ 62).

Availability of other force options, essentially the ability to deploy such options, is the touchstone to such an inquiry. (Opp. pg. 12:16-20). However, Plaintiff has presented no evidence to refute Defendants' proffered evidence that Deputy Patzer did not have the ability (time and space) to effectively use such methods. Moreover, the 4th Amendment does not require a law enforcement officer to exhaust every alternative before using justifiable deadly force. Plakas v. Drinski, 19 F.3d 1143, 1148 (7th Cir. 1994). Obviously, this is also the reason that Deputy Patzer could not give Decedent a warning prior to deploying deadly force. This is another argument of Plaintiff that fails on its face.

All in all, Plaintiff's attempt to downplay the considerable threat that Decedent posed to Deputy Patzer is insufficient to defeat Defendants' motion for summary judgment. Plaintiff is violating the cardinal rule of the Graham v. Connor line of cases in attempting to oppose this motion by pointing out issues with the benefit of 20/20 hindsight. Such critical retrospection cannot defeat the obvious and manifested threat posed by Decedent towards Deputy Patzer, necessitating the use of deadly force for the purposes of self preservation.

**D.     Even If the Court Somehow Finds a 4th Amendment Violation, Defendant Deputy Patzer is Entitled to Qualified Immunity**

Should the Court find a 4th Amendment violation or a genuine factual issue as to whether or not such a violation occurred, it is clear that Deputy Patzer is entitled to qualified immunity (and the other Defendants are relieved of liability per *Monell* arguments below) for the granting of this motion for summary judgment. As stated aptly in Brosseau v. Haugen, 543 U.S. 194, 198

1  (2004) , citing <u>Saucier v. Katz</u>, 533 U.S. 194, 206 (2001), **<u>qualified immunity operates "to protect officers from the sometimes 'hazy border between excessive and acceptable force.'"</u>** (emphasis added). Even if Deputy Patzer was mistaken about his ability to use deadly force to stop Decedent's attacks, which Plaintiff has not proven with credible evidence, <u>his mistake was reasonable</u> under the tense, uncertain and swift circumstances he was presented, entitling him to qualified immunity. <u>Blanford v. Sacramento County</u>, 406 F.3d 1110, 1119 (9th Cir. 2005). (emphasis added).

Plaintiff has cited no authority demonstrating that an officer, locked in hand to hand combat with a suspect and losing, cannot use deadly force in self preservation of that officer's health and life. In fact, Plaintiff fails to distinguish the binding authority of <u>Billington v. Smith</u> and persuasive authorities of <u>Tom v. Voida</u> and <u>Beckett-Crabtree v. Hair</u> which involved hand to hand combat situations such as the present case where deadly force was found to be reasonable.

In <u>Billington</u>, deadly force was justified as a reasonable officer would perceive a substantial risk that the suspect would seriously injure or kill him, either by beating and kicking him or by taking his gun and shooting him with it. <u>Billington v. Smith</u>, 292 F.3d 1177, 1183, 1185 (9th Cir. 2002). Even though there was a question of fact as to whether or not the suspect and Smith were grappling over the officer's gun at the moment of the shooting, that dispute was not material as it was reasonable for Smith to fire at the suspect under all circumstances existing at that point in time, including the fact that Smith was locked in "hand-to-hand combat and losing." <u>Id</u>. at 1183.

Similarly, in <u>Tom</u>, deadly force was justified at the time when the officer shot the victim as the victim had already beat the officer and was moving aggressively towards the officer once again. <u>Tom v. Voida</u>, 963 F.2d 952, 961 (7th Cir. 1992). Also, like Decedent here, the Tom victim was actively and violently resisting the officer, not fleeing. <u>Id</u>. at 962. Further, in a case with facts that appear more suspect than the case at hand, <u>Crabtree v. Hair</u>, 2007 U.S. Dist. LEXIS 82502, *26-26 (N.D. Okla. 2007), the Court found no 4th Amendment violation when the officer, who had been locked in a violent struggle and had suffered vision loss at the hands of decedent, shot decedent when decedent had moved perhaps 20 plus feet away from the officer as

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MSJ/MSA - 13
C07-4335 PJH

the officer was still in fear for his life. In Crabtree, the shooting was found to be justified even though the decedent in that case was away from the officer and was not aggressing over him at the time of the actual shooting. If in 2007 it was constitutionally permissible to shoot a suspect who was away from an injured officer and was not attacking him at the time of the shooting, it cannot be said that it was constitutionally prohibited for an officer to shoot a suspect who was drug crazed, aggressing over the officer for the third time and had injured and dazed the officer as was the case here.

Ultimately, it is not unreasonable for a police officer to use deadly force in self-defense, which is what happened here. Romero v. Bd. Of County Comm'rs of the County of Lake, Colorado, 60 F.3d 702 (10th Cir. 1995). Overall, Deputy Patzer used deadly force in an objectively reasonable manner or, at most, his conduct fell within the hazy border between acceptable and excessive force, entitling him to qualified immunity and Defendants to summary judgment. Brosseau, at 198.

E. **Plaintiff's Heavy Reliance Upon Claimed Expert Clark to Defeat this Motion is Misguided As Clark Cannot Qualify as An Expert, Nor Can He Opine About the Reasonableness of Deputy Patzer's Use of Deadly Force Which is the Function of the Court or the Jury**

As stated more extensively in Defendants' Objections and Motion to Strike Plaintiff's Proffered Evidence In Opposition to Defendants' Motion for Summary Judgment/Adjudication, Plaintiff attempts to create a genuine issue of material fact by presenting claimed expert Mr. Roger Clark to defeat Defendants' motion. Though Defendants will not reiterate their detailed arguments opposing Mr. Clark's opinions as evidence in this motion, a highlight of these issues need to be briefly addressed herein. Firstly, it has been clearly demonstrated that Clark is not qualified as an expert in the claimed field of "police procedures." If he can qualify as an expert, his speculative opinions and liability conclusions should to be totally disregarded by the Court as opinions cannot be based upon such speculation and cannot relate to liability determinations which is an invasion of the province of the trier of fact. Should the Court consider Clark's questionable opinions, such opinions regarding alleged poor tactics by Deputy Patzer do not constitute independent constitutional violations so have not been shown to be a 4th Amendment

violation to defeat this motion. Plaintiff's misguided reliance on Clark is insufficient to create a genuine issue of material fact to deny Defendants summary judgment herein.

### F.  Plaintiff Has Provided No Evidence to Support His *Monell* Claim

Though Plaintiff attempts to argue that his *Monell* claim should survive this motion, Plaintiff provides absolutely no iota of evidence to support such a contention. Assuming Plaintiff can demonstrate a constitutional violation, which has not been shown here, Plaintiff has set forth <u>no evidence</u> of any policy or custom of the County that led to the alleged constitutional deprivation, nor any evidence of the failure to adequately train Deputy Patzer. Plaintiff makes arguments for these *Monell* claims to survive, but such arguments are not backed by any evidence of a policy or custom of the County or any evidence of inadequate training of Deputy Patzer. Though Plaintiff attempts to argue that the County failed to discipline Deputy Patzer for the alleged unconstitutional use of deadly force, Plaintiff provides no evidence of the County's response to this shooting incident, an obvious prerequisite for such an argument. Nor does Plaintiff provide any evidence of how the County failed to equip Deputy Patzer with specific tools to handle such difficult situations to make a <u>Canton</u> claim. Deputy Patzer's training has not been contested by Plaintiff with counter evidence nor has Plaintiff made a showing of any training deficiency. All in all, Plaintiff's *Monell* arguments are simply that, arguments, without any supporting evidence. Defendants are entitled to summary judgment on this basis as well.

### III. CONCLUSION

For the above stated reasons, Defendants are entitled to judgment as a matter of law.

Dated: August 27, 2008

McNAMARA, DODGE, NEY, BEATTY, SLATTERY,
PFALZER, BORGES & BROTHERS LLP

By: _____
James V. Fitzgerald, III / Noah G. Blechman
Attorneys for Defendants
COUNTY OF CONTRA COSTA, JOSHUA PATZER, and WARREN RUPF