1  Andrew C. Schwartz (State Bar No. 64578)
   Larry E. Cook (State Bar No. 122776)
2  Thom Seaton (State Bar No. 62317)
   **CASPER, MEADOWS, SCHWARTZ & COOK**
3  A Professional Corporation
   California Plaza
4  2121 North California Blvd., Suite 1020
   Walnut Creek, California 94596
5  Telephone:   (925) 947-1147
   Facsimile:    (925) 947-1131
6
   Attorneys for Plaintiff
7  SHAWN DAY

8

9                 UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11

12 | SHAWN DAY, individually and as          | **Case No. C07-4335-PJH**
13 | successor in interest to the Estate of
   | Steffen Matthew Day,                      | **PLAINTIFF'S RESPONSE TO**
14 |                                           | **DEFENDANTS' OBJECTIONS TO**
   |                 Plaintiff,                 | **EVIDENCE**
15 |
   |            vs.
16 | COUNTY OF CONTRA COSTA, JOSHUA
   | PATZER, WARREN RUPF, and Does 1           | Date:      September 10, 2008
17 | through 50, et al.,                       | Time:      9:00 a.m.
   |                                           | Judge:     Honorable Phyllis J. Hamilton
18 |                 Defendants.               | Dept:      Courtroom 3, 17th Floor (SF)

19        Defendants' Objections To Evidence seek to convince the Court to eschew the

20  teaching of *Scott v. Henrich* 39 F.3d 912, 915 (9th Cir. 1990) to tread softly before

21  accepting the self-serving testimony of the sole surviving eyewitness in a deadly force

22  case on a motion for summary judgment.  Defendants make a plethora of arguments

23  to convince the Court that it should exclude all evidence that conflicts with Deputy

24  Patzer's version of events.

25        Defendants argue that they have been "sandbagged" by Plaintiff's citation to

26  facts beyond those listed in answers to interrogatories.  The County's indignation is

27  somewhat ingenuous, to say the least.  The records of its investigation into the

28  shooting, which it produced to Plaintiff, establish that the County has known from the

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

Plaintiff's Response To Defendants' Objection To Evidence                    Page 1

1    outset that a substantial contradiction existed between what Deputy Patzer stated to

2    Sergeant Gary Clark minutes after the shooting and the version he provided after

3    meeting with counsel.  Given Defendants' knowledge that Deputy Patzer had altered

4    his version of events, Defendants' chagrin is misplaced.

5         Defendants' audacity also is expressed in their claim that the investigatory

6    documents they produced from their own files are not authentic, a claim they make

7    without attacking the inaccuracy of any of these exhibits.    Hoping to preclude

8    consideration of all evidence which disputes Deputy Patzer's narrative, Defendants

9    assert that the testimony of Sonja and Henry Martin is too speculative to be admitted –

10   although that testimony corroborates what Deputy Patzer told Sergeant Clark.  At the

11   same time, they ask the Court to rely solely on the recollection of Deputy Patzer who

12   repeatedly noted that his surroundings were "pitch black" and so dark that he couldn't

13   see his hand.

14        Defendants' challenge to the testimony of Defendants' expert, Roger Clark,

15   also falls short.  The Ninth Circuit has recognized the importance of police procedure

16   experts (*Smith v. City of Hemet,* 394 F.3d 689 (9th Cir. 2005)) particularly in cases in

17   which the police officer is the only eyewitness.  *Scott v.* Henrich, *supra*, 39 F.3d at

18   915.   Clark has been qualified in many cases and cited in several decisions, including

19   *Blankenhorn v. City of Orange,* 485 F.3d 463, 485 (9th Cir. 2007).    Defendants'

20   objections go to the weight, not admissibility of his testimony.

21        Rather than follow Defendants' lead, the Court should hearken to Ninth Circuit

22   precedent which repeatedly has instructed district courts that summary judgment

23   should only be "granted sparingly" in excessive force cases "'[b]ecause [the excessive

24   force inquiry] nearly always requires a jury to sift through disputed factual contentions,

25   and to draw inferences therefrom.'"  *Smith v. City of Hemet,* 394 F.3d 689, 701 (9th Cir.

26   2005).

27   ///

28   ///

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

Plaintiff's Response To Defendants' Objection To Evidence                    Page 2

1    **I.    PRINCIPLES RE AUTHENTICATION**

2    "'[The burden of proof for authentication is slight." *Lexington Ins. Co. v.*

3    *Western Pennsylvania Hosp.,* 423 F.3d 318, 328 (3rd Cir. 2005), quoting *McQueeney*

4    *v. Wilmington Trust Co.,* 779 F.2d 916, 928 (3d Cir. 1985). *See,* Jones & Rosen,

5    *Federal Civil Trials And Evidence,* The Rutter Group (2008) ¶ 8:429 at 8C-34. (Burden

6    on the party seeking to authenticate a document is "slight.")

7    *Ricketts v. City of Hartford,* 74 F.3d 1397, 1411 (2nd Cir. 1996), on which

8    Defendants rely, teaches that the court's discretion "is limited to a determination

9    whether 'sufficient proof has been introduced so that a reasonable juror could find in

10    favor of authenticity or identification,'" quoting *United States v. Ruggiero,* 928 F.2d

11    1289, 1303 (2d Cir. 1991.)

12    The Ninth Circuit has explained that " 'The proponent need not establish a

13    proper foundation through personal knowledge; a proper foundation "can rest on any

14    manner permitted by Federal Rule of Evidence 901(b) or 902.' Rule 901 allows the

15    district court to admit evidence 'if sufficient proof has been introduced so that a

16    reasonable juror could find in favor of authenticity or identification.' " *U.S. v. Pang,* 362

17    F.3d 1187, 1193 (9th Cir. 2004). *See,* McQueeney v. Wilmington Trust Co., 779 F.2d

18    916, 930 (3d Cir. 1985) ("Defense counsel was entitled to proffer the [records] without

19    any authenticating testimony or other foundation."). Hence, authentication issues,

20    which often involve credibility determinations, are better left to the jury. *Forbis v.*

21    *McGinty,* 292 F.Supp.2d 160, 163 (D. Me. 2003).

22    In *U.S. Information Systems, Inc. v. International Broth. of Elec. Workers Local*

23    *Union Number 3* 2006 WL 2136249, at 5-6 (S.D.N.Y. 2006), the court confirmed that

24    Rule 901(a) of the Federal Rules of Evidence 'does not erect a particularly high

25    hurdle.' *United States v. Dhinsa,* 243 F.3d 635, 658 (2d Cir. 2001). It is satisfied 'if

26    sufficient proof has been introduced so that a reasonable juror could find in favor of

27    authenticity or identification.' *United States v. Ruggiero,* 928 F.2d 1289, 1303 (2d

28    Cir.2001)."

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

Plaintiff's Response To Defendants' Objection To Evidence                    Page 3

1   In a similar vein, the First Circuit has explained, "'[T]he burden of authentication
2   does not require the proponent of the evidence to rule out all possibilities inconsistent
3   with authenticity, or to prove beyond any doubt that the evidence is what it purports to
4   be.  Rather, the standard for authentication, and hence for admissibility, is one of
5   reasonable likelihood.'" *U.S. v. Pluta* 176 F.3d 43, 49-50 (2nd Cir. 1999), quoting
6   *United States v. Holmquist*, 36 F.3d 154, 168 (1st Cir. 1994).

7   In *AMCO Ins. Co. v. Madera Quality Nut LLC* 2006 WL 2091944 (E.D.Cal.
8   2006), Magistrate Judge Snyder summarized the showing a proponent must make to
9   authenticate a document:

> Authentication requirements are satisfied by evidence
> sufficient to support a finding that the matter in question is what its
> proponent claims, Fed.R.Evid. 901(a).  It is sufficient if there is
> enough support in the record to warrant a reasonable person in
> determining that the evidence is what it purports to be; thereafter, the
> question of weight to be given to the evidence is left to the finder of
> fact. *United States v. Holmquist, 36 F.3d 154, 167* (1st Cir.1994)
> (finding that a photocopy of a check was authentic in light of the
> totality of the circumstances, including the date, payee, amount, and
> corroboration provided by its alleged receipt in a package that
> included an invoice mentioning a credit in the amount of the check).
> The burden of authentication does not require the proponent of the
> evidence to rule out all possibilities inconsistent with authenticity, or
> to prove beyond any doubt that the evidence is what is purports to
> be; rather, the standard is reasonable likelihood.  Circumstantial
> evidence is sufficient to authenticate evidence.  It is also possible to
> authenticate evidence by the act of production in response to a
> subpoena. *Unites States v. Lawrence,* 934 F.2d 868, 871 (7th
> Cir.1991) (corporate officer's voluntary production in response to
> subpoena held to be sufficient to authenticate the documents).

28  2006 WL 2091944, at 6-7 (some citations omitted).

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

As Plaintiffs will show, far more than a reasonable likelihood exists that the documents Plaintiffs have cited are what they purport to be.

## I.    DEFENDANTS' CHALLENGE TO THE AUTHENTICITY OF PLAINTFFS' EXHIBITS FAILS.

### A.    Documents Produced By Defendants During Discovery.

Defendants challenge the authenticity of the Criminalistics portion of the Police Report (Ex. 5 to Declaration of Thom Seaton); the Transcript of the Gary Clark interview (Ex. 6 to the Declaration of Thom Seaton); and an excerpt from the Pittsburg Police Department Report (Ex. 7 to the Declaration of Thom Seaton).

Defendants' authentication objection fails, for, as here, "Once a defendant voluntarily produces documents and implicitly represents them to be the subpoenaed corporate records, he cannot be heard to contend that they are not so." *U.S. v. Lawrence* 934 F.2d 868, 871 (7th Cir. 1991). *Lawrence* explains that and defendant's "very act of production was implicit authentication." *Id.*

Here, therefore, Plaintiffs "argument that the process of discovery provides an implicit guarantee of authenticity is well-founded. . . . It is disingenuous for the producing party to dispute the document's authentication without proffering some basis for questioning it." *U.S. Information Systems, Inc. v. International Broth. of Elec. Workers Local Union Number 3*, 2006 WL 2136249, at 6 (S.D.N.Y. 2006). The Gary Clark transcript; the Criminalistics report and the page from the Pittsburg Police Report were produced by Defendants during discovery. May Defendants now argue that the documents which they produced, are not what they purport to be? Tellingly Defendants have not challenged the *accuracy* of the documents. Indeed, "A party producing a document is in a better position to know whether the document is authentic than the party seeking it in discovery." *Id.*

Many courts have recognized that by producing documents during discovery, the producing party essentially vouches for the authenticity of those documents which it has prepared. *See, e.g., McQueeney v. Wilmington Trust Co., supra*, 779 F.2d at

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

Plaintiff's Response To Defendants' Objection To Evidence                    Page 5

1    929 (Documents authenticated when produced by the party against whom they were

2    offered, even though testimonial evidence did not provide necessary foundation for

3    authentication); *Sprinkle v. Lowe's Home Centers, Inc.,* 2006 WL 2038580, at 2 (S.D.

4    Ill. 2006) ("When a party has produced the document in question in response to a

5    subpoena or discovery request, he has implicitly authenticated the document.");

6    *Tracinda Corp. v. DaimlerChrysler AG,* 362 F.Supp.2d 487, 500 (D. Del. 2005) ("With

7    respect to PX 26, the Court is persuaded that authentication has been established by

8    the fact that Defendants produced the document.");    *Miller v. Whipker,* 2004 WL

9    1622212, at 6 (S.D. Ind. 2004) ("[I]t is apparent that the documents were produced by

10   Defendants in response to Plaintiff's discovery request for domestic violence training

11   materials.  The act of producing documents has been held to authenticate documents

12   implicitly."); *Wechsler v. Hunt Health Systems, Ltd.,* 2003 WL 21998985, at 2, n.4

13   (S.D.N.Y. 2003) ("If the documents included in [the exhibits] are indeed copies of

14   documents produced by defendants in discovery, then the authentication of these

15   documents will be easily established."); *John Paul Mitchell Systems v. Quality King

16   Distributors, Inc.,* 106 F.Supp.2d 462, 472 (S.D.N.Y. 2000) ("[T]he act of production

17   implicitly authenticated the documents. 'Just as [the defendant] could have identified

18   the records by oral testimony, his very act of production was implicit authentication.'");

19   *Billis v. Chicago Transit Authority,* 1994 WL 23126, at 3 (N.D. Ill.1994) (Production of

20   minutes during discovery implicitly authenticated that document) and defendants could

21   not be heard to say otherwise); *See,* Jones & Rosen, *Federal Civil Trials And

22   Evidence,* The Rutter Group (2008) ¶ 8:454 at 8C-38 ("Sometimes the very act of

23   production implicitly establishes a document's authenticity.").

24          The Court therefore must reject Defendants' claim that the Gary Clark

25   transcript; the Criminalistics report and the excerpt from the Pittsburg Police

26   Department report are not authenticated.    Defendants do not claim that these

27   documents are not what they purport to be.  Indeed, the police report prepared by

28   Detective Deplitch confirms the accuracy of the transcript of the Clark interview.

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

Produced by Defendants, these documents more than meet the low threshold which a party must surmount to authenticate a document.   More than a reasonable likelihood exists that these documents are what Plaintiff claims they are.

Plaintiff understand that Defendants have raise other objections to these documents.   Plaintiff will address these objections after refuting other Defendants' authentication objections to other documents.

## B.    The Patzer Interview

Without pointing to a single error in the certified transcription of the Patzer interview, Defendants nonetheless asserts that the transcripts are not what they appear to be – an accurate transcription of the statements Deputy Patzer made to investigators following the shooting.

To further establish the accuracy of the transcription, Plaintiff has compared the transcript prepared by Zandonella Court Reporting with the transcript which Defendants produced during the discovery.   The relevant pages are attached as Exhibit 1 to the Declaration of Thom Seaton filed herewith.   Plaintiff lists below the page and line references and cited testimony from the Zandonella prepared transcript together with the location in transcript which Defendants prepared and produced during discovery:

| Testimony | Zandonella Transcript | Defendants' Transcript |
|---|---|---|
| Patzer at mother's house between shifts | 10:12-14 | P. 4, at Bates 624: 171-172 |
| Pitch black; can't see hand | 18:8 | P. 9, 629:372 |
| Didn't see what hit him | 18:18-19 | P. 9, 629:682-684. |
| Couldn't see anything | 18:23-24 | P. 9, 629:392 |
| Grabbed shirt | 19:15 | P. 10, 630:409 |

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | | |
|---|---|---|
| 1 | Swung punches, pushed Patzer | |
| 2 | Into debris | 19:22-23 | P. 10, 630:414-416 |
| 3 | | |
| 4 | Lost footing in rubble and | |
| 5 | plastic stuff | 21:3-4 | P. 11, 631:454 |
| 6 | | |
| 7 | Patzer slipped; his arm went into rubble pile of rubble | 21:7-9 | P. 11, 631:456-457 |
| 8 | | |
| 9 | Patzer pushed him (Day) away | 21:10-13 | P. 11, 631:458-459 |
| 10 | | |
| 11 | Patzer put his hand on his pistol | 21:14-15 | P. 11, 631:461 |
| 12 | | |
| 13 | Patzer felt something from behind | 21:15-16 | P. 11, 631:461-462 |
| 14 | | |
| 15 | Patzer fired one pistol round | 21:16-18 | P. 11, 631:463 |
| 16 | | |
| 17 | Couldn't see anything | 24:2 | P. 12, 632:521 |
| 18 | | |
| 19 | Feet never had firm setting | 24:2-3 | P. 12, 632:521-522 |
| 20 | After shooting Patzer moved | 24:4-10 | P. 12, 632:522-527 |
| 21 | piles and garbage bags | |
| 22 | | |
| 23 | Patzer crouching when | |
| 24 | he fired shot | 24:18 | P. 13, 633:537 |
| 25 | | |
| 26 | Patzer fired one shot | 24:22-23 | P. 13, 633:540 |
| 27 | Day moving southbound | |
| 28 | (prior to shooting) | 27:22-28:2 | P. 14, 634:613-615 |

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | | |
|---|---|---|
| Day hit "glancing blows" | 31:22 | P. 16, 636:714 |
| To avoid punches, Patzer would "duck and move." | 31:20-24 | P. 16, 636:714 |

The court reporter-prepared transcript of the Patzer interview more than meets the low threshold which a party must surmount to authenticate a document. More than a reasonable likelihood exists that a reasonable jury would find that the Patzer interview transcript is what Plaintiff claims it to be – an accurate transcript of Deputy Patzer's interview.

### C.    The Archie Gore Declaration And Diagram.

Defendants do not contest the accuracy of Mr. Gore's "detailed diagram." The diagram is dated August 17, 2006. The diagram is fully consistent with the Criminalistics report prepared by the Sheriff's Office and produced by Defendants. That report includes a diagram (Bates stamp 773) which places the air conditioning unit south of blood spots and north of the gate. The Gore diagram is also consistent with the photographs of the yard and the video submitted by Defendants to support their motion.

The Gore diagram made on August 17, 2006, more than meets the low threshold which a party must surmount to authenticate a document. More than a reasonable likelihood exists that a reasonable jury would find that the Gore diagram is what Plaintiff claims it to be – an accurate depiction of the rear yard of 26 Galleon Way, Pittsburg, California.

### II.    THE GOVERNMENT DOCUMENTS PRODUCED DURING DISCOVERY ALSO ARE ADMISSIBLE AS GOVERNMENT RECORDS UNDER FEDERAL RULE OF EVIDENCE 803(8).

Federal rule of Evidence 803(8) excepts from the hearsay rule "Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency." The Gary Clark interview, the Criminalistics report and the excerpt from the Pittsburg Police Department

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

Plaintiff's Response To Defendants' Objection To Evidence                    Page 9

1  investigation are government records admissible under Rue 803(8).

2      Moreover, Federal Rule of Evidence 803(8)(C) explicitly excepts public records

3  and reports "resulting from an investigation made pursuant to authority granted by

4  law," from exclusion under the hearsay rule.  *See, Clark v. Clabaugh*, 20 F.3d 1290,

5  1294 (3rd Cir. 1994) (Admitting investigatory report).

6  **III.    DEPUTY PATZER'S ADMISSIONS IN THE GARY CLARK DEPOSITION**
7  **ARE ADMISSIBLE.**

8      Federal Rule of Evidence 801(d)(2)(a) states that a "party's own statement"

9  offered against a party is not hearsay. The transcript of the Sergeant Gary Clark

10  interview contains statements by Deputy Patzer which are admissible as admissions.

11  Deputy Patzer has maintained that he sustained the knot on his forehead from a blow

12  delivered by Steffen Day.  In response to a question about whether Deputy Patzer had

13  hit his head on the air conditioner, Sergeant Clark told his interviewers, "Yes he said

14  he bumped on his head – on the corner of the air conditioner, he had a nice goose

15  egg up there."  Sergeant Gary Clark Interview, Ex. 6 to Seaton Declaration, at page

16  615:625-626.    Sergeant Clark also stated that Deputy Patzer did not indicate to him

17  that he was hurt.  *Id.*, at 607:227-229.

18      The Advisory Committee's note on Rule 801(d)(2)(A) states:

19      *Admissions.* Admissions by a party-opponent are excluded from
20      the category of hearsay on the theory that their admissibility in
21      evidence is the result of the adversary system rather than satisfaction
22      of the conditions of the hearsay rule. Strahorn, A Reconsideration of
23      the Hearsay Rule and Admissions, 85 U.Pa.L.Rev. 484, 564 (1937);
24      Morgan, Basic Problems of Evidence 265 (1962); 4 Wigmore § 1048.
25      No guarantee of trustworthiness is required in the case of an
      admission. The freedom which admissions have enjoyed from
26      technical demands of searching for an assurance of truthworthiness
27      in some against-interest circumstance, and from the restrictive
28      influences of the opinion rule and the rule requiring firsthand

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

1    knowledge, when taken with the apparently prevalent satisfaction with
2    the results, calls for generous treatment of this avenue to
3    admissibility.

4  Federal Rules of Evidence Rule 801, Advisory Committee Notes.

5       Deputy Patzer's statements, contained in a document produced by Defendants
6  who do not challenge its accuracy, are admissible admissions which this Court must
7  consider in deciding whether to grant summary judgment. Deputy Patzer does not
8  deny that he made the admission to Sergeant Clark. *See, United States v. Sanders,*
9  421 F.3d 1044, 1049 (9th Cir. 2004) (Statement by inmate deemed admissions after
10 court made preliminary finding that defendant made statements attributed to him);
11 *Gilbrook v. City of Westminster,* 177 F.3d 839, 859 (9th Cir. 1999) (Affirming
12 admissibility of "hearsay" admissions by party-opponent).

13      Deputy Patzer's admissions are highly relevant in this deadly force case. The
14 testimony is particularly significant given the Ninth Circuit's instruction in *Scott v.*
15 *Henrich* 39 F.3d 912, 915 (9th Cir. 1994) to view the officer's self-serving statements
16 with caution and to carefully consider other evidence, including "contemporaneous
17 statements by the officer." Deputy Patzer informed Sergeant Clark within minutes of
18 the shooting that he had struck his head on the air conditioner. He had not yet spoken
19 with counsel, with whom he would consult at length before his formal interview.
20 Following the Advisory Committee's teaching that the Court should accord "generous
21 treatment of this avenue to admissibility" the Court must admit this testimony.

22 **III.   THE MARTIN DECLARATIONS**

23      Defendants express indignation at Plaintiff's reference to evidence beyond that
24 listed in responses to interrogatories served five months ago. Yet these facts are not
25 new to the County. Deputy Patzer told Sergeant Clark minutes after the shooting that
26 he had hit his head on the air conditioner. Moreover, as the Martin Declarations
27 attest, Henry and Sonja Martin contacted the police to explain their conclusions about
28 the noises they had heard. Sonja Martin Declaration, ¶ 7; Henry Martin Declaration, ¶

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

1   4. Thus since August, 2006, the County has been well aware of the evidence Plaintiff
2   has set forth in his papers opposing summary judgment.     Notwithstanding this
3   knowledge, Defendants' motion omits these pertinent facts in seeking dismissal of the
4   action.

5       Sonja Martin has submitted a declaration attesting that she heard loud sounds
6   from the 26 Galleon Way yard and that the first sounds she heard "were those of the
7   gate breaking down and possibly someone running into the air conditioning unit."
8   Sonja Martin Decl., ¶ 5.  Mr. Martin's declaration states that he believed that the sound
9   he heard was "the breaking of the gate and /or someone running into the gate and air
10  conditioner almost simultaneously."  Henry Martin, Decl., ¶ 3.

11      Defendants assert that these declarations are inadmissible under Federal Rule
12  of Evidence 602 because these declarants lack the requisite personal knowledge of
13  the event about which they testified.    Rule 602 provides, in relevant part, that "[a]
14  witness may not testify to a matter unless evidence is introduced sufficient to support
15  a finding that the witness has personal knowledge of the matter."

16      In *U.S. v. Franklin*, 415 F.3d 537, 549 (6th Cir. 2005), the court reiterated that
17  "The threshold for admitting testimony under Rule 602 is 'low.  Testimony should not
18  be excluded for lack of personal knowledge unless no reasonable juror could believe
19  that the witness had the ability and opportunity to perceive the event that he testifies
20  about,'" quoting *United States v. Hickey*, 917 F.2d 901, 904 (6th Cir.1990).  *Hickey*
21  further explained that "Testimony should not be excluded for lack of personal
22  knowledge unless no reasonable juror could believe that the witness had the ability
23  and opportunity to perceive the event that he testifies about."  917 F.2d at 904.  *See,
24  also, U.S. v. Doe*, 960 F.2d 221, 223(1st Cir. 1992) ("The test is 'whether a reasonable
25  trier of fact could believe the witness had personal knowledge.'"); *U.S. v. Cobb*, 2007
26  WL 4571340, at 4 (S.D. Ohio 2007) ("[I]t has also been noted that "the threshold of
27  Rule 602 is low" and held that "testimony should not be excluded for lack of personal
28  knowledge unless no reasonable juror could believe that the witness had the ability

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

Plaintiff's Response To Defendants' Objection To Evidence                    Page 12

1   and opportunity to perceive the event that he testifies about.").

2       "Whether an introducing party has met the affirmative burden of Rule 602 is

3   ultimately one for the *jury* pursuant to F.R.Evid. 104(b)." *U.S. v. Owens*, 699 F.Supp.

4   815, 817 -818 (C.D. Cal.1988), citing  3 *Weinstein's Evidence* ¶ 602[02].   Quoting

5   *Weinstein,* the *Owens* court stated, " 'The judge retains the power to reject the

6   evidence if it could not reasonably be believed- *i.e.,* if as a matter of law no trier of fact

7   could find that the witness actually perceived the matter about which he is testifying. . .

8   "Near impossibility" or "so improbable that no reasonable person could believe" better

9   states the judge's role-to determine whether the witness has enough to add to warrant

10  the time and possible confusion in hearing his testimony. . . . The judge should admit

11  the testimony if the jury *could* find that the witness perceived the event to which he is

12  testifying, since credibility is a matter for the jury.'"  699 F.Supp. at 817.  *See, e.g.,*

13  *Benhabib v. Hughes Electronics Corp.*, 2007 WL 4144940, at 5 (C.D.Cal. 2007)

14  ("[T]estimony should not be excluded for lack of personal knowledge unless no

15  reasonable juror could believe that the witness had the ability and opportunity to

16  perceive the event that he testifies about."); *Barto v. Armstrong World Industries, Inc.*,

17  923 F.Supp. 1442, 1446-1447 (D. N.M.1996) ("Decedent's medicated state and his

18  sometimes uncertain testimony may raise some questions regarding his credibility.

19  However, such questions go to the weight and not the admissibility of his testimony.");

20  *S.E.C. v. Singer,* 786 F.Supp. 1158, 1167 (S.D.N.Y. 1992) ("Rule 602 does not require

21  the witness' personal knowledge to rise to the level of certainty to be admissible.

22  Testimony is admissible even though the witness is not positive about what he

23  perceived, provided the witness had an opportunity to observe and obtained some

24  impressions based on his observations," citing *United States v. Reitano,* 862 F.2d 982,

25  987 (2d Cir.1988.); *Briton v. Loggans* 2006 WL 2336556, at 2 (M.D. Tenn. 2006)

26  (Certainty not required, quoting *Singer).*

27      The Martin home adjoined the yard at 26 Galleon Way.  They testified, based

28  on their own personal knowledge, that they heard what they believed was the sound of

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

Plaintiff's Response To Defendants' Objection To Evidence                    Page 13

1   someone falling through the gate and/or hitting the air conditioner. The air conditioner
2   was located a few feet from the gate through which Patzer testified, he and Day fell.
3   The Court cannot find that no reasonable jury could conclude that the Martins did not
4   in fact hear Deputy Patzer collide with the air conditioner after falling through the
5   fence. The accuracy of the Martins' perceptions is heightened by Deputy Patzer's
6   statement to Sergeant Gary Clark that he struck his head on the air conditioner.

7       Defendants' Rule 701 objection, that the Martins' testimony is not "rationally
8   based on the perception of the witnesse[s]" also lacks merit. As the Advisory
9   Committee Notes point out, "Limitation (a) is the familiar requirement of first-hand
10  knowledge or observation." The Martins' declaration meets that standard.

11      Indeed, no question exists that the Martins contemporaneously heard sounds
12  from next door the yard. After visiting the site, they concluded that what they had
13  heard was the sound "of the gate breaking down and possibly someone running into
14  the air conditioning unit." (Sonja Martin Decl., ¶ 5) or "the breaking of the gate and /or
15  someone running into the gate and air conditioner almost simultaneously." Henry
16  Martin, Decl., ¶ 3. These were rational inferences based on the hearing of sounds
17  prior to the shooting and an examination of the scene which disclosed a broken gate
18  adjacent to an air conditioner which all agree juts from the wall into the yard of 26
19  Galleon Way.

20  IV.     **THE ROGER CLARK TESTIMONY**

21      A.     **Roger Clark Has Been Accepted As An Expert Witness On**
22             **Police Procedure**

23      In *Smith v. City of Hemet,* 394 F.3d 689, 703 (9th Cir. 2005), the Ninth Circuit
24  recognized that testimony of a police procedure expert would assist the jury in
25  determining whether alternative means of subduing a suspect were available. The
26  court noted that *Larez v. City of Los Angeles,* 946 F.2d 630, 635 (9th Cir.1991) had
27  found that "that testimony of 'an expert on proper police procedures and policies' was
28  relevant and admissible" and that *Davis v. Mason County,* 927 F.2d 1473, 1484-85

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

Plaintiff's Response To Defendants' Objection To Evidence                    Page 14

(9th Cir. 1991) had concluded that "testimony of plaintiffs' police practices expert that officers violated law enforcement standards [was] properly received."  Moreover, in *Scott v. Henrich* 39 F.3d 912, 915 (9th Cir. 1994), the Ninth Circuit expressly noted the importance of expert testimony in cases in which the surviving officer presents the only eyewitness testimony.

Roger Clark has been accepted as a police procedures expert on many ccasions.  In *Blankenhorn v. City of Orange,* 485 F.3d 463 (9th Cir. 2007), the Ninth Circuit relies on Clark's expert testimony in partially reversing summary judgment in an excessive force case.  Addressing the issue of supervisory liability, the court stated:

> Blankenhorn presented expert testimony from Roger Clark ("Clark"), a former sergeant and lieutenant with twenty-seven years of experience in the Los Angeles County Sheriff's Department. Clark's opinion was that the Department's discipline of Nguyen in all three matters was insufficient. Clark opined that discipline for the first complaint "should have included a re-training component and a period of monitoring to make this effective discipline and for deterrence." For the second, Clark said Nguyen should have been fired. For the last complaint, Clark said that the "imposition of a written reprimand was tantamount to no discipline."

485 F.3d at 485.

In *LeBlanc v. City of Los Angeles*, 2006 WL 4752614 (C.D. Cal. 2006), the court described Clark in these terms:

> Gary Clark [sic][1], the fourth and last expert witness for Plaintiff, is a twenty-seven year veteran of the Los Angeles County Sheriff's Department ("LACSD"). Before retiring from active service in 1993, his career included six years at the rank of deputy sheriff, six years as a sergeant, and fifteen years as a lieutenant. He holds a California

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

Plaintiff's Response To Defendants' Objection To Evidence                    Page.15

1  Peace Officer Standard Training ("POST") advanced certificate, and
2  is a graduate of the POST Command College. He has extensive
3  experience testifying as an expert on police procedure and police
4  tactics in both state and federal court. Clark opines that LAPD officers
5  did not follow standard police protocol and procedure because they
   acted with unnecessary haste in using force without giving sufficient
6  time for the situation to de-escalate, and because they did not take
7  into account LeBlanc's heightened vulnerability in executing the
8  tactical plan.

9

10  2006 WL 4752614, at 6.  While the court did not permit Clark to testify as to certain
11  medical matters, it permitted him to testify about decedent's mental state and the
12  police protocols for dealing with an individual in that state.  He also was permitted to
13  testify that the numerically superior LAPD officers should have been able to subdue
14  plaintiff without using a taser. *Id.*, at 10.  Recently, in *Smith v. City of Oakland,* 538
15  F.Supp.2d 1217 (N.D. Cal.2008), Magistrate Judge Chen qualified Clark to testify as
16  an expert on standard police procedures.  Following a jury verdict in plaintiff's favor,
17  the court rejected defendants' challenges to his testimony and cited that testimony as
18  a basis for upholding the finding of liability.  538 F.Supp.2d at 1228-1229, 1230.

19  Mr. Clark has submitted, under penalty of perjury, a list of trials at which he has
20  been qualified as an expert and testified.

21  Mr. Clark attached his CV to his sworn declaration.  Among the positions he
22  held with the Los Angeles Sheriff's Department was the command of a unit focused on
23  the investigation, location, observation and arrest of career criminals.  Clark held this
24  position for over five years.  His command responsibilities and ability of the unit to
25  perform its tasks without the use of deadly force for 61 months attests to his expertise
26  in the supervision of deputies in their use of force.

27

28  [1] The court is referring to Roger Clark, as is clear from the discussion of "Roger Clark's"
    testimony later in the opinion.  2006 WL 4752614, at 10.

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

Plaintiff's Response To Defendants' Objection To Evidence                    Page 16

1   Mr. Clark's Rule 26 Report, the contents of which Mr. Clark reaffirms in his

2   sworn declaration, provide further qualifications. *Floyd v. Hefner,* 556 F.Supp.2d 617,

3   635 (S.D. Tex. 2008). (Expert report attached to sworn declaration admissible).

4   Defendants cite to deposition testimony Mr. Clark has provided in other cases

5   to disqualify his testimony here.  As heretofore noted, the Ninth Circuit and other

6   courts have cited Clark's testimony.  Arguments that Mr. Clark has not published

7   books or taught classes go to the weight not admissibility of his testimony.  No

8   requirement exists that this 27 year law enforcement veteran with significant

9   supervisorial experience have also taught classes or authored books to qualify as an

10   expert.

11   Defendants' argument that Mr. Clark's reading of *Graham v. Connor,* 490 U.S.

12   386, 397 (1989) widely misses the mark.  Clark testified that the standards governing

13   the use of force enunciated in *Tennessee v. Garner* 471 U.S. 1, 11 (1985) and

14   *Graham* were consistent with what he had learned since 1965.  As he testified, "I've

15   always felt that those cases were in the harmony of what I had always learned since

16   1965." Ex. C to Fitzgerald Declaration at 18:23-25.

17   **B.    Mr. Clark's Testimony Is Based On His Experience And The
        Evidence And Is Not Speculative.**

18

19   Defendants argue that Clark's testimony is speculative and should be stricken.

20   Given Clark's experience as a police officer and supervisor involved in numerous

21   apprehensions, he is qualified to state that had Deputy Patzer followed proper police

22   procedures, Steffen Day would not have been killed.   Given that Defendants'

23   justification for the use of deadly force was the harm the deputy had sustained, it was

24   not speculative for Clark to opine that he had not sustained such harm.   Given

25   Patzer's testimony that he shot Day after backing into the air conditioner, Clark did not

26   speculate when he testified that the deputy was acting from a subjective, not

27   reasonably objective fear of death or serious physical harm.   As an experienced

28   sheriff's department supervisor, Clark did not speculate when he ascribed Patzer's

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

Plaintiff's Response To Defendants' Objection To Evidence                              Page 17

1  behavior, in part, to a lack of sleep.  Again, as an expert in police procedures, viewing

2  the totality of circumstances, Clark was qualified to rely, in part, on the photographs of

3  Deputy Patzer showing the injuries he had received, to conclude that Deputy Patzer

4  used deadly force in response to a subjective fear and not objective factors.  The

5  totality of factors included evidence that the deputy had not sustained serious harm

6  prior to the shooting.

7      Defendants' objection to Clark's testimony that Deputy Patzer would have been

8  required to run by or into Deputy Patzer to flee through the gate is consistent with

9  evidence in the Criminalistics report produced by Defendants; with the photographs of

10  the scene Defendants have submitted and the testimony of Deputy Patzer provided at

11  the administrative interview.  Patzer testified that Day was coming at him in a

12  southward direction and the Criminalistics report shows that the gate is to the south of

13  the air conditioner.  See, Ex. 5 to the Seaton Declaration, p. 773.  The photographs

14  show that Steffen Day's body was against the wall to the north of the air conditioner.

15  Clark was not speculating when he stated that to reach the gate on that dark night,

16  Steffen Day would have been force to run by or into Patzer to flee, disputing

17  Defendants' repeated assertion that Day had the opportunity to flee with getting by

18  Patzer.

19      Clark's testimony that his reading of the deputy's statement makes it appear

20  that Deputy Patzer's unsupported belief that he was attacked by Day's confederates

21  precipitated the deputy's use of deadly force is based on Patzer's own testimony and

22  must be viewed as part of the totality of circumstances which led to the shooting.  The

23  lack of serious physical harm coupled with the deputy's baseless belief that he had

24  been attacked from behind support Clark's opinion that the shooting was based solely

25  on the deputy's subjective fear.

26      Clark's testimony about the source of Deputy Patzer's injuries is based on the

27  record, not speculation.  Defendants' summary judgment evidence shows the deputy

28  going through the bushes and over a fence.  No dispute exists that Patzer fell through

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

Plaintiff's Response To Defendants' Objection To Evidence                    Page 18

1  the gate, slipped in the garbage and put his hand through the debris; and, apart from

2  what he stated was Day's initial punch to the head, only sustained glancing blows

3  because he was able to duck and move.  The expert also could rely on Sergeant

4  Clark's testimony that Deputy Patzer told Sergeant Clark he had hit his head on the air

5  conditioner.

6  ### C.    The Ultimate Issue Argument

7  Roger Clark's opinions that Patzer committed a "fatal error" which was

8  deliberately reckless and was directly connected to the shooting of Steffen Day do not

9  tell the jury what result to reach.  As an expert on police procedure, Clark was qualified

10  to present the admissible opinion that Patzer acted recklessly in pursuing Day.

11  Even assuming that Clark may not venture an opinion about whether the

12  shooting was objectively reasonable, he should be permitted to state that the shooting

13  would not have been justified if Day had punched Patzer in the head.

14  Defendants' arguments under Federal Rule of Evidence 704, allowing opinions

15  on ultimate issues, and run counter to the use of expert police procedure testimony

16  recognized in *Scott v. Henrich, supra, Smith v. City of Hemet, supra,* and *Blankenhorn*

17  *v. City of Orange, supra.*   Defendants essentially ask the Court to rely solely on

18  Deputy Patzer's self-serving testimony.

19  Even assuming Clark may not testify on the ultimate issue, (notwithstanding

20  Federal Rule of Evidence 704), his declaration and report raise serious issues about

21  Deputy Patzer's conduct. He states, for example, that:

22  > Steffen Day was 17 years old.  Deputy Patzer had no

23  > confirmed information that Steffen had committed any crime; carried

24  > any weapons or had ingested any drugs.  Deputy Patzer had other

25  > non-lethal law enforcement tools, including a collapsible baton and

26  > pepper spray which could have subdued Steffen Day, but he made

27  > no attempt to use them.  Most significantly, Steffen Day inflicted no

    > serious physical harm or injury to Deputy Patzer and threatened no

28  > such injury.

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

1   Clark Deposition, ¶ 20.

2       These admissible opinions would support a jury's finding that Deputy Patzer's

3   use of deadly force was objectively reasonable.

4   **CONCLUSION**

5       The Court must overrule virtually all of Defendants' objections. The evidence

6   Defendants' challenge, consisting largely of material located in the County's own

7   records, is admissible evidence which raises material issues of fact. The Martin

8   Declarations reflect their contemporaneous perception of events confirmed by

9   subsequent investigation of the yard at 26 Galleon Way. Evidence that Deputy Patzer

10  struck his head on the air conditioner was known to Defendants within days of the

11  shooting and they may not be heard to complain about citation to the Sergeant Clark

12  testimony or the declarations of the Martins who reported their conclusions to the

13  authorities. Roger Clark has been qualified in numerous cases; his testimony is based

14  on evidence, not speculation and, with the other evidence Defendants seek to

15  exclude, raises questions which only a jury may resolve.

16  Respectfully submitted,

17

18

19  Dated:__September 3, 2008_____

20  Thom Seaton
    **CASPER, MEADOWS, SCHWARTZ & COOK**
    Attorneys for Plaintiff

21

22

23

24

25

26

27

28

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

Plaintiff's Response To Defendants' Objection To Evidence                    Page 20

1                                    **PROOF OF SERVICE**

2    RE:    **Shawn Day, et al. v. County of Contra Costa, et al.**
            **United States District Court Case No. C07-4335-PJH**

3

4          I am a citizen of the United States and am employed in the County of Contra Costa,
     State of California. I am over eighteen (18) years of age and not a party to the above-entitled

5    action. My business address is 2121 North California Blvd., Suite 1020, Walnut Creek, CA
     94596. On the date below, I served the following documents in the manner indicated on the

6    below-named parties and/or counsel of record:

7          **PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS TO EVIDENCE**

8    ☐    U.S. MAIL, with First Class postage prepaid and deposited in sealed envelopes at
           Walnut Creek, California.

9    ☐    ELECTRONICALLY, I caused said documents to be transmitted using ECF as specified
           by General Order No. 45 to the following parties.

10   ☐    FACSIMILE TRANSMISSION from (925) 947-1131 during normal business hours,
           complete and without error on the date indicated below, as evidenced by the report

11         issued by the transmitting facsimile machine.
     ☐    **Hand-Delivery Via Courier**

12   ☒    **Other**: OVERNIGHT DELIVERY. On the date indicated below, I placed a true and correct
           copy of the aforementioned document(s) in a sealed envelope and/or package

13         designated by **Federal Express Priority Overnight**, individually addressed to the
           parties indicated below, with fees fully prepaid, and caused each such envelope and/or

14         package to be deposited for pick-up on the same day by an authorized representative
           of **Federal Express** at Walnut Creek, California, in the ordinary course of business.

15

16   **For Defendants**
     James V. Fitzgerald, III

17   McNamara, Dodge, Ney, Beatty, Slattery & Pfalzer LLP
     1211 Newell Avenue

18   Walnut Creek, CA 94596
     Tel: (925) 939-5330

19   Fax: (925) 939-0203

20

21         I declare under penalty of perjury under the laws of the State of California, and the
     United States of America, that the foregoing is true and correct and that I am readily familiar

22   with this firm's practice for collection and processing of documents for mailing with the U.S.
     Postal Service.

23

24   Dated: September 3, 2008                    _SHANNON M. BOWERS_

25                                               SHANNON M. BOWERS

26

27

28

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131